UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
————————————————————————————

FRANCIS HELMER, formerly FRANCIS MENARD,

                              Plaintiff,

                                                          6:22-cv-1082
v.                                                        (GTS/TWD)

CAPITAL ONE, CAMILLE,

                              Defendant.
————————————————————————————

APPEARANCES:

FRANCIS HELMER
Plaintiff, *pro se*
4399 Lee Center Taberg Rd.
Taberg, NY 13471

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

The Clerk sent a *pro se* Complaint and an application to proceed *in forma pauperis* ("IFP Application") filed by Francis Helmer ("Plaintiff") to the undersigned for review.  (*See* Dkt. Nos. 1-2.)  Having reviewed Plaintiff's IFP Application, the undersigned GRANTS the application for purposes of this review.  (*See* Dkt. No. 2.)  The undersigned now considers the sufficiency of the allegations set forth in the Complaint under 28 U.S.C. § 1915(e)(2).  For the reasons discussed below, the undersigned recommends that the Court DISMISS Plaintiff's Complaint for failure to state a claim with leave to amend.  (Dkt. No. 1; *see also* 28 U.S.C. § 1915(e)(2)(B)(ii).)

## I. SUMMARY OF THE COMPLAINT[1]

Plaintiff initiated this action against Capital One and one of its Fraud Investigators, Camille (collectively, "Defendants") on October 20, 2022. (*See* Dkt. No. 1.) Plaintiff claims Capital One allowed his ex-wife to "fraudulently get two credit cards in [his] name" in 2016. *See id.* at 2. Plaintiff reported the fraud to Capital One, and Capital One subsequently "found that the two credit cards were ordered under identity theft." *See id.* Plaintiff tried to get the credit card numbers from Camille so he could file criminal charges against his ex-wife, but she refused to share the numbers with him. *See id.* at 2-3. These events have caused Plaintiff "high stress." *See id.* at 3.

Based on this series of events, Plaintiff advances three causes of action against Defendants. *See id.* at 4. Through the first, he sues both Defendants for $35,000,000. *See id.* Through the second, he sues both Defendants for obstruction of justice. *See id.*[2] Through the third, he sues Capital One for identity theft. *See id.*

## II. STANDARD OF REVIEW

This Court must conduct an initial review of complaints filed *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B). When conducting this review, "the court shall dismiss the case at any time if the court determines . . . the action . . . is frivolous or malicious . . . [or] fails to state a

---

[1] The following recitation of facts is drawn from the Complaint, which the Court accepts as true for purposes of initial review. *See, e.g.*, *LaTouche v. Rockland County*, No. 22-CV-1437 (LTS), 2022 WL 953111, at *1 (S.D.N.Y. Mar. 29, 2022); *Walker v. City of New York*, No. 20-CV-5240 (PKC) (LB), 2021 WL 1838277, at *1 n.1 (E.D.N.Y. May 7, 2021).

[2] Plaintiff claims this Court has jurisdiction pursuant to 28 U.S.C. § 1343. (*See* Dkt. No. 1 at 1.) The undersigned accordingly construes the second cause of action as an obstruction of justice claim asserted under the second part of 42 U.S.C. § 1985(2). *See generally* 28 U.S.C. § 1343(a)(1) (providing district courts with jurisdiction over civil actions brought pursuant to 42 U.S.C. § 1985); *Kush v. Rutledge*, 460 U.S. 719, 725 (1983) ("The second part of § 1985(2) applies to conspiracies to obstruct the course of justice in state courts").

claim on which relief may be granted."  28 U.S.C. §§ 1915(e)(2)(B)(i), (ii); *see also Allen v. Stringer*, No. 20-3953, 2021 WL 4472667, at *1 (2d Cir. Sept. 30, 2021).[3]  The Court must accordingly construe *pro se* pleadings with the utmost leniency.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers"); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

"An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).  "A claim is based on an indisputably meritless legal theory when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint."  *Id.*

To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation."  *Id.*  It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; *see also* Fed. R. Civ. P. 8(a)(2).

---

[3] Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted.  *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III.    SUFFICIENCY OF THE COMPLAINT

Plaintiff's Complaint fails to state a claim. (*See generally* Dkt. No. 1.) The undersigned accordingly recommends that the Court dismiss Plaintiff's Complaint in its entirety for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff's first cause of action—an unadorned claim for $35,000,000—is not a legal cause of action; it is a prayer for relief. (*See* Dkt. No. 1 at 4; *see, e.g., Antech Diagnostics, Inc. v. Veterinary Oncology & Hematology Ctr., LLC*, No. 3:16-CV-481 (AWT), 2019 WL 10351654, at *6 (D. Conn. Mar. 5, 2019) ("This claim is being dismissed without prejudice because it is a prayer for relief, not a substantive cause of action").) Through this cause of action, Plaintiff has failed to adequately set forth sufficient factual content to allow this Court to reasonably infer that any of the Defendants are liable for $35,000,000. *See Iqbal*, 556 U.S. at 678. He has failed to set forth a short and plain statement stating who did what to him, when they did it, and how he was injured. *See id.*; *see also* Fed. R. Civ. P. 8(a)(2). Absent these basic details, Plaintiff's first cause of action does not give Defendants fair notice of what his legal cause of action is and the grounds upon which it rests. *See Twombly*, 550 U.S. at 555; *see also* Fed. R. Civ. P. 8(a)(2). Accepting the allegations advanced in support of Plaintiff's first cause of action as true and construing all reasonable inferences in his favor, *Hernandez*, 18 F.3d at136, the Court is left with

4

"an unadorned, the-defendant-harmed-me accusation." *See Iqbal*, 556 U.S. at 678. The undersigned accordingly recommends that the Court dismiss Plaintiff's first cause of action for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see, e.g.*, *Antech Diagnostics, Inc.*, 2019 WL 10351654, at *6.

Plaintiff's second cause of action, an obstruction of justice claim asserted under the second part of 42 U.S.C. § 1985(2), is inadequately pled. (*See* Dkt. No. 1 at 1, 3-4.) The second part of Section 1985(2) proscribes conspiracies "for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws." *See* 42 U.S.C. § 1985(2); *see also Srubar v. Rudd, Rosenberg, Mitofsky & Hollender*, 875 F. Supp. 155, 162 (S.D.N.Y. 1994), *aff'd*, 71 F.3d 406 (2d Cir. 1995). To state a claim under this provision, Plaintiff must "allege that he was a member of a protected class, that the defendants conspired to deprive him of his constitutional rights, that the defendants acted with class-based, invidiously discriminatory animus, and that he suffered damages as a result of the defendants' actions." *Gleason v. McBride*, 869 F.2d 688, 694-95 (2d Cir. 1989); *see also Nachmenson v. Gluck*, No. 22-CV-627 (PKC), 2022 WL 1093220, at *3 (E.D.N.Y. Apr. 12, 2022); *Murphy v. Onondaga Cnty.*, No. 5:18-CV-1218 (GLS) (CFH), 2022 WL 819281, at *12 (N.D.N.Y. Mar. 18, 2022); *Saunders v. Vinton*, No. 3:12-CV-581 (MPS), 2013 WL 1729264, at *7 (D. Conn. Apr. 22, 2013), *aff'd*, 554 F. App'x 36 (2d Cir. 2014). "[T]he intended victims of discrimination must be victims not because of any personal malice the conspirators have toward them, but because of their membership in or affiliation with a particular class." *Gleason*, 869 F.2d at 695; *see also Nachmenson*, 2022 WL 1093220, at *3.

Here, Plaintiff failed to adequately plead his obstruction of justice claim under the second part of Section 1985(2) because he has not alleged that he is a member of a protected class, that Defendants engaged in a conspiracy, or that they acted with discriminatory animus. (*Compare* Dkt. No. 1, *with* 42 U.S.C. § 1985(2); *see generally Gleason*, 869 F.2d at 695.) The undersigned accordingly recommends that the Court dismiss Plaintiff's second cause of action for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see, e.g.*, *Brady v. Friedlander*, No. 20-3515-CV, 2021 WL 5872264, at *2 (2d Cir. Dec. 13, 2021) (upholding the dismissal of a claim asserted under the second part of Section 1985(2) because the claimant "failed to allege that any of the Defendants-Appellees acted with invidiously discriminating animus"); *Gleason*, 869 F.2d at 695 (upholding the dismissal of a claim asserted under the second part of Section 1985(2) because the claimant "did not meet his burden of showing that he is a member of a protected group"); *Nachmenson*, 2022 WL 1093220, at *3 (dismissing a claim asserted under the second part of Section 1985(2) because the claimant failed to allege "he was discriminated against due to his membership in a protected class and that Defendant Gluck and the State Defendants conspired to violate his civil rights motivated by anti-Semitic animus"); *Murphy*, 2022 WL 819281, at *12 ("Because Murphy makes no attempt to demonstrate racial or other class-based animus on behalf of any defendant, he has failed to adequately plead a claim under the second clause of § 1985(2), and, thus, his fifth cause of action is dismissed as against all defendants."); *Srubar*, 875 F. Supp. at 162 (dismissing a claim asserted under the second part of Section 1985(2) because the claimant failed to allege "the existence of a conspiracy, or that such conspiracy was invidiously motivated.").

Finally, Plaintiff's identity theft claim, seemingly asserted under 18 U.S.C. § 1028, "is purely criminal in nature and creates no private right of action." *Hernandez v. Doe*, No. 16-CV-

6

2375 (KAM) (LB), 2016 WL 4995231, at *2 (E.D.N.Y. Sept. 18, 2016); *see also Clark v. Student Loan Fin. Corp.*, No. 18-CV-9354 (JPO), 2019 WL 4412571, at *2 (S.D.N.Y. Sept. 16, 2019); *Cabrera v. U.S. Dep't Educ.*, No. 6:18-CV-06476 (MAT), 2018 WL 11449477, at *2 (W.D.N.Y. July 5, 2018); *Garay v. U.S. Bancorp*, 303 F. Supp. 2d 299, 302-303 (E.D.N.Y. 2004).  "There is no private federal cause of action for identity theft."  *Cabrera*, 2018 WL 11449477, at *2; *see also Akram v. Akram*, No. CV-22-02699 (KM) (JRA), 2022 WL 2473439, at *2 (D.N.J. July 6, 2022); *Abdul-Sabur v. Wells Fargo Bank, N.A.*, No. 7:19-CV-674, 2020 WL 1670193, at *2 (W.D. Va. Feb. 10, 2020), *report and recommendation adopted*, 2020 WL 1665313 (W.D. Va. Apr. 3, 2020); *Blackstock v. Walgreens*, No. 4:17-CV-02097 (RBH) (KDW), 2017 WL 4174767, at *2 (D.S.C. Sept. 1, 2017), *report and recommendation adopted*, 2017 WL 4156445 (D.S.C. Sept. 19, 2017).  The undersigned accordingly recommends that the Court dismiss Plaintiff's third cause of action for failure to state a claim.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see, e.g.*, *Hernandez*, 2016 WL 4995231, at *2-3 (dismissing the claimant's Section 1028 identity theft claim for lack of subject matter jurisdiction and failure to state a claim).

In sum, Plaintiff's first cause of action fails to state a cognizable claim, he failed to adequately plead his second cause of action for obstruction of justice, and his third cause of action is not cognizable as a private right of action under the Constitution, laws, or treaties of the United States.  (*See generally* Dkt. No. 1.)  The undersigned accordingly recommends that the Court dismiss Plaintiff's Complaint in its entirety for failure to state a claim.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).  Out of an abundance of caution and solicitude for Plaintiff's *pro se* status, the undersigned further recommends that the Court grant Plaintiff leave to amend.

## IV.    CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court dismiss Plaintiff's Complaint with leave to amend.  (Dkt. No. 1.)

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED** solely for purposes of initial review; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO AMEND** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[4]  Such objections shall be filed with the Clerk of the Court.  __FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW__.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

---

[4] If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

Dated:  November 9, 2022
            Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge

2022 WL 953111
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Valery LATOUCHE, Plaintiff,

v.

ROCKLAND COUNTY; Rockland County Jail;
John Morley, Chief Medical Officer; Department
of Correctional Services; Dr. Jacobson, DDS,
Sing Sing Correctional Facility; Tushar Udeshi,
DDS, Sing Sing Correctional Facility, Defendants.

22-CV-1437 (LTS)
|
Signed 03/29/2022

**Attorneys and Law Firms**

Valery LaTouche, Ossining, NY, Pro Se.

ORDER TO AMEND

LAURA TAYLOR SWAIN, Chief United States District
Judge:

 **\*1** Plaintiff, who is currently incarcerated at Sing Sing
Correctional Facility (Sing Sing), brings this *pro se* action
under 42 U.S.C. § 1983, asserting numerous claims that
are wholly unrelated to one another. Plaintiff brings claims
arising from his 2004 arrest, and he challenges his 2005
conviction. Plaintiff also brings claims about his medical
care, which he asserts against: (1) two dentists who allegedly
provided "negligent" dental care in 2016, at Sing Sing; and (2)
the Rockland County Jail, the New York State Department of
Corrections and Community Supervisions (DOCCS),[1] and
DOCCS Chief Medical Officer John Morley in connection
with medical treatment of Plaintiff's hair loss, eczema, and
gynecomastia.

[1]    Plaintiff names as a defendant "Department
    of Correctional Services," which the Court
    understands to refer to the DOCCS, rather than the
    New York City Department of Correction.

By order dated March 14, 2022, the Court granted Plaintiff's
request to proceed *in forma pauperis* (IFP), that is, without
prepayment of fees.[2]

[2]    Prisoners are not exempt from paying the full filing
    fee even when they have been granted permission
    to proceed *in forma pauperis. See* 28 U.S.C. §
    1915(b)(1).

**STANDARD OF REVIEW**

The Prison Litigation Reform Act requires that federal courts
screen complaints brought by prisoners who seek relief
against a governmental entity or an officer or employee of a
governmental entity. See 28 U.S.C. § 1915A(a). The Court
must dismiss a prisoner's *in forma pauperis* complaint, or any
portion of the complaint, that is frivolous or malicious, fails
to state a claim upon which relief may be granted, or seeks
monetary relief from a defendant who is immune from such
relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v.
Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must
also dismiss a complaint if the court lacks subject matter
jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the
court is obliged to construe *pro se* pleadings liberally, *Harris
v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them
to raise the "strongest [claims] that they *suggest*," *Triestman
v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)
(internal quotation marks and citations omitted) (emphasis in
original). But the "special solicitude" in *pro se* cases, *id.* at
475 (citation omitted), has its limits – to state a claim, *pro se*
pleadings still must comply with Rule 8 of the Federal Rules
of Civil Procedure, which requires a complaint to make a short
and plain statement showing that the pleader is entitled to
relief.

**BACKGROUND**

Plaintiff Valery LaTouche alleges the following facts, which
the Courts accepts as true for purposes of screening the
complaint.

   **1. False Arrest**
In 2004, Plaintiff was at a friend's house in New City,
Rockland County, New York. (ECF 1 at 2.) There was a
"police raid," and Plaintiff was "unreasonably seized by a
Ramapo police officer." (*Id.*) He was arrested and charged
with unlawful possession of weapons. Later, at a preliminary

2022 WL 953111

hearing, the charges against Plaintiff were dismissed based on information that he did not reside in the home.

**\*2** In 2005, Plaintiff was arrested on an "active warrant" arising from the 2004 police raid, which "was used as cause" to detain him in connection with the charges for which he is currently serving a sentence.[3] Plaintiff obtained, in 2021, a certificate of dismissal from the Ramapo Town Court in connection with the weapons possession charges. Plaintiff sues the County of Rockland for false imprisonment and violations of his rights under the Fourth Amendment in connection with this 2004 arrest, for which the charges were dismissed.

[3]    In the report and recommendation addressing Plaintiff's petition for a writ of *habeas corpus* under 28 U.S.C. § 2254, the court noted that Plaintiff was arrested because a plainclothes officer believed that there was an outstanding warrant from Clarkstown for his arrest, but he was released when it was determined that the warrant was no longer valid. *See LaTouche v. Graham*, No. 7:10-CV-01388, 44 (PED) (S.D.N.Y. Mar. 8, 2013) (R & R at 3-4), *adopted* (ECF 55) (S.D.N.Y. Sept. 24, 2013).

### 2. Challenge to 2005 Conviction

Plaintiff asserts claims against Defendant "Rockland County Supreme Court," in connection with Justice Kevin Russo's handling of Plaintiff's post-conviction motions, under New York Criminal Procedure Law § 440.10.

Plaintiff contends that the Rockland County District Attorney, in opposing Plaintiff's December 18, 2018 motion to vacate his conviction, ignored the arguments that Plaintiff was actually innocent and disputed that defense counsel was ineffective in failing to present evidence of Plaintiff's "low intellectual disability." (*Id.* at 4, ¶ 19.) Justice Russo denied Plaintiff's motion under New York Criminal Procedure Law § 440.10(3)(c) based on Plaintiff's failure to have raised these arguments in his earlier § 440.10 motions. (*Id.* at 4, ¶ 20.) Justice Russo also denied the motion for rehearing, and the Appellate Division, Second Department, denied leave to appeal.

Plaintiff also filed applications in state court arguing (1) that his § 440.10 motion should not have been heard by Justice Russo, whose law clerk was a former prosecutor who had previously worked for a judge who is biased against Plaintiff (Justice Kelly); and (2) that the Grand Jury proceedings were

flawed. Plaintiff seeks only damages in this complaint and has not requested any other relief in connection with these claims against the Rockland County Supreme Court.

### 3. Medical Treatment

During Plaintiff's confinement as a pretrial detainee at Rockland County Jail in 2005, he was diagnosed with depression and placed on suicide watch. Plaintiff was prescribed two antidepressant medications: Rameron and Atrax. (*Id.* at 6, ¶ 25.) In May 2005, a doctor at the jail diagnosed Plaintiff with gynecomastia "as a result of his [in]gestion of Rameron." (*Id.* at ¶ 26.) Plaintiff was referred "to a surgeon for a biopsy." (*Id.* at ¶ 27.) Before the biopsy took place, Plaintiff was convicted and taken into DOCCS custody. (*Id.*)

DOCCS initially housed Plaintiff at Downstate Correctional Facility, where he "repeatedly sought medical attention for his gynecomastia." (*Id.*) On an unspecified date, after Plaintiff was transferred to Sing Sing, he asked Doctors Kwan, Bigaud, and Ezeke for medical treatment because he had pain when lying on his chest. Plaintiff had a mammogram, which had a "negative result." (*Id.* at 6.) Plaintiff continued to complain about the gynecomastia, and gave Sing Sing physician Dr. Muthra, who is not named as a defendant in this action, documents from Rockland County Jail that showed his earlier referral for a biopsy. Dr. Muthra explained that the "Albany official" denied Plaintiff's request for a biopsy based on the results of the mammogram and because treatment for the breast enlargement itself is considered a "cosmetic procedure." (*Id.* at 6, ¶ 29.) Plaintiff brings claims against Rockland County Jail, DOCCS, and its Chief Medical Officer John Morley for failing to treat his gynecomastia.

**\*3** On August 30, 2021, Dr. Muthra told Plaintiff that there was "a spike in his hormonal glands," which can indicate a "possible benign tumor." (*Id.*) Plaintiff was sent to an outside hospital for an MRI. (*Id.* at 7.) At Plaintiff's next medical visit, when he inquired about the MRI results, Dr. Muthra told Plaintiff that his earlier abnormal "blood test w[as] likely a lab error," but that he would continue to monitor Plaintiff's status. (*Id.*)

On an unspecified date, Plaintiff told "his medical provider" at Sing Sing that he had a recurring skin rash, and it was diagnosed as eczema. (*Id.* at 7, ¶ 32.) Plaintiff continued to complain about itching, apparent "ringworm," and hair thinning and bald spots on his scalp and beard. Dr. Muthra prescribed a topical cream (fluocinolone acetonide) for

Plaintiff, and he was given "tar shampoo" and lotion with vitamin E. Plaintiff asked for a biopsy and dermatologist visit, but these requests were denied, and Plaintiff was told that "the Albany official considers his condition to be cosmetic." (*Id.* at ¶ 33.) Plaintiff asserts claims against DOCCS and its Chief Medical Officer, John Morley, for denying him "over the counter drug[s] minoxidil, corticosteroid, [and] antholin for his scalp." (*Id.* at 31.)

### 4. Dental Care at Sing Sing in 2016

On April 4, 2016, at Sing Sing, Dr. Allen Jacobson examined Plaintiff's teeth and found cavities and decay. (*Id.* at 2-3.) Two weeks later, on April 19, 2016, dental hygienist cleaned Plaintiff's teeth. Dr. Jacobson then filled the cavity in Plaintiff's tooth #12 but warned him that the cavity was deep, and the tooth might need to be extracted. (*Id.* at 3.) Shortly after the filling, "the tooth became infected," and Plaintiff suffered "extreme sensitivity" and shooting pain. On July 18, 2016, Dr. Jacobson attempted to "file down" the injured tooth. X-rays were taken and these showed that "cavities surrounding the tooth" caused scraping near the nerve. Dr. Jacobson advised Plaintiff that the tooth needed to be extracted, but Plaintiff refused and asked him to "cur[e] the infection." (*Id.*) Dr. Jacobson prescribed penicillin and ibuprofen.

On July 22, 2016, another dentist at Sing Sing, Dr. Udeshi, told Plaintiff that tooth #12 needed to be extracted. Plaintiff told Dr. Udeshi that the medication that Plaintiff had taken was provided to "save the tooth," and he refused the extraction. (*Id.* at 3.)

In 2021, the filling in tooth #12 fell out. Dr. K. Rakib examined Plaintiff and found deep cavities in the "tooth opposite ... tooth #12." (*Id.* at 3-4.) Plaintiff told Dr. Rakib that he had been unable to chew on his left side, where tooth #12 was located, due to the "destructive dental filling." (*Id.* at 4.) As a result, he chewed on the other side of his mouth, which "cause[d] the decay in the tooth opposite #12." (*Id.*) On January 21, 2022, Plaintiff's tooth #12 was extracted. Plaintiff asserts claims against Doctors Jacobson and Udeshi for "negligen[ce]" and failing to provide "adequate dental treatment." (*Id.* at 2.)

Plaintiff brings this complaint against Defendants Rockland County, Rockland County Jail, Dentists Jacobson and Udeshi, DOCCS and DOCCS Chief Medical Officer John Morley. Plaintiff seeks $35 million in damages.

## DISCUSSION

### A. Timeliness

Many of Plaintiff's claims under section 1983 appear to be time-barred. The statute of limitations for section 1983 claims is found in the "general or residual [state] statute [of limitations] for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). In New York, that period is three years. *See* N.Y. C.P.L.R. § 214(5). Section 1983 claims generally accrue when a plaintiff knows or has reason to know of the injury that is the basis of the claim. *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013). Plaintiff knew of his injuries when they occurred, and his claims therefore accrued at that time. Plaintiff's claims arising more than three years before he filed this complaint on February 22, 2022 therefore are time-barred, including his claims arising from his 2004 arrest, his 2005 conviction, his medication with Rameron at Rockland County Jail in 2005, and his dental treatment in 2016.

**\*4** Because the failure to file an action within the limitations period is an affirmative defense, a plaintiff is generally not required to plead that the case is timely filed. *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). Dismissal is appropriate, however, where the existence of an affirmative defense, such as the statute of limitations, is plain from the face of the pleading. *See Walters v. Indus. and Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) ("[D]istrict courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted.") (internal quotation marks and citation omitted); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (affirming *sua sponte* dismissal of complaint as frivolous on statute of limitations grounds); *see also Abbas*, 480 F.3d at 640 (concluding that district court should grant notice and opportunity to be heard before dismissing complaint *sua sponte* on statute of limitations grounds).

If Plaintiff amends his complaint, and the amended complaint includes any claim arising more than three years before he filed the original complaint on February 22, 2022, he must include any facts showing why the claim should not be deemed time-barred. The doctrine of equitable tolling permits a court, "under compelling circumstances, [to] make narrow exceptions to the statute of limitations in order 'to prevent inequity.' " *In re U.S. Lines, Inc.*, 318 F.3d 432, 436 (2d Cir.

2003) (citation omitted). The statute of limitations may be equitably tolled, for example, when a defendant fraudulently conceals from a plaintiff the fact that the plaintiff has a cause of action, or when the plaintiff is induced by the defendant to forego a lawsuit until the statute of limitations has expired. *See Pearl*, 296 F.3d at 82-83. [4]

[4]    In addition, New York provides by statute for other circumstances in which a limitations period may be tolled. *See, e.g.*, N.Y. C.P.L.R. § 204(a) (where commencement of an action has been stayed by court order), *id.* at § 204 (where a dispute has been submitted to arbitration but is determined to be non-arbitrable), id. at § 207(3) (defendant is outside New York at the time the claim accrues), *id.* at § 208 (plaintiff is disabled by infancy or insanity).

As set forth below, even if Plaintiff's claims were not time-barred, the allegations of the complaint generally fail to state a federal claim on which relief can be granted or are otherwise not cognizable in an action under section 1983.

**B. False Arrest in 2004**
The Court first looks to state law to establish the elements of a false arrest claim under section 1983. *See Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 925 (2017) ("[T]o flesh out the elements of this constitutional tort, we must look for 'tort analogies.' "); *see also Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018) (holding that common law principles are meant simply to guide rather than to control the definition of Section 1983 claims and courts should not "mechanically apply" the law of New York State).

Under New York law, to state a claim for false arrest, a plaintiff must show that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Liranzo v. United States*, 690 F.3d 78, 95 (2d Cir. 2012). An arrest is privileged if it is based on probable cause. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007).

Officers have probable cause to arrest when they "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (emphasis and citation omitted). "Probable cause can exist even where

it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (1994); *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (holding that a police officer is "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.").

 **\*5** Here, Plaintiff alleges that he was arrested after a "raid" on a home where unlawful weapons were found, and that the charges against him were dismissed when he demonstrated that he did not reside in the home. The fact that the charges against Plaintiff were dismissed, without more, is insufficient to plead plausibly that the Ramapo police officer who arrested Plaintiff lacked probable cause to do so.

Moreover, Plaintiff has not sued an individual officer who allegedly made a wrongful arrest. Instead, he brings this claim against the County of Rockland. To state a claim against a municipality, such as the County of Rockland, a plaintiff must allege that the municipality itself violated Plaintiff's rights. *See Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). It is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. To state a § 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted).

Even if Plaintiff had adequately alleged that a police officer violated his rights, which he has not done, that allegation would be insufficient to provide a basis for liability on the part of the County of Rockland. Plaintiff does not include any allegations that any policy, custom, or practice on the part of Rockland County violated his rights in connection with this 2004 arrest. Plaintiff thus fails to state a claim against the County of Rockland based on his 2004 arrest on charges that were later dismissed.

Plaintiff also suggests that this wrongful arrest in 2004 was used in 2005 as a pretense to arrest him for the charges for which he is currently serving a prison sentence. A prisoner cannot pursue civil rights claims that would necessarily be inconsistent with a conviction. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Moreover, even where a civil rights

claim would lie, a plaintiff cannot seek relief for "the 'injury' of being convicted and imprisoned (until his conviction has been overturned)." *Id.* at 477, n. 7. Plaintiff's 2005 conviction has not been overturned, and any claim for damages for the injury of serving this sentence would be inconsistent with this conviction.

As set forth above, these claims had been time-barred for nearly 15 years when Plaintiff filed this complaint. It therefore would be futile for Plaintiff to replead these claims, unless he has some adequate basis for equitable tolling.

## C. Challenge to 2005 Conviction

Plaintiff brings civil rights claims regarding the denial of his post-conviction motions against Defendant "Rockland County Supreme Court." As an initial matter, "state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity...." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.*

The Supreme Court of the State of New York, Rockland County, is a part of the New York State Unified Court System, and, as such, is an arm of the State of New York. *Id.* at 368 (explaining that a court that is part of the New York State Unified Court System "is unquestionably an 'arm of the State,' entitled to Eleventh Amendment sovereign immunity."). New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). The Eleventh Amendment therefore bars Plaintiff's section 1983 claims against the Rockland County Supreme Court.

**\*6** Moreover, Plaintiff's allegations that Justice Russo wrongfully denied his § 440.10 motions are not cognizable in a civil rights action under section 1983. A prisoner can challenge the validity of his state conviction in federal court, or obtain release from custody, only by bringing a petition for a writ of *habeas corpus* under 28 U.S.C. § 2254. *See Wilkinson v. Dotson*, 544 U.S. 74, 78-82 (2005) (citing *Preiser v. Rodriguez*, 411 U.S. 475 (1973)) (noting that writ of *habeas corpus* is sole federal remedy for prisoner seeking to challenge the fact or duration of his confinement). Plaintiff's

section 1983 claims challenging his conviction must therefore be dismissed for failure to state a claim on which relief can be granted and because defendant is immune from suit. 28 U.S.C. § 1915(e)(2)(b)(ii)-(iii).

The Court also declines to recharacterize these claims as arising under section 2254, because Plaintiff has already challenged his 2005 conviction in a petition for a writ of *habeas corpus* under 28 U.S.C. § 2254, which was denied on the merits. *See LaTouche v. Graham*, No. 7:10-CV-01388, 44 (PED) (S.D.N.Y. Mar. 8, 2013) (R & R at 3-4), *adopted* (ECF 55) (S.D.N.Y. Sept. 24, 2013), *certificate of appealability denied*, No. 13-3720 (2d Cir. Mar. 13, 2014), *lv to file successive petition denied*, No. 15-3662 (2d Cir. Dec. 7, 2015), *certificate of appealability denied*, No. 16-2885 (2d Cir. Feb. 13, 2017) (appeal of denial of Rule 60(b) motion), *lv to file successive petition denied*, No. 19-4006 (2d Cir. Jan 21, 2020). Plaintiff would require permission from the Court of Appeals to bring a new petition for a writ of *habeas corpus* under section 2254.

## D. Deliberate Indifference to Serious Medical Needs

Plaintiff alleges that several defendants were deliberately indifferent to his serious medical needs. Such claims arise under the Due Process Clause of the Fourteenth Amendment, if Plaintiff was a pretrial detainee at the time of the events giving rise to his claims, and under the Eighth Amendment, if he was a convicted prisoner. *Bell v. Wolfish*, 441 U.S. 520, 536 n.16 (1979); *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Whether Plaintiff was a pretrial detainee or convicted prisoner, he must satisfy two elements to state such a claim: (1) an "objective" element, which requires a showing that the challenged conditions are sufficiently serious, and (2) a "subjective" or "mental" element, which requires a showing that the officer acted with at least deliberate indifference to the challenged conditions. *Darnell*, 849 F.3d at 29.

The objective element of a deliberate indifference claim is the same for pretrial detainees and convicted prisoners. The plaintiff's medical need must be a "sufficiently serious" condition that "could result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)); *see also Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (noting that standard contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain").

The "subjective" or "mental" element varies depending on whether a plaintiff is a pretrial detainee or convicted prisoner. A convicted prisoner must allege that a correction official actually "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Darnell*, 849 F.3d at 32 (quoting *Farmer*, 511 U.S. at 837). That is, a convicted prisoner must allege that the official was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also [have] draw[n] the inference." *Id.* By contrast, a pretrial detainee need allege only that the official intentionally or recklessly failed to act with reasonable care "even though the defendant-official knew, *or should have known*, that the condition posed an excessive risk to health or safety." *Id.* at 35 (emphasis added).

**\*7** The mere negligence of a correction official is not a viable basis for a claim of a federal constitutional violation under section 1983, under either the Eighth or the Fourteenth Amendment. *See Daniels v. Williams*, 474 U.S. 327, 335 (1986); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986).

### 1. Dental Care

Plaintiff was a convicted prisoner as of 2016, when his claims for constitutional violations in connection with his dental care first arose. Plaintiff adequately alleges at this stage that his dental problems were a serious medical need. *See Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) (holding that a tooth cavity is a serious medical condition, not because cavities are always painful or otherwise dangerous, but because a cavity that is not treated will probably become painful or otherwise dangerous). Plaintiff therefore has pleaded facts showing that the objective prong of a deliberate indifference claim is satisfied.

Plaintiff fails, however, to plead any facts giving rise to an inference that either dentist acted with the subjective intent required for deliberate indifference. He states that Dr. Jacobson filled the cavity in Plaintiff's tooth #12 but warned him that the cavity was deep, and that the tooth might need to be extracted, which later proved true; Plaintiff nevertheless refused to have it extracted, and Dr. Jacobson prescribed penicillin and ibuprofen for the infection. These allegations do not show that Dr. Jacobson "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Darnell*, 849 F.3d at 32. On the contrary, it appears that Plaintiff acted against Dr. Jacobson's advice, and Dr. Jacobson then took steps to mitigate the danger to Plaintiff.

Plaintiff further alleges that, on July 22, 2016, Dr. Udeshi told Plaintiff that tooth #12 needed to be extracted, but Plaintiff refused the extraction. (ECF 2 at 3.) Plaintiff brings claims against Doctors Jacobson and Udeshi for "negligen[ce]" and failing to provide "adequate dental treatment." (*Id.* at 2.) These allegations are insufficient to support a claim of a constitutional violation, both because Plaintiff alleges that he was the one who refused the tooth extraction and because allegations of negligence are insufficient to state a claim that a defendant actually "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Darnell*, 849 F.3d at 32. Plaintiff's section 1983 claims against Doctors Jacobson and Udeshi must therefore be dismissed for failure to state a claim on which relief can be granted.

### 2. Cosmetic Conditions

Plaintiff alleges that Defendants have denied him adequate treatment for his hair loss and eczema because these are cosmetic conditions. "Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury to state a cognizable claim." *Washington v. Fludd*, No. 18-CV-1273(JS) (SIL), 2019 WL 1643542, at \*3 (E.D.N.Y. Apr. 16, 2019) (quoting *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (internal quotation marks and additional citation omitted; alteration in original)). A "cosmetic" condition can rise to the level of seriousness needed to establish a duty of care if: (1) a reasonable doctor would perceive the condition as important and worthy of treatment; (2) the condition significantly affects the prisoner's daily activities; and (3) the condition results in chronic and substantial pain. *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003).

**\*8** Plaintiff alleges that he suffers from hair thinning and bald spots on his scalp and beard. Hair loss is generally not deemed a serious medical condition. *See, e.g., Guthrie v. US Fed. Bureau of Prisons*, No. 09-CV-990 (LAP), 2010 WL 2836155, at \*5 (S.D.N.Y. July 7, 2010) (holding that "[t]he BOP's duty of care to provide for the safekeeping of its prisoners does not require them to provide medication that is cosmetic in nature, including administering hair loss medication), *aff'd*, 421 F. App'x 120 (2d Cir. 2011). Plaintiff does indicate that he has "itching" on his scalp or beard, and apparent "ringworm," but these allegations do not show that he was in chronic or substantial pain at any relevant time or that the condition significantly affected his daily activities. He thus fails to plead facts showing that this was

a sufficiently serious medical condition that satisfies the objective component of a deliberate indifference claim.

Plaintiff also alleges that he was diagnosed with eczema. Skin conditions can be sufficiently serious to satisfy the objective component of a deliberate indifference claim. *Brock*, 315 F.3d at 163 (holding that prisoner's thick keloid scar that was a source of chronic pain was a serious medical condition). Plaintiff alleges, however, that Dr. Muthra prescribed treatment with a topical cream (fluocinolone acetonide), "tar shampoo," and lotion with vitamin E. Although Plaintiff contends that he was denied a biopsy, a dermatologist visit, and "over the counter drug[s] minoxidil, corticosteroid, [and] antholin for his scalp" (*id.* at 31), it is well established that "[d]isagreements over medications ... forms of treatment, or the need for specialists ... are not adequate grounds for a Section 1983 claim." *See Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001). Plaintiff's allegations are therefore insufficient to state a claim for deliberate indifference in connection with his hair loss or eczema.

**3. Gynecomastia**

Plaintiff alleges that while he was a pretrial detainee at Rockland County Jail, in 2005, he was prescribed a psychiatric drug (Rameron) that caused breast enlargement, known as gynecomastia. He was referred for a biopsy but was transferred to the custody of DOCCS in May 2005, before it took place. Plaintiff sues Rockland County for administering a drug that caused him harm.

Plaintiff's allegations might be construed as a claim for violation of the Fourteenth Amendment right to information about potential side effects of the medication. *See Pabon v. Wright*, 459 F.3d 241, 250-51 (2d Cir. 2006) ("In order to permit prisoners to exercise their right to refuse unwanted treatment, there exists a liberty interest in receiving such information as a reasonable patient would require in order to make an informed decision as to whether to accept or reject proposed medical treatment.").[5] Because Plaintiff alleges that he knew of this harm in 2005, it appears that his claim accrued at that time. The three-year limitations period for a section 1983 claim therefore barred this claim when he filed the complaint in 2022. Plaintiff should not replead this claim in his amended complaint, unless he can plead facts showing equitable tolling of the limitations period.

[5] To establish a claim for violation of the Fourteenth Amendment right to medical information, "a prisoner must show that (1) government officials failed to provide him with such information; (2) this failure caused him to undergo medical treatment that he would have refused had he been so informed; and (3) the officials' failure was undertaken with deliberate indifference to the prisoner's right to refuse medical treatment." *Pabon*, 459 F.3d at 250-51.

Plaintiff alleges that the DOCCS and its Chief Medical Officer have denied treatment for gynecomastia on the ground that it is a cosmetic condition. In cases where a prisoner alleges that gynecomastia "significantly affects daily activities" or cause him "chronic and substantial pain," gynecomastia may qualify as a serious medical condition. *See, e.g., Blaine v. Burnes*, No. 3:20-CV-1039 (KAD), 2020 WL 5659101, at *6 (D. Conn. Sept. 23, 2020) ("While Gynecomastia can cause pain or discomfort, and can result in discharge from the nipple, [plaintiff] alleges none of these infrequent side effects."); *Washington v. Fludd*, 2019 WL 1643542, at *3 (dismissing plaintiff's Eighth Amendment claim based on gynecomastia as a Risperdal side effect for failure to allege facts sufficient to meet the objective component). Plaintiff's allegations are insufficient to show that his breast enlargement "significantly affects daily activities" or causes him "chronic and substantial pain." *Moore*, 2008 WL 4186340 at *6 (citing Brock, 315 F.3d at 162-63).

**\*9** Because Plaintiff may be able to allege facts showing that this is a sufficiently serious condition that is not merely cosmetic, and that defendants are actually aware that this condition is more than cosmetic, the Court grants Plaintiff leave to amend to replead this claim against Chief Medical Officer John Morley or other individuals who were personally aware of a serious medical condition related to Plaintiff's gynecomastia and were deliberately indifferent to the risk to him of serious harm.

**E. Leave to Amend**

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss

[a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid claim about his medical conditions, the Court grants Plaintiff 60 days' leave to amend his complaint to detail his claims.

Plaintiff is granted leave to amend his complaint to provide more facts about his claims. In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

  a) the names and titles of all relevant people;

  b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

  c) a description of the injuries Plaintiff suffered; and

  d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated his federally protected rights and how; when and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.

## CONCLUSION

Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order,

caption the document as an "Amended Complaint," and label the document with docket number 22-CV-1437 (LTS). An Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**\*10** SO ORDERED.

### Attachment

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
Write the full name of each plaintiff.

_____
-against-

_____

_____
Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

_____ CV _____
(Include case number if one has been assigned)

AMENDED
COMPLAINT
(Prisoner)

Do you want a jury trial?
☐ Yes   ☐ No

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 5/20/16

**I.    LEGAL BASIS FOR CLAIM**

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "Bivens" action (against federal defendants).

☐ Violation of my federal constitutional rights

☐ Other:

**II.    PLAINTIFF INFORMATION**

Each plaintiff must provide the following information. Attach additional pages if necessary.

First Name          Middle Initial          Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

County, City          State          Zip Code

**III.    PRISONER STATUS**

Indicate below whether you are a prisoner or other confined person:

☐ Pretrial detainee
☐ Civilly committed detainee
☐ Immigration detainee
☐ Convicted and sentenced prisoner
☐ Other:

Page 2

**IV.    DEFENDANT INFORMATION**

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name          Last Name          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City          State          Zip Code

Defendant 2:

First Name          Last Name          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City          State          Zip Code

Defendant 3:

First Name          Last Name          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City          State          Zip Code

Defendant 4:

First Name          Last Name          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City          State          Zip Code

Page 3

**V.    STATEMENT OF CLAIM**

Place(s) of occurrence:

Date(s) of occurrence:

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

Page 4

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

**VI.    RELIEF**

State briefly what money damages or other relief you want the court to order.

Page 5

2022 WL 953111

VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____

Page 6

**All Citations**

Slip Copy, 2022 WL 953111

**End of Document**                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 1838277
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Michael WALKER, Plaintiff,

v.

CITY OF NEW YORK; Brooklyn Public Defenders
Office; Danielle Regis; New York City Police
Department; Detective Courtney Winston; Detective
Raymond Higgins; Detective Jason Guzman; Detective
Patrick Jean Pierre; Ranking Detective Daniel Pierrino;
Civil Complaint Review Board; Chairman Frank
Davie; Field Investigator A. Wassim; Panel Member
S. Carceterra; Panel Member M. Rivadene; Records
Access Officer George Alexander; Internal Affairs
Bureau; Captain Brian White; Lt. Dwayne Watson;
Sgt. Moode; Detective Carmelo Rivera; Detective
Rashad Vandross; Corporation Counsel Law Dept.;
Supervisor Nelson Genevieve; Daniel Oliner; Allyson
Nicole Brown; Christopher D. Deluca, Defendants.

20-CV-5240 (PKC) (LB)
|
Signed 05/07/2021

**Attorneys and Law Firms**

Michael Walker, Napanoch, NY, pro se.

### MEMORANDUM & ORDER

PAMELA K. CHEN, United States District Judge:

**\*1** Plaintiff Michael Walker, incarcerated at the Eastern New
York Correctional Facility, brings this *pro se* action under
42 U.S.C. §§ 1983, 1985, and 1986, the Americans with
Disabilities Act ("ADA") and Rehabilitation Act, and various
state-law provisions. Plaintiff's request to proceed *in forma
pauperis* ("IFP") is granted pursuant to 28 U.S.C. § 1915. For
the reasons discussed below, Plaintiff's Amended Complaint
(Dkt. 24-1) is dismissed in its entirety. Plaintiff is granted
sixty (60) days' leave to file a Second Amended Complaint
as set forth below.

### BACKGROUND

## I. Underlying Facts [1]

[1]     This recitation of the facts is based on the
non-conclusory allegations in the Complaint and
Amended Complaint, which the Court accepts
as true at this stage in the case, *see Milan v.
Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (per
curiam) (citation omitted), as well as the Court's
factual findings at the summary judgment stage in
*Walker v. Raja, see* 2020 WL 606788.

This case is related to Plaintiff's pending action in *Walker
v. Raja*, No. 17-CV-5202 (PKC) (LB) (E.D.N.Y. Aug. 22,
2017).[2] On January 8, 2017, Plaintiff was arrested following
an attempted armed robbery of a jewelry store. *Walker v.
Raja*, No. 17-CV-5202 (PKC) (LB), 2020 WL 606788, at \*1
(E.D.N.Y. Feb. 7, 2020). After an altercation during which
Plaintiff threatened the store owner and an employee with
a gun, Plaintiff fled the store with the jewelry and firearm.
*Id.* The store owner followed Plaintiff and wrestled him to
the ground, where the pair exchanged blows until civilian
bystanders intervened, grabbing Plaintiff and restraining him
on the pavement. *Id.*

[2]     In that lawsuit, Plaintiff has asserted § 1983 and
state-law claims against NYPD officers based on
the same attempted robbery incident that forms the
basis of this action.

Soon thereafter, several police officers from the New York
City Police Department ("NYPD") arrived at the scene. *Id.* In
their attempts to subdue and arrest Plaintiff, an officer struck
Plaintiff several times, and a female officer "began repeatedly
punching him in the face." *Id.* Plaintiff was charged with, *inter
alia*, robbery, assault, grand larceny, criminal possession of
a weapon, and criminal possession of stolen property. *Id.* at
\*2. He pled guilty to attempted robbery in the second degree
pursuant to New York Penal Law § 160.10(2)(a), and was
sentenced to 12 years to life as a "persistent violent felony
offender." *Id.*

Plaintiff had advanced glaucoma and distorted vision prior
to the January 8, 2017 arrest, but his vision became
completely impaired following the arrest. *Id.* Plaintiff is now
legally blind, and "cannot see, write, type, nor navigate
himself without the assistance of" auxiliary aids. (Amended
Complaint ("Am. Compl."), Dkt. 24-1, at 10.) Plaintiff also
suffers from post-traumatic stress disorder following the
arrest and, upon admission to the New York Department of
Corrections and Community Supervision ("DOCCS") local

2021 WL 1838277

county jail, was hospitalized in the medical unit due to medical complications. (*Id.* at 14–15.)

**\*2** Attorney Danielle Regis from the Brooklyn Defender Services [3] ("BDS") was assigned to represent Plaintiff in his criminal proceeding. (*Id.* at 15.) Around April 2017, Regis visited Plaintiff in DOCCS confinement, accompanied by a social worker. (*Id.*) During the visit, Regis played back the surveillance tape from Plaintiff's arrest, verbally describing the video to Plaintiff due to his visual impairment. (*Id.* at 16.) In the video, the arresting officers were subduing Plaintiff and striking him "until incoherent," including NYPD Officer Elisa Battista, who was "seen repeatedly striking [P]laintiff's head[.]" (*Id.* at 16.) Regis "immediately shut[ ] off [the] video" in the middle of playback, which Plaintiff characterizes as "a conscious disregard in preventing [P]laintiff any further information due to overwhelming exculpatory impeaching evidence, enough for criminal charges being brought on [the] seven arresting officers." (*Id.*) Plaintiff thereafter requested access to the surveillance tape several times to "[n]o avail," which he claims is due to Regis's "derelict tactics to insulate [the] seven arresting officers." (*Id.*)

3    Though Plaintiff refers to the "Brooklyn Public Defender Office" in his Complaint (*see, e.g.*, Complaint ("Compl."), Dkt. 1, at 10), the Court assumes Plaintiff meant to name Brooklyn Defender Services, a non-profit public defender organization, *see* http://bds.org/ (last visited Mar. 3, 2021), and refers to the organization by its correct name.

On or about May 12, 2017, Plaintiff filed a Notice of Claim with the New York State Office of the Comptroller concerning state-law claims arising from his January 2017 arrest. [4] (*see id.* at 17); *see also Walker*, 2020 WL 606788, at *2. Plaintiff also filed a "[p]etition with the (DOJ) Dept[.] of Justice (Southern District)" on May 6, 2017, a citizen's complaint with the Civilian Complaint Review Board ("CCRB") [5] on May 18, 2017, and a citizen's complaint with the NYPD's Internal Affairs Bureau ("IAB") [6] on June 6, 2017. (*See* Am. Compl., Dkt. 24-1, at 17.) On August 22, 2017, Plaintiff filed a *pro se* action against NYPD Officers Taimur Raja, David Vazquez, Estharlin Lopez, and Kyle Brown, advancing claims under 42 U.S.C. § 1983 and state law in connection with his January 2017 apprehension and arrest. *See* Complaint, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Aug. 22, 2017), ECF No. 2; *see also Walker*, 2020 WL 606788, at *2.

4    The Comptroller's Office informed Plaintiff on or about May 24, 2017 that his claim was denied as untimely because it had not been filed within 90 days from the date of his January 8, 2017 arrest. *Walker*, 2020 WL 606788, at *2.

5    The CCRB is an independent City agency "empowered to receive, investigate, mediate, hear, make findings, and recommend action on complaints against New York City police officers." *Joseph v. Doe*, No. 16-CV-2004 (PKC) (LB), 2017 WL 4233024, at *2 n.3 (E.D.N.Y. Sept. 22, 2017).

6    The IAB is a division of the NYPD that "investigates claims of serious misconduct and corruption of members of the NYPD." *Floyd v. City of New York*, 739 F. Supp. 2d 376, 379 (S.D.N.Y. 2010); *see id.* at 384 ("IAB investigations are confidential, including within the NYPD.").

## II. *Walker v. Raja*

The New York City Office of Corporation Counsel ("Corporation Counsel") represents the arresting officers in *Walker v. Raja*, which is still pending before this Court. Previously, Allyson Brown, an attorney with Corporation Counsel, requested a stay of the proceedings in light of the pending CCRB investigation. (Am. Compl., Dkt. 24-1, at 18); *see also* Motion to Stay, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Nov. 2, 2017), ECF No. 19; 11/6/2017 Order, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Nov. 6, 2017), ECF No. 21. On June 12, 2018, following an 18-month investigation and hearing in front of a three-member panel, [7] the CCRB "exonerated [the] five arresting officers[,]" Raja, Brown, Vazquez, Lopez, and Sgt. Rahman. (Am. Compl., Dkt. 24-1, at 18.) The stay in *Walker v. Raja* was lifted, and the case proceeded to discovery. (*Id.* at 18); *see also* 8/7/2018 Order, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Aug. 7, 2018), ECF No. 51.

7    The panel consisted of CCRB chairman Frank Davie and CCRB members S. Carceterra and M. Rivadene. (Am. Compl., Dkt. 24-1, at 18.)

**\*3** During discovery, Plaintiff received the CCRB investigative records and learned that there were seven NYPD officers involved in his arrest, not five, as he had previously thought. (Am. Compl., Dkt. 24-1, at 19.) According to Plaintiff, when questioned by the Court as

to whether there were other arresting officers that should have been added to the complaint, Corporation Counsel attorney Brown "strategically respon[ded][ ] by mentioning only[ ] (Sgt. Rahman) with a conscious disregard [in] excluding arresting officers ... [William Chow and Elisa Battista) ... when having constructive knowledge of direct participation [by] all seven arresting officers." (*Id.* at 19.) Plaintiff claimed that Brown failed to mention Officers Chow and Battista in order to cover up the CCRB's "mishandling [of] investigations in disavowing information while deleting arresting officers police misconduct ... which result[ed] in [the] same two arresting officers [being] intentionally excluded from the" CCRB decision. (*Id.* at 19–20.) Plaintiff also alleged that BDS attorney Regis had seen Officers Chow and Battista on the surveillance tape during her visit with Plaintiff in April 2017, but hid their involvement from Plaintiff. (*Id.* at 20.) Plaintiff further claimed that he later learned through discovery that "the video surveillance tape, audio and investigative records sent by [the City], [BDS], Brooklyn District Attorney['s] Office and Corporation Counsel law dept [had been] doctor[ed], deleting [the] arresting officers['] police misconduct[.]" (*Id.*) Plaintiff believed that the "records, videos, and audio[ ]" provided to Plaintiff and the Court were "doctored when sent during discovery." (*Id.* at 21–22 (asserting that Defendants were "banking on [P]laintiff's disability" and "hinder[ing] him from exercising his Civil Rights").) According to Plaintiff, the original video surveillance tape showed Officer Battista "kneeling over [P]laintiff in a malicious assault," and an audio file depicted Officer Vazquez stating that "he [had] used physical force on [P]laintiff," but both files had been deleted, "along with missing investigative records concerning direct participation[.]" (*Id.* at 20.)

On November 6, 2018, the Court granted Plaintiff leave to file an amended complaint. (Dkt. 62.) The Amended Complaint additionally named as defendants NYPD Officers William Chow and Elisa Battista, Sergeant Sazedur Rahman, and the City of New York (the "City").[8] Amended Complaint, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Oct. 31, 2018), ECF No. 61; 11/6/2018 Order, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Nov. 6, 2018), ECF No. 62. On February 7, 2019, Plaintiff filed a motion to compel, in which he raised the issue of the allegedly altered videos, asserting that the "CCRB and Corporation Counsel have in their po[ss]ession video record evidence of ... facts of police criminal misconduct." Motion to Compel, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Feb. 7, 2019), ECF No. 86, at 1. In response, Corporation Counsel explained that:

> Defendants produced copies of these videos to Plaintiff in their original form as received by [Corporation Counsel], and were not altered in any way by this Office. Additionally, Defendants attach hereto as Exhibit B a video of the underlying incident received from the Kings County District Attorney's Office, which is an incomplete version of the video from Brooklyn Defender Services that was previously provided to Plaintiff during discovery and to the Court on December 22, 2017.

Response to Motion to Compel, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Feb. 22, 2019), ECF No. 91, at 1–2.[9] In its partial grant of summary judgment, the Court briefly addressed this argument and found it "not cognizable," given that "Plaintiff offer[ed] no record evidence to suggest that the video evidence [had been] doctored." *Walker*, 2020 WL 606788, at *3 n.6.

[8]   In his Amended Complaint in *Walker v. Raja*, Plaintiff set forth his theories about the video alterations and omission of Officers Chow's and Battista's identities from the defendants' initial disclosures. *See, e.g.*, Amended Complaint, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Oct. 31, 2018), ECF No. 61, at 3 ("Plaintiff states that police officer Battista [ ] somehow was not mentioned within [the initial disclosures] but was present during [P]laintiff['s] assault and arrest.... In addition[,] in and around April of 2017[,] [P]laintiff, defense attorney, and [a] social worker viewed a record of a female officer [ ] assaulting [P]laintiff[.] [T]his video record is missing as evidence and has yet to surface[ ].... Battista[ ] somehow disappear[ed] from [the] CCRB investigation completely[.]"), 12 ("Police officer Battista was not included but is an Arresting officer present at the scene.").

[9]   Plaintiff alleges that, in response to his raising of the issue of doctored videos in *Walker v. Raja*, Corporation Counsel stated that it was the Kings County District Attorney's Office that had deleted portions of the video surveillance

2021 WL 1838277

tape, not Corporation Counsel. (Compl., Dkt. 1, at 15 (referring to the "Brooklyn" District Attorney's Office, which is the Kings County District Attorney's Office).) Although Corporation Counsel's above statement form its response to the motion to compel, *Walker v. Raja*, No. 17-CV-5202, Dkt. 91, at 1–2, does indicate that the copy of the video sent by the District Attorney's Office to Corporation Counsel was "incomplete" when compared to the BDS version provided to Plaintiff and the Court, that does not mean that the District Attorney's Office "doctored" the video; rather, it means only that the Office did not provide the entire video to Corporation Counsel. "Incomplete" is not the same as "doctored" or equivalent to altering images. Indeed, contrary to Plaintiff's contention, he received the entire video from BDS in discovery, and there is no basis for Plaintiff's claim that any party "doctored" video evidence in *Walker v. Raja*.

**\*4** Plaintiff also moved for sanctions against the CCRB and Corporation Counsel, [10] *see* Motion for Sanctions, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Mar. 4, 2019), ECF No. 93, which the Honorable Lois Bloom denied on the grounds that there was "no record evidence that [D]efendants [had] disobeyed a discovery order or engaged in sanctionable conduct. Defendants have provided the videos to plaintiff as they were received by their office," 4/2/2019 Order, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Apr. 2, 2019), ECF No. 95.

[10]     In a submission filed April 1, 2019, Plaintiff asserted that, though Defendants "produced 3 doctored video segments" during discovery, "the building where the incident occurred had an adjoining store," which "had at least one other camera that would have recorded a more concise detailed description concerning relevant footage of [Officer] Vazquez strategically taking a firearm from a civilian then carefully planting [the] firearm near plaintiff['s] feet as he is beaten by other defendants." Plaintiff's Supportig Evidence, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Apr. 1, 2019), ECF No. 94, at 5. Plaintiff claimed that he "attempted to obtain this footage on multiple occasions[,] but was unsuccessful due to preventive tactics by counsel for the defendants." (*Id.*)

The parties cross-moved for summary judgment, and by Memorandum and Order on February 7, 2020, the Court

denied Plaintiff's motion and partially granted and denied Defendants' motion, dismissing some of Plaintiff's claims. *Walker*, 2020 WL 606788, at \*13. That case is pending trial as to the few remaining claims, *i.e.*, claims for excessive force and failure to intervene as to Defendants Raja, Vazquez, Brown, Chow, and Battista, and failure to supervise as to Defendant Rahman. [11] *See id.* In anticipation of trial, the Court, *inter alia*, granted the defendants' motion in limine to preclude Plaintiff "from proffering any evidence to suggest that any material was doctored in this matter." Court's Motions *in Limine* Chart, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Aug. 11, 2020) ECF No. 144, at 2, #9.

[11]     On April 12, 2021, the Court referred the case to the Trial Ready Rapid Mediation Program, and requested the ADR Department to secure pro bono counsel for Plaintiff. *See* 4/12/2021 Order, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Apr. 12, 2021).

Plaintiff filed the instant action thereafter.

### III. The Instant Action

On October 29, 2020, Plaintiff commenced the instant action against the City, BDS, the CCRB, the IAB, and Corporation Counsel based on the alleged misconduct relating to investigations into his January 2017 arrest and the discovery process in *Walker v. Raja*. (Compl., Dkt. 1.) On January 21, 2021, Plaintiff filed a submission entitled "Amended Complaint," consisting of three pages summarizing the exhibits he seeks to incorporate in his Complaint. (Dkt. 21.) On February 9, 2021, Plaintiff filed the Amended Complaint, adding as defendants the NYPD and individual employees of the NYPD, CCRB, and Corporation Counsel in their individual and official capacities. [12] (*See generally* Am. Compl., Dkt. 24-1.)

[12]     Specifically, Plaintiff seeks to bring claims against Detective Courtney Winston, Detective Raymond Higgins, Detective Jason Guzman, Detective Patrick Jean Pierre, and Ranking Detective Daniel Perrino of the NYPD's 70th Precinct; Chairman Frank Davie and employees A. Wassim, S. Carceterra, M. Rivardene, and Records Access Officer Alexander George of the CCRB; Captain Brian White, Lieutenant Dwayne Watson, Sergeant Moode, Detective Carmelo Rivera, and Detective Rashad Vandross of the NYPD's IAB and 67th precinct; and Corporation Counsel attorneys

Nelson Genevieve, Daniel H. Oliner, Allyson Nicole Brown, and Christopher D. Deluca.

 **\*5** For the reasons discussed below, the Court dismisses the Amended Complaint in its entirety, and grants Plaintiff leave to file a Second Amended Complaint within sixty (60) days.

## LEGAL STANDARD

A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A document filed *pro se* is to be liberally construed, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). "If [a] liberal reading of the complaint gives any indication that a valid claim might be stated, the Court must give the plaintiff an opportunity to amend the complaint." *Nelson-Charles v. U.S. Dep't of Educ.*, No. 19-CV-1616 (PKC) (PK), 2019 WL 1675999, at \*2 (E.D.N.Y. Apr. 16, 2019) (internal quotation marks omitted) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Title 28 of the United States Code § 1915A requires this Court to review the complaint in a civil action in which a prisoner seeks redress from a governmental entity or from officers or employees thereof, and to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Similarly, pursuant to the IFP statute, a district court must dismiss a case if the court determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

## DISCUSSION

Although Plaintiff's Amended Complaint is slightly confusing in that he frequently references legal phrases without substantively elaborating on his allegations, he appears to center his claims on five main theories: (1) the CCRB and IAB failed to properly investigate his claims against his arresting officers, and the City, CCRB, IAB, Corporation Counsel, and BDS subsequently conspired to cover up the mishandled investigation by doctoring video evidence and failing to disclose the identities of Officers Chow and Battista in *Walker v. Raja*; (2) NYPD officers pressured witnesses and covered up evidence in the lead-up to Plaintiff's grand jury indictment; (3) the City's failure to train led to the foregoing violations; (4) the City and BDS failed to accommodate Plaintiff's visual impairment during his underlying criminal proceedings; and (5) the City failed to establish an independent commission to investigate Plaintiff's claims against his arresting officers. Based on these factual allegations, Plaintiff asserts claims pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 against the City, the NYPD, individual NYPD officers, BDS, BDS attorney Regis, the CCRB, CCRB employees, the IAB, IAB employees, Corporation Counsel, and Corporation Counsel attorneys; claims pursuant to Title II of the ADA and the Rehabilitation Act against the City, BDS, and BDS attorney Regis; and state-law claims against the City. (Am. Compl., Dkt. 24-1, at 23–43.)[13]

[13]    Though not distinguishing between claims under Section 1983 and state law, Plaintiff explains that he "asserts the following thirteen Counts of which all are amongst defendants": (1) deliberate indifference, (2) negligence, (3) conspiracy, (4) failure to intervene, (5) fraudulent misrepresentation or deception, (6) abuse of process, (7) intentional infliction of emotional distress, (8) equitable estoppel, (9) due process, (10) equal protection, (11) procedural due process, (12) fabrication of evidence and failure to investigate, and (13) substantive due process. (Dkt. 26, at 4.)

## I. Section 1983

 **\*6** 42 U.S.C. § 1983 ("Section 1983") "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 438 (E.D.N.Y. 2012) (quoting *Baker v. McCollan*, 443 U.S 137, 144 n.3 (1979)); *accord Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). In order to maintain a civil rights action under Section 1983, a plaintiff must allege two essential elements. First, the conduct challenged must have been "committed by a person

acting under color of state law[.]" *Cornejo*, 592 F.3d at 127 (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." (internal quotation marks and citation omitted)). Second, the conduct complained of "must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo*, 592 F.3d at 127; *see also Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999).

### A. Claims Against the NYPD, IAB, CCRB, and Corporation Counsel

As an initial matter, claims against agencies of the City of New York, including the NYPD, IAB, the CCRB, and Corporation Counsel, are not allowed, and instead, must be brought against the City of New York. *See* N.Y.C. Charter, ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Ojeda v. Mendez*, No. 20-CV-3910 (EK) (LB), 2021 WL 66265, at *3 (E.D.N.Y. Jan. 7, 2021) (dismissing claims against, *inter alia*, the NYPD and IAB as non-suable entities (citing N.Y.C. Charter, ch. 17, § 396)); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) ("[T]he NYPD is a non-suable agency of the City." (citation omitted)); *Wingate v. City of New York*, No. 14-CV-4063 (ARR) (LB), 2018 WL 3863439, at *10 (E.D.N.Y. Aug. 14, 2018) ("Plaintiff's claims against Corporation Counsel ... are dismissed because [it is] not [a] suable entit[y]." (citing, *inter alia*, N.Y.C. Charter ch. 17, § 396)).

Therefore, Plaintiff's claims against the NYPD, the IAB, the CCRB, and Corporation Counsel are dismissed for failure to state a claim.

### B. Claims against BDS and BDS Attorney Regis

Plaintiff's Section 1983 claims against BDS and BDS attorney Regis also must be dismissed. Though BDS and Regis were appointed by the state court as Plaintiff's counsel in his underlying criminal case, as a general matter, Plaintiff cannot sue his public defender under Section 1983. *see Polk County. v. Dodson*, 454 U.S. 312, 324–25 (1981) (holding that public defenders do not act under color of law when they represent defendants and are not subject to suit under Section 1983); *Rodriguez v. Weprin*, 116 F.3d 62, 65–66 (2d Cir.

1997) ("[C]ourt-appointed attorneys performing a lawyer's traditional functions as counsel to defendant[s] do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983." (internal citation omitted)).

> Absent special circumstances suggesting concerted action between an attorney and a state representative, the representation of a defendant by private counsel in state criminal proceedings does not constitute the degree of state involvement or interference necessary to establish a claim under § 1983, regardless of whether that attorney is privately retained, court-appointed, or employed as a public defender.

*Liverpool v. City of New York*, No. 19-CV-5527 (CM), 2019 WL 3745734, at *2 (S.D.N.Y. Aug. 7, 2019) (citing, *inter alia*, *Nicholas v. Goord*, 430 F.3d 652, 656 n.7 (2d Cir. 2005)); *see also id.* at *3 (noting that the plaintiff "has not stated a § 1983 claim against" a BDS attorney, who is a "private part[y] who do[es] not work for any state or other government body"). Although Plaintiff claims that BDS attorney Regis prevented Plaintiff from seeing and accessing certain surveillance tape evidence in an effort to "insulate [the] seven arresting officers" (Am. Compl., Dkt. 24-1, at 16), these claims neither sufficiently allege "concerted action" between Regis and "state representatives," nor are they supported by any factual allegation in the Complaint or Amended Complaint. Given the wholly conclusory nature of Plaintiff's assertion that Defendant Regis sought to protect the arresting officers, the Court cannot find any "special circumstance" that justifies deviating from the fundamental principle that Plaintiff's court-appointed defense counsel cannot be sued as state actors under Section 1983.

**\*7** Therefore, Plaintiff's Section 1983 claims against BDS and Regis are dismissed for failure to state a claim.

### C. Claims Against NYPD Officers

When asserting claims under Section 1983 against government officials, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v.*

*Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). In connection with his claims against NYPD 70th Precinct Detectives Winston, Higgins, Guzman, Jean Pierre, and Perrino, Plaintiff alleges that the detectives,

> acting under the color of state law, also as arms to the (NYPD), in concert with the [BDS], in a Sin Qua Non to insulate seven arresting officers police misconduct by suppressing exculpatory impeaching evidence, falsifying arrest reports, and allowing inadmissible tainted / manufactured evidence during plaintiff's grand jury proceedings. [The detectives] amplified their conduct by excluding two crucial arresting officers, (William Chow) [ ], (Elisa Battista) police misconduct, obstructed the due course of justice. [The detectives] dissuaded arresting officers from telling the truth during secretive meeting of the minds, while forwarding false reports to the grand jury resulting in perjury of witnesses to deprive, oppress, annoy, wantonly motivated to do plaintiff harm in order to insulate seven arresting officers['] police misconduct in order to obtain a collateral objective that's outside legitimate ends of process.

(Am. Compl., Dkt. 24-1, at 27–28.) [14] As to supervisory officers Captain White, Lieutenant Watson, and Sergeant Moode, Plaintiff alleges simply that they "failed t[o] intervene to prevent such violations [by the IAB] from occurring[,] resulting in injuries of fraudulent concealment [and] [subjecting] [P]laintiff [to] discovery harm that was suffered in deception to delay in bring[ing] [ ] suit by keeping investigation reports from [P]laintiff." (*Id.* at 39.)

[14]   In an affirmation attached to his Amended Complaint, Plaintiff asserts further allegations against Detectives Winston, Higgins, Guzman, Jean Pierre, and Perrino, but these allegations are

similarly vague and fail to allege the detectives' personal involvement. (*See* Dkt. 24-2, at 3–7.)

To the extent Plaintiff argues that his arrest and criminal charges were premised on the presentation of "manufactured evidence" during grand jury proceedings, the Court already dismissed such a claim in *Walker v. Raja*, finding that "the evidence overwhelmingly supports a finding that Plaintiff robbed the store with a firearm," and thus Plaintiff cannot establish that "fabricated evidence le[d] to a false charge against him." *See* 2020 WL 606788, at *10. Furthermore, to the extent this claim calls into question the validity of Plaintiff's conviction, it is barred by the favorable termination rule set forth in *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994), which holds that a state prisoner's Section 1983 action is barred if success in that action would necessarily demonstrate the invalidity of a criminal conviction or sentence. *see Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis removed)). Lastly, Plaintiff's general, conclusory statements fail to allege the individual officers' personal conduct that led to the deprivation of Plaintiff's constitutional rights. In fact, Plaintiff fails to state *any* factual allegations as to Detectives Rivera and Vandross of the 67th precinct, despite naming them as Defendants in the Amended Complaint.

**\*8**  Plaintiff's claims against the individual NYPD officers of the 70th Precinct are thus dismissed, with leave to replead facts relating to their individual conduct, provided that any repleaded allegations do not relate to the due-process claim the Court has already dismissed in *Walker v. Raja*. *See* 2020 WL 606788, at *10.

### D. Claims against CCRB Employees

To the extent Plaintiff brings claims against CCRB employees —Chairman Frank Davie, employees A. Wassim and George Alexander, and panel members M. Rivardene and S. Carceterra—for their involvement in the allegedly defective investigation into Plaintiff's arresting officers, the claims are dismissed for lack of personal involvement and for failure to state a claim. First, with respect to Defendants Davie, Alexander, Rivardene, and Carceterra, Plaintiff alleges only that they participated in the CCRB's decision absolving the

2021 WL 1838277

arresting officers of responsibility, which, in itself, does not constitute a violation of Plaintiff's rights. As to CCRB investigator A. Wassim, Plaintiff alleges:

> (CCRB) field investigator, (A. Wassim) interrogated plaintiff's Brooklyn Public Defender, (Danielle Regis) and with a conscious disregard withheld records of interrogations, an overt act in concealing meetings of the minds that exhibited deliberate indifference by turning their heads to the obvious by disavowing, exculpatory, probative, impeaching evidence in interference with state and federal Court proceedings, unlawful actions motivated by an intent to deprive plaintiff Equal protection of the laws. Defendants refrained and dissuaded arresting officers from giving the truth, concerning accurate statements involving the plaintiff incident on, (Jan 8. 2017) resulting in false oral and written statements preventing an honest investigation when false and defamatory statements of facts in their final determination caused a deprivation of plaintiff's civil rights, pursuant to, 42 USC § 1985, while inconsistent with the, IAB investigation holding a different set of arresting officers in their investigation, violation of plaintiff's Due process. Private actors acted in concert with the IAB and Corporation Counsel to inflict an unconstitutional Injury, causing damages[.]

(Am. Compl., Dkt. 24-1, at 33.) Beyond the conclusory statements couched in legal terminology, Plaintiff has failed to explain exactly what "truth" Defendant Wassim dissuaded the officers from telling, and what "false and defamatory statements" were induced. Without more, the claim against Defendant Wassim cannot proceed.

Furthermore, Plaintiff fails to allege the violation of any constitutional right in connection with the CCRB

investigation and final decision. "It is well[-]established that there is no constitutional right to an investigation by government officials." *Troy v. City of New York*, No. 13-CV-5082 (AJN), 2014 WL 4804479, at *6 (S.D.N.Y. Sept. 25, 2014) (internal quotations, alterations, and citations omitted); *see also Koulkina v. City of New York*, 559 F. Supp. 2d 300, 316 (S.D.N.Y. 2008) ("[T]here is no federal constitutional right to a[ ] [CCRB] investigation." (citing *Blount v. Swiderski*, No. 03-CV-0023 (ENV), 2006 WL 3314635 at *12 (E.D.N.Y. Nov. 14, 2006)); *McCaffrey v. City of New York*, 2013 WL 494025, at *5 (S.D.N.Y. Feb. 7, 2013) ("[A] 'failure to investigate' is not independently cognizable as a stand-alone claim[.]"). Plaintiff thus lacks an actionable claim against the CCRB, the IAB, and their employees for allegedly failing to investigate his claims against the arresting officers.

**\*9** Therefore, Plaintiff's claims against CCRB Chairman Davie, employees A. Wassim and George Alexander, and panel members M. Rivardene and S. Carceterra are dismissed.

### E. *Monell* Claims Against the City
Plaintiff alleges that the City failed to protect his constitutional rights by, *inter alia*, "fail[ing] to train and supervise" its employees, "creating and contin[uing] in policies or customs upon having a conscious disregard in private and government municipalities in protecting plaintiff's (Const Rights)," and failing to

> set[ ] in place a Commission (Watchdog agency) in preventing private and government entity's in mishandling, and disavowing information involving seven arresting officers police misconduct, revealed upon their investigative work (Collectively) by subpoenaing records resulting in overt acts by withholding, Aided cards, doctor[ing] investigative records, video surveillance tapes, TRI audio radio runs, and disciplinary records[.]

(Am. Compl., Dkt. 24-1, at 23–25.)

Plaintiff's claims against the City of the New York cannot proceed. A municipality can be liable under Section 1983 if the plaintiff can show that a municipal policy or custom caused the deprivation of his constitutional rights. *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). Four types of practices may give rise to a Section 1983 claim against a municipality:

> (1) a formally adopted municipal policy; (2) the actions or decisions of a municipal official with final policymaking authority; (3) a practice so persistent and widespread that it constitutes a custom or usage; and (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference.

*Doe v. City of New York*, No. 18-CV-670 (ARR) (JO), 2018 WL 3824133, at *8 (E.D.N.Y. Aug. 9, 2018) (internal quotation marks and citation omitted); *Safran v. Singas*, No. 20-CV-4537 (PKC) (SMG), 2020 WL 7125232, at *4 (E.D.N.Y. Dec. 4, 2020) (citation omitted). Critically, "a prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor." *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 567 (S.D.N.Y. 2010). As the Second Circuit has noted, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006); *see also id.* (noting that once a "district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* [is] entirely correct").

### 1. Underlying Constitutional Violation

Plaintiff purports to bring claims under the Sixth, Fifth, and Fourteenth Amendments, but fails to allege constitutional violations by any state actor.

Plaintiff fails to state a Six Amendment claim.

To prevail on a claim for denial of the constitutional right to a fair trial, a plaintiff must demonstrate that "(1) an investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result."

**\*10** *Case v. City of New York*, 408 F. Supp. 3d 313, 322–23 (S.D.N.Y. 2019) (quoting *Caravalho v. City of New York*, 732 F. App'x 18, 24 (2d Cir. 2018) (summary order)). The fabricated information must be "both false and likely to influence a jury's decision." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 280 (2d Cir. 2016). Plaintiff has failed to sufficiently allege any element of a Sixth Amendment violation. As discussed, he offers only conclusory assertions that evidence was "manufactured" by NYPD officers and others without providing any factual allegations to support these claims, such as what evidence was allegedly fabricated and forwarded to prosecutors, by whom, and when, and how that evidence might have affected a jury's verdict. Furthermore, to the extent Plaintiff alleges that NYPD officers mishandled investigations leading up to his criminal charges, "in the context of § 1983, allegations of officers' failure to investigate are considered under the rubric of false imprisonment, false arrest, or malicious prosecution." *Campbell v. Giuliani*, No. 99-CV-2603 (JG), 2000 WL 194815, at *3 n.6 (E.D.N.Y. Feb. 16, 2000) (citing *Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 135 (E.D.N.Y. 1998)); *see also Luck v. Westchester Med. Ctr.*, No. 17-CV-9110 (NSR), 2020 WL 564635, at *7 (S.D.N.Y. Feb. 4, 2020) (collecting cases). For the same reasons set forth in *Walker v. Raja*, Plaintiff fails here too to state a claim for false imprisonment, false arrest, or malicious prosecution. Thus, Plaintiff's Sixth Amendment claims are dismissed.

As to any Fifth Amendment claims Plaintiff seeks to bring, the "Fifth Amendment only applies to claims against the federal government," and not the Defendants in this case. *see Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 412 n.1 (S.D.N.Y. 2013). Any Fifth Amendment claims are thus dismissed.

Plaintiff's claims of Fourteenth Amendment violations pursuant to Section 1983 are also dismissed for failure to state a claim. First, to the extent Plaintiff alleges an equal-protection violation, he has failed to make the requisite factual allegations. "To prove a violation of the Equal Protection Clause ... [,] a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination ... [and] that the

Case 6:22-cv-01082-GTS-TWD    Document 5    Filed 11/09/22    Page 29 of 96

disparity in treatment cannot survive the appropriate level of scrutiny[.]" *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (citations omitted). Plaintiff has not alleged facts from which to infer that Defendants acted with any racial or otherwise impermissible animus, or that Plaintiff was treated differently from any similarly situated persons.

Furthermore, as discussed above, to the extent Plaintiff argues that his procedural due process rights were violated by the mishandling of investigations into his claims against the officers by the CCRB, the IAB, and their employees, these allegations do not give rise to a constitutional violation. *See supra* Section I.D.

Nor does the alleged withholding of evidence and alteration of video surveillance footage in *Walker v. Raja* amount to a constitutional violation. Though Plaintiff alleges that Defendants withheld evidence regarding Officers Chow's and Battista's involvement in the January 2017 altercation, Plaintiff faced no barriers in adding Officers Chow and Battista as Defendants in his amended complaint in *Walker v. Raja*. In fact, the excessive force claims in that case against the NYPD Officers, including Officers Chow and Battista, are currently pending trial. Though Plaintiff was not able to name Officers Chow and Battista as defendants as early as he otherwise may have liked, this delay does not violate Plaintiff's constitutional rights. *Cf. Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) ("Mere delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." (internal quotations and citation omitted)); *see also Smith v. Annucci*, No. 18-CV-1107 (DNH) (DJS), 2019 WL 11727264, at *4–5 (N.D.N.Y. Jan. 16, 2019) ("A hypothetical injury is not sufficient to state a claim for violation of the right of access to the courts. Instead, a plaintiff must demonstrate actual injury by establishing that the denial hindered his efforts to pursue a non-frivolous legal claim." (internal quotations and citations omitted)).

**\*11** Finally, to the extent Plaintiff wishes to hold the Defendant NYPD Officers and/or Corporation Counsel accountable for "derelict tactics" during discovery, the correct mechanism through which to do so is moving for sanctions in that case, which Plaintiff has already, albeit unsuccessfully, done. *See* Motion for Sanctions, *Walker v. Raja*, No. 17-CV-5202 (PKC) (LB) (E.D.N.Y. Mar. 4, 2019), ECF No. 93; 4/2/2019 Order, *Walker v. Raja*, No. 17-CV-5202 (PKC) (LB) (E.D.N.Y. Apr. 2, 2019), ECF No. 95. And as discussed above, the issue of the allegedly doctored video evidence

was addressed and rejected by the Court in *Walker v. Raja*. *See, e.g.*, *Walker*, 2020 WL 606788, at *3 n.6; Transcript of 8/11/2020 Pretrial Conference, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Aug. 11, 2020), at 25:15–24 (the Court stating: "The bottom line is I have not seen any evidence, Mr. Walker, about the tapes to show that this tape has been doctored. I have viewed the video surveillance a number of times and it certainly depicts the event that you are complaining about in which you say that the officers use excessive force. And obviously, I relied in part o[n] my viewing of that video surveillance to allow your excessive force claim to go through. So at this point, again I will just reiterate, that I do not see any basis for your claim that the video surveillance footage was doctored.").

In sum, Plaintiff has failed to sufficiently allege a constitutional violation by any state actor, which, in itself, requires dismissal of his *Monell* claims against the City.

### 2. Custom or Policy

Even if this were not the case, the allegations in Plaintiff's Amended Complaint do not give rise to a *Monell* claim against the City. Plaintiff proffers two theories of liability against the City under *Monell*: that the City (1) failed to train and supervise its employees, exhibited deliberate indifference to Plaintiff's rights, and created a policy or custom that resulted in the deprivation of Plaintiff's rights (Am. Compl., Dkt. 24-1, at 23–24); and (2) consciously disregarded Plaintiff's equal-protection and due-process rights, and rights under the ADA, by failing to establish an independent Commission to investigate Plaintiff's claims against the officers (*id.* at 24–25). (*see also id.* at 14 ("Plaintiff advance[s] two theories of municipal liability. First asserts that the City has a custom of zealously promoting debating science in mishandling investigations failed to train employees[.]")

However, Plaintiff offers only conclusory statements in support of his claims that the City failed to train and supervise its employees or created a policy or custom that resulted in the deprivation of Plaintiff's rights. (*See, e.g.*, Am. Compl., Dkt. 24-1, at 23–24.) Plaintiff argues, for example, that the City "knew of the moral certain[t]y that private and government superiors and their subordinates would acquire legally blind individuals (clients)," and that the failure to train subordinates pursuant to the ADA "will virtually always lead to a substantial violation[ ], in Due process [and] Equal protection[.]" (*Id.* at 12.) Plaintiff also

WESTLAW    © 2022 Thomson Reuters. No claim to original U.S. Government Works.    10

argues that the City failed to properly train its agencies, presumably the CCRB and the IAB, "in handling police misconduct allegations and records," thereby insulating the seven arresting officers and violating Plaintiff's Fourth and Fourteenth Amendment rights. (*Id.* at 13.) Such "boilerplate assertion[s]" are insufficient to state a *Monell* claim. *see Dumel v. Westchester County,* No. 19-CV-2161 (KMK), 2021 WL 738365, at *6 (S.D.N.Y. Feb. 25, 2021) (collecting cases); *Triano v. Town of Harrison,* 895 F. Supp. 2d 526, 540 (S.D.N.Y. 2012) (same). Nor does the decision against establishing an independent Commission (*e.g.,* Am. Compl., Dkt. 24-1, at 24–25)—a discretionary choice by the City— arise to a conscious disregard of Plaintiff's rights. *see Doe,* 2018 WL 3824133, at *8.

Therefore, Plaintiff's *Monell* claims against the City are dismissed for failure to state a claim. *see Johnson v. City of New York,* No. 18-CV-4030 (MKB), 2020 WL 249100, at *2 (E.D.N.Y. Jan. 16, 2020) (dismissing a *Monell* claim because the plaintiff failed to allege facts "to support an inference that the City had an official policy or custom that caused a violation of any federally protected right").

## II. Sections 1985 and 1986

**\*12** To the extent Plaintiff alleges a conspiracy to deprive him of constitutional rights under Sections 1985 and 1986, those claims are dismissed as to all Defendants.

> To state a civil rights conspiracy under § 1985(3), a plaintiff must allege: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. A section 1985(3) conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.

*Britt v. Garcia,* 457 F.3d 264, 270 n.4 (2d Cir. 2006) (internal quotations and citations omitted); *see also Brito v. Arthur,* 403 F. App'x 620, 621 (2d Cir. 2010) (summary order) ("To state a conspiracy claim under 42 U.S.C. § 1985, Appellant must have alleged: (1) some racial or other class-based discriminatory animus underlying the Appellees' actions; and (2) that the conspiracy was aimed at interfering with Appellant's protected rights." (citing *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 268 (1993))).

With respect to his claims under Sections 1985 and 1986, Plaintiff alleges that Defendants

> held secret meetings of the minds, leading to issuing subpoenas, conducting interrogations, communication through e-mails, coming into contact, and further overt acts in the suppression of exculpatory evidence, unreasonably prolonging investigations, while doctoring records, video, audio recordings, falsifying reports and dissuading arresting officers from telling the truth, fraudulent concealment caused plaintiff to suffer possible discovery deception wrongly deceived.

(Am. Compl., Dkt. 24-1, at 11–12.)

These allegations plainly fail to state a claim under Section 1985(3). First, they are "nothing more than conclusory allegations of a conspiracy between and among Defendants." *see DuBois v. Bedford-Flatbush Chiropractic, P.C.,* 409 F. Supp. 3d 62, 67 (E.D.N.Y. 2019). Second, they do not suggest any agreement to violate constitutional rights based on class-based discriminatory animus. *see Brito,* 403 F. App'x at 621. Accordingly, Plaintiff's Section 1985 claim must be dismissed. *see Gallop v. Cheney,* 642 F.3d 364, 369 (2d Cir. 2011) (finding allegations of conspiracy "baseless" where the plaintiff "offer[ed] not a single fact to corroborate her allegation of a 'meeting of the minds' among the conspirators"); *Webb v. Goord,* 340 F.3d 105, 110–11 (2d Cir. 2003) (to maintain a conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the

minds"); *Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir. 1999) (per curiam).

Since Plaintiff's Section 1985 conspiracy claim fails, his Section 1986 claim also fails. *see Graham v. Henderson,* 89 F.3d 75, 82 (2d Cir. 1996) ("[A] § 1986 claim is contingent on a valid § 1985 claim[.]"); *see also Wang v. Off. of Pro. Med. Conduct*, 228 F. App'x 17, 19 (2d Cir. 2007) (summary order). [15]

[15]    42 U.S.C. § 1986 creates civil liability for failing to prevent actions taken pursuant to a § 1985 conspiracy: "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented ...." 42 U.S.C. § 1986.

**\*13**  Therefore, Plaintiff's Section 1985 and 1986 claims are dismissed for failure to state a claim.

### III. ADA and Rehabilitation Act

Plaintiff alleges that the City failed "to implement adequate training courses to [BDS] in safeguarding [P]laintiff's [rights] pursuant to [the] ADA [and] Rehabilitation Act[.]" (Am. Compl., Dkt. 24-1, at 30.) He asserts that the City should have "implemented polic[ies, or customs fit in training Court appointed attorneys when faced with representing qualified individuals" (*id*), and that BDS attorney Regis's meeting with Plaintiff without "a qualified interpreter (advocate)" and "any auxiliary aids and devices for [P]laintiff's disability" violated Plaintiff's rights (*id.* at 31).

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act similarly provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or

activity receiving Federal financial assistance." 29 U.S.C. § 794(a); *see also Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009) (citing, *inter alia*, 29 U.S.C. § 794(a)). "In most cases, the standards are the same for actions under both statutes." *Harris*, 572 F.3d at 73 (internal quotations, alteration, and citation omitted). The Court thus analyzes Plaintiff's claims with reference only to Title II of the ADA, but the same analysis applies for any claim under the Rehabilitation Act.

To assert a claim under Title II, Plaintiff "must demonstrate that '(1) he is a qualified individual with a disability; (2) [Defendants] [are] subject to [the statute]; and (3) he was denied the opportunity to participate in or benefit from [ ] [D]efendant['s] services, programs, or activities, or was otherwise discriminated against by [D]efendant[s] because of his disability." *Disabled in Action v. Bd. of Elections*, 752 F.3d 189, 196–97 (2d Cir. 2014) (footnote omitted) (quoting *McElwee v. County of Orange*, 700 F.3d 635, 640 (2d. Cir. 2012)). An ADA "plaintiff may base [his] discrimination claim on one of three theories of liability: disparate treatment, disparate impact, or failure to make a reasonable accommodation." *Davis v. Shah*, 821 F.3d 231, 260 (2d Cir. 2016); *see also Disabled in Action*, 752 F.3d 189, 197 (2d Cir. 2014) (ellipsis omitted) ("To assure meaningful access, 'reasonable accommodations in the [public entity]'s program may have to be made.' " (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 (2d Cir. 2003))).

Under the applicable standards, there are several limitations to Plaintiff's ADA claims. First, Title II claims may proceed against individuals only if they are government officers acting in their official capacity. *see Harris*, 572 F.3d at 72. Plaintiff thus cannot bring an ADA claim against BDS attorney Regis, a private individual (who does not qualify as a state actor, as previously discussed). Plaintiff's ADA claim against BDS attorney Regis is therefore dismissed. *see Green v. City of New York*, 465 F.3d 65, 76 (2d Cir. 2006) (affirming dismissal of ADA claim against a private individual).

**\*14**  Second, "Title II applies only to state and local governments, their instrumentalities, and commuter authorities." *Pierce v. Fordham Univ., Inc.*, 692 F. App'x 644, 646 (2d Cir. 2017) (summary order) (citing 42 U.S.C. §§ 12131, 12132; *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 162–63 (2d Cir. 2013)). The Second Circuit interprets " 'instrumentality' ... as referring to a creature of a state or municipality." *Green*, 465 F.3d at 79. A private entity "performing services pursuant to a contract with a municipality[,] even if it does so according

2021 WL 1838277

to the municipality's rules and under its direction, is not a creature of any governmental entity." *Id.* As discussed above in the dismissal of § 1983 claims against BDS, public defender organizations are private entities. Thus, Plaintiff's ADA claims against BDS are similarly dismissed. *see Browdy v. Karpe*, 131 F. App'x 751, 753–54 (2d Cir. 2005) (summary order) ("[Plaintiff's] ADA claims also were properly dismissed because he has sued his [public defenders], not [a] public entity[.]").

Third, "it is well[-]settled that monetary damages are [ ] available under Title II of the ADA [only] where the Plaintiff is able to demonstrate intentional discrimination." *Frank v. Sachem Sch. Dist.*, 84 F. Supp. 3d 172, 186 (E.D.N.Y. 2015) (citing *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009)), *aff'd*, 633 F. App'x 14 (2d Cir. 2016) (summary order). To prevail on a claim for intentional discrimination under Title II, "a plaintiff must prove a policymaker's 'deliberate indifference to the rights secured the disabled by those statutes,' in addition to the other elements of a Title II claim." *Gershanow v. City of Rockland*, No. 11-CV-8174 (CS), 2014 WL 1099821, at *4 (S.D.N.Y. Mar. 20, 2014) (quoting *KM ex rel. D.G. v. Hyde Park Cent. Sch. Dist.*, 381 F. Supp. 2d 343, 358 (S.D.N.Y. 2005)).

Unless Plaintiff properly pleads the City's intentional discrimination to his rights secured by the ADA and Rehabilitation Act, Plaintiff may claim only injunctive relief. Plaintiff's ADA and Rehabilitation Act claims against the City are thus dismissed, with leave to replead. If Plaintiff seeks to replead his claims under the ADA and Rehabilitation Act, he should make sure to identify the program, benefit, or activity that he was denied the ability to participate in due to his disability.

## IV. State-Law Claims

To the extent Plaintiff purports to bring state-law claims for intentional infliction of emotional distress ("IIED"), respondeat superior, or negligence (*see* Dkt. 26, at 4), these claims are dismissed with leave to replead.

### A. Intentional Infliction of Emotional Distress

"Under New York Law, [IIED] has four elements: '(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial possibility of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.' " *Saleh v. United States*, No. 12-CV-4598 (KBF), 2013 WL 5439140, at *11 (S.D.N.Y.

Sept. 27, 2013) (quoting *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993)). "Whether the alleged conduct is sufficiently extreme and outrageous is a matter of law for the courts to decide." *Frigerio v. United States*, No. 10-CV-9086 (SAS), 2011 WL 3163330, at *9 (S.D.N.Y. July 22, 2011). The extreme and outrageous requirement is met "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* (internal quotations and citations omitted). "[T]he requirements of the rule are rigorous, and difficult to satisfy. Given the 'rigorous' requirements, courts often dismiss claims under the 'extreme and outrageous conduct' prong as a matter of law." *Reid v. Sack*, No. 20-CV-1817 (VM), 2021 WL 100490, at *5 (S.D.N.Y. Jan. 12, 2021) (quoting *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996)).

**\*15** Plaintiff fails to allege that Defendants engaged in extreme and outrageous conduct with the intent to cause him emotional distress, or that he suffered emotional distress as a result of their conduct. To the extent Plaintiff's claim is that some Defendants engaged in extreme and outrageous conduct by "manufacturing" or "doctoring" evidence, that conclusory assertion, as previously discussed, is insufficient. Plaintiff's IIED claim therefore is dismissed.

### B. Respondeat Superior

Because Plaintiff has not demonstrated an "entitlement to recover against [any City] employee," his claim against the City under the doctrine of respondeat superior fails. *see Ferreira v. City of Binghamton*, 975 F.3d 255, 278 (2d Cir. 2020).

### C. Negligence

Plaintiff asserts that the City "was grossly negligent upon setting in place a contractual agreement between, (the City) and [BDS]." (Am. Compl., Dkt. 24-1, at 29.) Under New York law, an essential element of a negligence claim against a municipality is a "special duty to the injured person, in contrast to a general duty owed to the public." *Ferreira*, 975 F.3d at 283 (quoting *McLean v. City of New York*, 12 N.Y.3d 194, 199 (2009)), *certified question accepted*, 35 N.Y.3d 1105 (2020).

New York courts have recognized the existence of such a duty where either "(1) the plaintiff belonged to a class for whose benefit a statute was enacted; (2) the

2021 WL 1838277

government entity voluntarily assumed a duty to the plaintiff beyond what was owed to the public generally; or (3) the municipality took positive control of a known and dangerous safety condition."

*Id.* at 281 (quoting *Applewhite v. Accuhealth, Inc.*, 972 N.Y.S.2d 169, 173 (2013)). Plaintiff has alleged no such duty. His negligence claim against the City is therefore dismissed with leave to replead.

## V. Leave to Amend

In light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to file a Second Amended Complaint within sixty (60) days of this Memorandum and Order. "Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state-law claims when it has dismissed all claims over which it has original jurisdiction." *Liverpool*, 2019 WL 3745734, at *3 n.2 (internal quotations omitted). Because the Court grants Plaintiff leave to replead his federal claims, Plaintiff is also granted leave to replead his state-law claims.

Plaintiff's leave to amend his pleadings is subject to the following limits: (1) Plaintiff should not assert § 1983 claims against the CCRB, IAB, Corporation Counsel, and BDS because, as discussed above, they are non-suable entities under § 1983; (2) Plaintiff should not assert claims relating to the CCRB or IAB investigations against the arresting officers because, as discussed above, there is no constitutional right to a government investigation; (3) Plaintiff should not assert claims relating to the delayed disclosure of Officers Chow's and Battista's involvement in his arrest because, as discussed above, Plaintiff suffered no prejudice and was able to timely add them as defendants in *Walker v. Raja*; (4) Plaintiff should not re-assert any claim that surveillance videotape was "doctored," or that "manufactured" or "fabricated" evidence was produced or introduced during grand jury proceedings; and (5) Plaintiff should not assert-due process claims relating to his underlying arrest and indictment, as the Court has already determined in *Walker v. Raja* that "the evidence overwhelmingly supports a finding that Plaintiff robbed the store with a firearm," *Walker*, 2020 WL 606788, at *10. *see Hunt v. All. N. Am. Gov't Income Trust, Inc.*, 159 F.3d 723, 728 (2d Cir. 1998) ("[I]t is proper to deny leave to replead where there is no merit in the proposed amendments or amendment would be futile.").

**\*16** Plaintiff is advised that the Second Amended Complaint will completely replace the Amended Complaint, must be

captioned "Second Amended Complaint," and shall bear the same docket number as this Memorandum and Order. Plaintiff is also advised that he should submit only one filing constituting his Second Amended Complaint, and that such filing need not include reproductions of court opinions to which Plaintiff cites. Plaintiff need not, and should not, file additional affirmations (*e.g.*, Dkts. 24-2, 26, 27) in connection with the Second Amended Complaint, and should submit only one copy of all further filings in this case. Furthermore, Plaintiff's Second Amended Complaint should reference only exhibits and documents filed in this action and bearing the same docket number as this Memorandum and Order.

Although the Court is obliged to allow Plaintiff to amend his complaint at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks omitted), Plaintiff should proceed in good faith and he must refrain from setting forth conclusory statements (*i.e.*, statements not based on specific factual allegations) in support of his claims and repeating any claims that have been dismissed by this Order.

## CONCLUSION

For the reasons stated above, the Amended Complaint is dismissed in its entirety for failure to state a claim pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B). However, the Court grants Plaintiff's motion to proceed IFP and leave to file a Second Amended Complaint within sixty (60) days, as set forth above. All further proceedings shall be stayed for sixty (60) days or until Plaintiff files a Second Amended Complaint, whichever is earlier. If Plaintiff fails to file a Second Amended Complaint within the time allowed or fails to show good cause why he cannot, the Court shall direct the Clerk of Court to enter judgment and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore IFP status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

## All Citations

Slip Copy, 2021 WL 1838277

**Walker v. City of New York, Slip Copy (2021)**
Case 6:22-cv-01082-GTS-TWD    Document 5    Filed 11/09/22    Page 34 of 96
2021 WL 1838277

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 4472667
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Doran ALLEN, Plaintiff-Appellant,

v.

Scott M. STRINGER, New York City Comptroller,
Warden AMKC-C-95, Defendants-Appellees.

20-3953
|
September 30, 2021

Appeal from a judgment of the United States District Court
for the Southern District of New York (Stanton, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Doran Allen, pro se,
Ossining NY.

FOR DEFENDANTS-APPELLEES: No appearance.

PRESENT: RICHARD C. WESLEY, RICHARD J.
SULLIVAN, Circuit Judges, JOHN G. KOELTL, District
Judge. [*]

[*]      Judge John G. Koeltl of the United States District
Court for the Southern District of New York, sitting
by designation.

**SUMMARY ORDER**

Appellant Doran Allen, proceeding pro se, sued Scott M.
Stringer, in his capacity as New York City Comptroller, and
the unnamed warden of the Rikers Island Anna M. Kross
Center ("AMKC") under 42 U.S.C. § 1983 for violations of
the Due Process Clause of the Fourteenth Amendment. Allen
alleges that, while he was detained at AMKC, a corrections
officer refused to help him carry breakfast trays, causing him
to slip and fall on broken stairs, injuring himself. The district
court dismissed the complaint sua sponte for failure to state a
claim. We assume the parties' familiarity with the underlying

facts, the procedural history of the case, and the issues on
appeal.

We review de novo a district court's sua sponte dismissal of
a complaint under 28 U.S.C. § 1915(e)(2). *Zaleski v. Burns*,
606 F.3d 51, 52 (2d Cir. 2010). Under that statute, the district
court must dismiss a complaint filed in forma pauperis if
it determines that the action "(i) is frivolous or malicious;
(ii) fails to state a claim on which relief may be granted;
or (iii) seeks monetary relief against a defendant who is
immune from such relief." 28 U.S.C. § 1915(e)(2)(B). To
avoid dismissal, a complaint must plead "enough facts to
state a claim to relief that is plausible on its face." *Bell Atl.
Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft
v. Iqbal*, 556 U.S. 662, 678 (2009) (recognizing that "legal
conclusions" and "[t]hreadbare recitals of the elements of a
cause of action, supported by mere conclusory statements, do
not suffice" to plead a viable claim). Pro se submissions are
reviewed with "special solicitude," and "must be construed
liberally and interpreted to raise the strongest arguments that
they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d
471, 474–75 (2d Cir. 2006) (internal quotation marks and
emphasis omitted).

Conditions-of-confinement claims brought by pretrial
detainees are analyzed under the Fourteenth Amendment's
Due Process clause. *Darnell v. Pineiro*, 849 F.3d 17, 29
(2d Cir. 2017). To state such a claim, a plaintiff must
satisfy both an objective prong and a subjective prong.
*See id.* The objective prong requires "showing that the
challenged conditions were sufficiently serious to constitute
objective deprivations of the right to due process," while
the subjective prong requires "showing that [an] officer
acted with at least deliberate indifference to the challenged
conditions." *Id.* (internal quotation marks omitted). If a
conditions-of-confinement claim is predicated on an unsafe
condition, a court will analyze "whether society considers
the risk that the prisoner complains of to be so grave that it
violates contemporary standards of decency to expose *anyone*
unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25,
36 (1993).

Allen alleges that he slipped or tripped on broken stairs,
causing him to fall. But while the existence of broken stairs
could be deemed to constitute negligence on the part of
the prison, broken stairs alone cannot satisfy the objective
prong of a conditions-of-confinement claim. *See McCray v.
Lee*, 963 F.3d 110, 120 (2d Cir. 2020) (explaining that the
defendant's complaint alleging unconstitutional conditions of

2021 WL 4472667

confinement after a slip and fall in an icy prison yard did not show "exceptional circumstances" that would "elevate" the conditions "beyond the typical level of danger presented by a slippery sidewalk or a wet floor"). Because broken stairs cannot be considered a risk that is "so grave that it violates contemporary standards of decency," Allen's conditions-of-confinement claim was properly dismissed. *Helling*, 509 U.S. at 36.

**\*2** But even if it could be argued that Allen alleged an objectively serious condition, the district court properly dismissed Allen's claims against Stringer and the AMKC warden due to the obvious deficiencies in Allen's complaint. As the district court concluded, the suit against the warden in his official capacity was more properly a suit against the City of New York because Allen did not allege that the warden personally had done or failed to do anything that violated his rights. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity... should be treated as suits against the State."). Similarly, Stringer, as the New York City Comptroller, is sued in his official capacity. Allen was therefore obligated to allege sufficient facts showing that the Fourteenth Amendment violation occurred "pursuant to a municipal policy or custom," *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (citing, inter alia, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692–94 (1978)), or was caused by a "failure to train," *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (citing *Monell*, 436 U.S. at 694). Allen did not allege any facts showing that the corrections officer acted pursuant to an unconstitutional policy or custom, or that the City of New York failed to train its corrections officers, as required for such a claim.

The district court also did not abuse its discretion by declining to exercise supplemental jurisdiction over any state-law claims because the district court properly dismissed Allen's § 1983 claim, the only claim over which it had original jurisdiction. *See Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." (internal quotation marks omitted)).

Finally, the district court did not err by denying Allen leave to amend his complaint. A district court should not dismiss a pro se plaintiff's complaint without granting leave to amend "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks omitted). As discussed above, the incident involving the corrections officer and the broken steps did not amount to a due process violation, and that deficiency in the complaint cannot not be cured. Accordingly, amendment would have been futile.

We have considered all of Allen's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

## All Citations

Not Reported in Fed. Rptr., 2021 WL 4472667

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 10351654
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

ANTECH DIAGNOSTICS, INC., Plaintiff,
v.
VETERINARY ONCOLOGY AND HEMATOLOGY
CENTER, LLC; and Dr. Gerald Post, Defendants.
Veterinary Oncology and Hematology Center, LLC; and
Dr. Gerald Post, Counterclaim and Third-Party Plaintiffs,
v.
Antech Diagnostics, Inc., VCA, Inc., VCA Animal
Hospitals, Inc., and Manhattan Veterinary Group,
P.C., Counterclaim and Third-Party Defendants.

Civil No. 3:16-cv-481(AWT)
|
Signed 03/05/2019

**Attorneys and Law Firms**

Amanda C. Nugent, Carmody Torrance Sandak & Hennessey,
LLP, New Haven, CT, Douglas A. Balko, Carmody Torrance
Sandak & Hennessey, LLP, Waterbury, CT, Gary Scott Klein,
Liam S. Burke, Carmody Torrance Sandak & Hennessey,
LLP, Stamford, CT, for Plaintiff.

Edward D. Altabet, Pro Hac Vice, Cohen Seglias Pallas
Greenhall & Furman PC, Gerard Fox
Law, P.C., New York, NY, Melissa B. Francis, Gerard Fox
Law, P.C., New York, NY, Richard J. Buturla, Ryan P.
Driscoll, Berchem Moses P.C., Milford, CT, for Defendants.

Manhattan Veterinary Group, P.C., pro se.

**RULING ON VCA PARTIES' MOTION
FOR PARTIAL SUMMARY JUDGMENT**

Alvin W. Thompson, United States District Judge

**\*1** The counterclaimants and third-party plaintiffs, the
Veterinary Oncology and Hematology Center, LLC, doing
business as the Veterinary Cancer Center ("VCC"), and
Dr. Gerald Post ("Post") bring 14 counterclaims against
Antech Diagnostics, Inc. ("Antech"), VCA Inc. ("VCA"),
VCA Animal Hospitals, Inc. ("VCAAH"), and Manhattan
Veterinary Group, P.C. ("MVG"). The counterclaim and
third-party defendants, Antech, VCA, VCAAH, and MVG

(collectively, the "VCA Parties"), moved for summary
judgment on 12 of these claims.

In their Partial Opposition to Counterclaim/Third Party
Defendants' Motion for Partial Summary Judgment (ECF No.
193), VCC and Post have abandoned the First, Sixth, Eighth,
Ninth, Tenth, and Twelfth Claims, see id. at 19, and those
claims have been dismissed. See ECF 245. Thus, this ruling
addresses the Second, Third, Fourth, Eleventh, Thirteenth,
and Fourteenth Claims. For the reasons set forth below, the
motion is being granted in part and denied in part.

**I. Factual Background**
Post is the founder and chief medical officer of VCC, a
company that specializes in diagnosing and treating pets with
cancer. VCA-owned hospitals referred clients to VCC for
veterinary oncological services. Additionally, MVG, a VCA-
affiliated company, leased VCC's doctors to provide these
services to MVG's patients at its facility in Westbury, New
York.

**A. Disparaging Statements**

Around late 2010 or early 2011, VCC acquired an equity stake
in Newtown Veterinary Specialists, a specialty emergency
animal hospital in Newtown, Connecticut. Around the
same time, VCC developed a referral relationship with
Cornell University Veterinary Specialists ("CUVS") to
provide oncology services at CUVS's facility in Stamford,
Connecticut.

VCC and Post assert that VCC's relationship with the VCA
Parties began to deteriorate after VCC entered into these two
business relationships. VCC and Post contend that VCA and
Antech responded by engaging in a campaign to disparage
VCC and Post in an effort to interfere with VCC's business
relationships. David Duchemin, VCC's hospital director,
testified that sometime between 2009 and 2015, several VCC
employees, doctors, and residents informed him that they
were told that two VCA-affiliated doctors, Diane Kittrell and
Larry Berkwitt, were telling referring veterinarians that Post
was a "quack," VCC's residents "were running amuck," and
VCC's facilities were not clean. See Opp. Ex. 4, Duchemin
Dep. (ECF No. 193-3), at 51:10-52:18, 61:19-24. Duchemin
testified that overall, the "gist" of these statements was that
VCC did not provide quality medicine. Id., at 51:10-14.
However, he could not identify the names of the veterinarians

2019 WL 10351654

or the hospitals with which they were associated. Id., at 60:8-10, 61:1-3. Post also testified that multiple referring veterinarians informed him that Dr. Kittrell and Dr. Berkwitt were making disparaging comments. See Ex. F, Post Dep. (ECF No. 193-7), at 61:11-20. However, he also could not identify their names or the hospitals with which they were associated. Id., at 61:21-25.

**\*2** The only written evidence of disparaging statements is emails from 2012 and 2014. In an email dated June 29, 2012 and addressed to employees of the VCA Parties, Suzanne Shindle ("Shindle"), a regional operations director for VCA, stated that she asked Larry Berkwitt about Post's statements that Berkwitt is "bashing him" and Berkwitt "said that he doesn't 'bash' Post but does tell his clients that they will likely not see an Oncologist but will see a [resident]." Ex. J. (ECF No. 193-11), at 5. The same day, Berkwitt replied that "[Post] is using [him as a scapegoat and not telling the truth about [the alleged disparaging statements] either." Id., at 4. In that email, Berkwitt also stated that Post "lied to [VCA] ... [and] turned his back on his colleagues who he worked with for 20 years ..." Id. On March 21, 2014, Lisa Annunziato, the Territory Sales Manager for Antech, emailed Duchemin and stated that "Cohen ... is discussing the situation with Larry Berkowit's (sic) unprofessional behavior with Todd Tamms and someone named Doug ..." and that she thought "Berkowit (sic) really should be held accountable for misrepresenting oru company and trashing your organization ..." Ex. L (ECF No. 193-13), at 2.

Post and VCC claim that VCC lost client referrals and suffered financial harm as a result of these statements. See Ex. B, Duchemin Dep. (ECF No. 193-3), at 135:21-136:11, 162:19-163:11, 163:20-164:14.

The VCA Parties have provided affidavits from 14 medical directors of VCA-affiliated hospitals in Connecticut. These medical directors state that they had never heard negative comments made to clients or other veterinary practitioners by any of their employees regarding Post, VCC, or VCC's facilities and staff. See Ex. 13 (ECF No. 176-5).

**B. Linderman Employment Agreement**

For many years, including 2015 and 2016, VCC leased Dr. Michael Linderman ("Linderman"), a veterinary oncologist, to MVG at MVG's Westbury facility. In April 2016, Linderman approached Patricia Orlando ("Orlando"), the

hospital manager at the Westbury facility, about the prospect of becoming an employee of MVG at the facility. In 2016, Linderman resigned from VCC and signed an employment agreement with MVG.

The VCA Parties state that they were not aware of Linderman's employment contract with VCC (the "Linderman Employment Agreement"), including the non-competition clause in the contract. At his deposition, Dr. Larry Cohen ("Cohen"), the Senior Group Vice President for VCA's Northeastern animal hospitals, testified that he directed Suzanne Shindle ("Shindle"), the Regional Operations Director who oversees operations at the Westbury facility, to investigate and determine whether Linderman had a non-compete. See Ex. 7, Cohen Dep. (ECF No. 176-9), at 146:8-147:24, 150:21-151:11. At her deposition, Shindle stated that Linderman "had previously told [her] he did not have a non-compete...." Ex. 7, Shindle Dep. (ECF No. 176-9), at 202:23-25. At his deposition, Linderman testified that he told Shindle that "Post and [Duchemin] had been asking [him] to sign a contract but that [he] had not, but that, of course [he] had been working for them." Ex. 17, Linderman Dep. (ECF No. 176-19), at 74:10-13.

However, VCC and Post state that the VCA Parties were aware of Linderman's employment contract with VCC, including the non-compete clause it contained. At his deposition, Post testified that he told Orlando about Linderman's non-compete multiple times, see Ex. F, Post Dep., at 133:3-25, and that he also told Matt Cremen, a VCA employee, see id. at 137:16-20. Also, at his deposition, Duchemin testified that "he had had conversations with [Orlando] regarding [Linderman's] contract and ... [he thought they] even briefly possibly discussed noncompete", Ex. F, Duchemin Dep., at 78:24-79:2. Duchemin added that he even asked Orlando more generally if she thought "that [VCC's noncompete] was fair" and "within normal standards from what [she is] used to seeing." Id., at 92:22-25.

**II. Legal Standard**

"A motion for summary judgment may properly be granted ... only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." Rogoz v. City of Hartford, 796 F.3d 236, 245 (2d Cir. 2015) (quoting Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010)) (citing Fed. R. Civ. P. 56(a)). "The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only

2019 WL 10351654

to determine whether, as to any material issue, a genuine factual dispute exists." Id. (quoting Kaytor, 609 F.3d at 545) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986)).

**\*3** When ruling on a motion for summary judgment, the court must respect the province of the jury. "In reviewing the evidence and the inferences that may reasonably be drawn, the court 'may not make credibility determinations or weigh the evidence.... "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." ' " Kaytor, 609 F.3d at 545 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (quoting Liberty Lobby, 477 U.S. at 255)).

When reviewing the evidence on a motion for summary judgment, " 'the court must draw all reasonable inferences in favor of the nonmoving party,' Reeves, 530 U.S. at 150, 'even though contrary inferences might reasonably be drawn,' Jasco Tools Inc. v. Dana Corp., 574 F.3d 129, 152 (2d Cir. 2009)." Kaytor, 609 F.3d at 545. "Summary judgment is inappropriate when the admissible materials in the record 'make it arguable' that the claim has merit, for the court in considering such a motion 'must disregard all evidence favorable to the moving party that the jury is not required to believe.' " Id. (quoting Jasco Tools, 574 F.3d at 151-52).

Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture is insufficient to defeat a motion for summary judgment." Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (internal quotation marks omitted) (quoting W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d. Cir. 1990)).

Also, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," id., if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts, ... [and] must come forward with

specific facts showing that there is a genuine issue for trial." Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993) (quotation marks, citations and emphasis omitted). "Accordingly, unsupported allegations do not create a material issue of fact." Weinstock, 224 F.3d at 41. If the nonmovant fails to meet this burden, summary judgment should be granted.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. A material fact is one that would "affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. As the Court observed in Liberty Lobby: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id. Thus, only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. See Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 486 (2d Cir. 2014) ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986))). Immaterial or minor factual disputes will not prevent summary judgment.

### III. Discussion

#### A. Second Claim: Defamation/Trade Libel/ Commercial Disparagement/Injurious Falsehood

**\*4** In the Second Claim, VCC and Post allege defamation, trade libel, commercial disparagement, and injurious falsehood, contending that VCA and Antech published false statements that harmed Post's professional reputation and VCC's business.

To succeed on their defamation claim, VCC and Post must prove that: (1) the VCA Parties made a defamatory statement; (2) the defamatory statement identified VCC and Post to a reasonable third person; (3) the defamatory statement was published to a third person; and (4) VCC and Post's

2019 WL 10351654

reputation suffered injury as a result of the statement. *See QSP, Inc. v. Aetna Cas. & Sur. Co.*, 256 Conn. 343, 356 (2001). Commercial disparagement, also known as "injurious falsehood" or "trade libel," is treated as a "species of defamation" and is analyzed by courts in a similar manner. *See id. at 358-360* (discussing how business disparagement is treated like defamation).

The evidence provided by VCC and Post does not establish that their claim was brought within the two year limitations period under Conn. Gen. Stat. § 52-597 ("No action for libel or slander shall be brought but within two years from the date of the act complained of."). For a defamation claim, the statute of limitations begins on the date of publication. *Cwecklinsky v. Mobil Chem. Co.*, 267 Conn. 210, 224 (2004).

Here, VCC and Post brought their defamation claim on April 18, 2017. The only written evidence of disparaging statements is in the form of emails from 2012 and 2014. Additionally, there is no evidence that could support a conclusion that any of the verbal statements were published to a third party within the two years prior to the claim being filed. Duchemin testified that several VCC employees told him that Dr. Kittrell and Dr. Berkwitt made disparaging statements about VCC and Post. However, he is unable to definitively recall when he heard from these employees, stating only that they relayed this information to him between 2009 and 2015. Additionally, Duchemin's testimony merely indicates when his employees told him about the statements, not when they were allegedly made to third parties.

Duchemin's testimony provides the only evidence of the dates that verbal statements made by Dr. Kittrell and Dr. Berkwitt might have been published to third parties. This testimony cannot support a conclusion that this claim falls within the statute of limitations because one has to speculate as to when the statements were made to third parties.

Moreover, even assuming *arguendo* that Dr. Kittrell and Dr. Berkwitt made some of these disparaging statements as late as 2015, all evidence of them comes in the form of inadmissible hearsay. Hearsay is not sufficient to create a genuine issue of fact for summary judgment purposes. *Johnson v. Chesebrough-Pond's USA Co.*, 918 F. Supp. 543, 552 (D. Conn.), *aff'd sub nom. Johnson v. Chesebrough-Ponds, Inc.*, 104 F.3d 355 (2d Cir. 1996). In defamation cases specifically, "[w]hen challenged on a motion for summary judgment, a plaintiff may not rely solely on hearsay or conclusory allegations that the slanderous statement was

made." *Albert v. Loksen*, 239 F.3d 256, 266 (2d Cir. 2001) (internal citations omitted).

*CSL Silicones, Inc. v. Midsun Grp. Inc.* involved a dispute between CSL, a silicone coating products manufacturer, and Midsun, its competitor. 301 F. Supp. 3d 328 (D. Conn. 2018). Midsun counterclaimed that CSL's employee made defamatory statements to third parties regarding the quality and source of Midsun's products. These statements were relayed to Epsilon, a Midsun customer. Epsilon then informed Midsun of these statements "third-hand." Id. at 375. Absent was any evidence from the third parties to whom these statements were made. The court concluded that the evidence of these communications was hearsay and "insufficient to raise a genuine issue of fact that would warrant denial of CSL's motion [for summary judgment]." Id.

**\*5** In *Lopos v. City of Meriden Bd. of Educ.*, the plaintiff, a job applicant, claimed that the defendants made defamatory statements about him to the education community and general public. No. 3:04-CV-352(AWT), 2006 WL 1438612, at \*1 (D. Conn. May 16, 2006). The plaintiff relied on an affidavit from a woman who stated that a member of the Meriden Board of Education told her that the Board thought the plaintiff was crazy. *See id.* at \*7. The court granted the defendants' motion for summary judgment because this evidence was inadmissible hearsay.

Also, *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.* involved a boutique that asserted claims of disparagement of goods and business slander against its parent company after it experienced a sharp decline in sales. 314 F.3d 48, 53 (2d Cir. 2002). The plaintiff contended that this decline was due to the defendant's misrepresentation of the quality and authenticity of the products sold at the plaintiff's boutique, relying partially on evidence from 16 of its customers who said they "heard rumors" that the boutique sold fake merchandise. Id. The district court found that the customers' declarations were "inadmissible hearsay and thus could not be considered on a motion for summary judgment." Id. at 54.

Here, Duchemin testified that he heard about these statements from VCC employees and staff who heard them from other technicians and doctors. He could not identify any third party to whom Dr. Kittrell and Dr. Berkwitt published these statements. It is accurate to characterize the statements relayed to Duchemin as rumors because VCC's employees did not hear Dr. Kittrell and Dr. Berkwitt make them, but merely heard about the statements from unidentified third parties.

The VCA Parties have met their initial burden at the summary judgment stage because the VCC Parties submitted affidavits from medical directors at hospitals in Connecticut averring that they had never heard negative comments made to clients or other veterinary practitioners by any of their employees regarding Post, VCC, or VCC's facilities and staff. Dr. Berkwitt also denied making disparaging statements in his email exchange with Shindle. Thus, the VCA Parties are also entitled to summary judgment on this claim because they have met their initial burden and VCC and Post have failed to create a genuine issue of material fact.

### B. Third Claim: Tortious Interference with Prospective Economic Relationship

In the Third Claim, VCC and Post allege that VCA interfered with their prospective merger with Compassion First Pets ("CFP") by soliciting one of VCC's oncologists, Dr. Linderman.

To succeed on their claim, VCC and Post must prove that: (1) a business relationship between VCC and Post and another party existed; (2) the VCA Parties intentionally interfered with the business relationship while knowing of the relationship; and (3) as a result of the interference, VCC and Post suffered actual loss. See Hi-Ho Tower, Inc. v. Com-Tronics, Inc., 255 Conn. 20, 27 (2000).

Genuine issues of material fact exist as to whether the VCA Parties intentionally interfered with the business relationship between VCC and CFP while knowing of the relationship. While the VCA Parties contend that they did not solicit Linderman, there are genuine issues of material fact as to that question, including, inter alia, for the reasons discussed with respect to the Fourth Claim.

### C. Fourth Claim: Tortious Interference with Linderman Employment Agreement

**\*6** In the Fourth Claim, VCC and Post allege that the VCA Parties willfully interfered with the Linderman Employment Agreement by employing him at the Westbury facility, thus inducing him to terminate his contract and violate his non-competition covenant.

Regardless of whether New York or Connecticut law applies, the same elements must be established to prevail on a tortious interference claim: (1) the existence of a contractual or beneficial relationship; (2) the VCA Parties' knowledge of that relationship; (3) the VCA Parties' intent to interfere with the relationship; (4) that the interference was tortious; and (5) a loss suffered by VCC and Post that was caused by the VCA Parties's tortious conduct. See Rioux v. Barry, 283 Conn. 338, 351 (2007); Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 424 (1996).

Genuine issues of material fact exist as to whether the VCA Parties knew of the non-competition clause in the Linderman Employment Agreement and whether the VCA Parties intended to interfere with that contract. While the the VCA Parties contend that VCC and Post have produced no evidence as to these two questions, the testimony of Post and Duchemin, inter alia, creates genuine issues of material fact with respect to this claim.

### D. Eleventh Claim: Punitive Damages for Willful and Wanton Misconduct

VCC and Post describe the Eleventh Claim as a claim for punitive damages for willful and wanton misconduct. This claim is being dismissed without prejudice because it is a prayer for relief, not a substantive cause of action, and in their prayer for relief, VCC and Post seek punitive damages with respect to the Third, Fourth, Thirteenth, and Fourteen Claims, in addition to the Eleventh Claim.

To the extent the motion for summary judgment on the Eleventh Claim is construed as a claim for summary judgment on the issue of punitive damages, it is being denied because legal and factual issues, including, inter alia, whether New York law or Connecticut law governs certain claims and whether there are aggravating factors with respect to the claimed conduct of the VCA Parties, exist with respect to the issue of punitive damages.

### E. Thirteenth Claim: Violation of Connecticut Unfair Trade Practices Act ("CUTPA")

In the Thirteenth Claim, VCC and Post allege that the VCA Parties violated CUTPA by, inter alia, "[encouraging] or [permitting] veterinarians at VCA owner or operated hospitals to disparage Post, VCC, and VCC's employees

2019 WL 10351654

in order to harm VCC's business" and "intentionally [interfering] with the Linderman Employment Agreement [and] inducing Dr. Linderman to end his employment and to breach his non-compete with VCC." Am. Answer (ECF No. 138), at ¶¶ 183, 186.

CUTPA prohibits the use of "unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42–110b(a).

> The factors to be weighed to determine whether a practice is unfair under CUTPA are: (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise--whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [ (competitors or other businessmen) ]. A CUTPA plaintiff need not establish all three criteria to demonstrate unfairness. Instead, a practice may be shown to be unfair either because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. The practice attacked may be actually deceptive or a practice amounting to a violation of public policy. The plaintiff need not show intent to deceive.

 *7 Traylor v. Awwa, 88 F. Supp. 3d 102, 108–09 (D. Conn. 2015) (quoting Fabri v. United Technologies Int'l, Inc., 387 F.3d 109, 120 (2d Cir. 2004)).

Genuine issues of material fact exist as to whether the VCA Parties intentionally interfered with the Linderman Employment Agreement, as discussed above with respect to the Fourth Claim, but summary judgment is being granted with respect to the disparagement claim, i.e. the Second

Claim. Therefore, the motion for summary judgment is being granted with respect to the CUTPA claim to the extent is based on disparagement and denied to the extent it is based on interference with the Linderman Employment Agreement.

## F. Fourteenth Claim: Common Law Unfair Competition

In the Fourteenth Claim, VCC and Post allege that the VCA Parties violated their common law duties not to engage in unfair competition by, inter alia, "[encouraging] or [permitting] veterinarians at VCA owner or operated hospitals to disparage Post, VCC, and VCC's employees in order to harm VCC's business" and "intentionally [interfering] with the Linderman Employment Agreement [and] inducing Dr. Linderman to end his employment and to breach his non-compete with VCC." Am. Answer, at ¶¶ 193, 196.

"Connecticut recognizes under the umbrella term of 'unfair competition' such causes of action as tortious interference with business expectancy ..." Genworth Fin. Wealth Mgmt., Inc. v. McMullan, No. 3:09-CV-1521 JCH, 2012 WL 1078011, at *20 (D. Conn. Mar. 30, 2012) (quoting Larsen Chelsey Realty Co. v. Larsen, 232 Conn. 480, 501 n. 23 (1995)) (internal quotation marks omitted) (holding that a common law unfair petition claim can be construed as a "tortious interference with a business expectancy claim.").

Genuine issues of material fact exist as to whether the VCA Parties intentionally interfered with the Linderman Employment Agreement, as discussed above with respect to the Fourth Claim, but summary judgment is being granted with respect to the disparagement claim, i.e. the Second Claim.

As with the Thirteen Claim, the motion for summary judgment is being granted with respect to the common law unfair competition claim to the extent is based on disparagement and denied to the extent it is based on interference with the Linderman Employment Agreement.

## IV. Conclusion

For the reasons set forth above, the VCA Parties' Motion for Partial Summary Judgment (ECF No. 176) is hereby GRANTED with respect to the Second Claim, the Thirteenth Claim to the extent it is based on disparagement, and the Fourteenth Claim to the extent it is based on disparagement;

and DENIED with respect to the Third Claim, the Fourth Claim, the Thirteenth Claim to the extent it is based on the Linderman Employment Agreement, and the Fourteenth Claim to the extent it is based on the Linderman Employment Agreement. The Eleventh Claim is dismissed without prejudice.

It is so ordered.

**All Citations**

Slip Copy, 2019 WL 10351654

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 1093220
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Nachman NACHMENSON, Plaintiff,

v.

Zvi GLUCK, NY State Court, Judge Katherine A.
Levine, Tehila Berman Kahan, David Gold, Reginald
Thomas, NY Attorney Grievance, NY DA, Honorable
Lawrence Knipel, Supreme Administration, Defendants.

22-CV-627
|
Signed 04/12/2022

**Attorneys and Law Firms**

Nachman Nachmenson, Washington, DC, Pro Se.

## **MEMORANDUM & ORDER**

PAMELA K. CHEN, United States District Judge:

**\*1** On January 27, 2022, Plaintiff Nachman Nachmenson
filed this *pro se* action against Zvi Gluck, Kings County
Supreme Court ("State Court"), Judge Katherine A. Levine,
Tehila Berman Kahan, David Gold, Reginald Thomas,
New York Supreme Court Appellate Division's Attorney
Grievance Committee ("Grievance Committee"), New York
City Law Department's Corporation Counsel ("Corporation
Counsel"), and Honorable Lawrence Knipel, Administrative
Judge of the Supreme Court of Civil Matters (collectively,
"Defendants"),[1] seeking damages and injunctive relief in
connection with an action he commenced in the New York
Supreme Court, Kings County ("State Court").[2] Plaintiff's
request to proceed *in forma pauperis* ("IFP") is granted for
the limited purpose of this Memorandum and Order.[3] The
Complaint is hereby dismissed in its entirety without leave to
amend.

1    While the exact list of Defendants is not entirely
     clear because Plaintiff makes use of abbreviations
     and unidentified terms, and lists entities and
     individuals together, the Court construes the
     Complaint liberally to be against the Defendants
     listed in above. *Erickson v. Pardus*, 551 U.S. 89

     (2007). The Clerk of Court is respectfully directed
     to amend the caption of this case accordingly.

2    The Court notes that Plaintiff has previously filed
     eight other civil actions in this Court that were
     dismissed for failure to state a claim or for lack
     of subject matter jurisdiction, including an action
     seeking $7.7 million in damages and injunctive
     relief in connection with the alleged unjustified
     delay of trial in his State Court proceeding. *See
     Nachmeson v. Kings County Supreme Court*, No.
     20-CV-5905 (E.D.N.Y. Apr. 12, 2022) (collecting
     cases, dismissing case without prejudice and
     ordering Plaintiff to show cause why a filing
     injunction should not be issued).

3    Plaintiff's IFP application is entirely blank and only
     contains his signature. (*See* Dkt. 2.) The Court
     nonetheless grants Plaintiff IFP status based on his
     IFP application in another contemporaneous case.
     *See Nachmenson v. New York State Dep't of Labor*,
     No. 20-CV-5873 (E.D.N.Y. Apr 12, 2022).

## **BACKGROUND**

Plaintiff alleges that in 2014, he filed a lawsuit in the State
Court alleging that on April 23, 2013, he was falsely arrested
and subjected to excessive force by the New York City
Police Department ("NYPD"). (Dkt. 1, at ECF[4] 11, 23.) The
gravamen of Plaintiff's Complaint in this case is that his State
Court lawsuit is being unduly and improperly delayed by
Defendant Zvi Gluck, "the rabbi of the NYPD," as part of a
pattern of harassment and retaliation going back to 2004 and
relating to a personal conflict between Plaintiff and the ex-
husband of Plaintiff's sister Yonah Gelernter (a non-party).
(*Id.* at 8, 23–24.) Plaintiff alleges that Defendant Zvi Gluck,
who "uses his political power and bribery to promote illegal
actions for people who pay him under the table" (*id.* at
11–12, 22–24), both "coordinated with" the NYPD to have
him arrested on April 23, 2013 and obstructed Plaintiff's
State Court proceeding by influencing the presiding justice,
Defendant Katherine A. Levine, who "now too cooperates
with Zvi Gluck" and "let[s] the injustice[5] continue for more
than eight years." (*Id.* at 10–12, 23.) Plaintiff further alleges
that Corporation Counsel "is not interested in any settlement"
of the State Court proceeding and "because of Zvi Gluck they
keep avoiding trial to this day." (*Id.* at 10–11.)

4    Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

5    The Court construes Plaintiff's reference to "injustice" to mean the delayed trial in Plaintiff's ongoing State Court proceeding.

**\*2** Additionally, Plaintiff alleges that his counsel in the State Court proceeding, non-party Brian M. Dratch, "cooperates with [Corporation Counsel] and allowed the State Court case to languish. (*Id.* at 8.) Plaintiff filed a grievance against Mr. Dratch with the Grievance Committee, after which Mr. Dratch sought to withdraw as Plaintiff's counsel. (*Id.* at 11, 14–15, 18.) Plaintiff claims that the Grievance Committee is not assisting Plaintiff "but rather lets Zvi Gluck the politician, the NYPD, and the D.A. avoid justice." (*Id.* at 9.) Plaintiff alleges that "[t]he administration of the Supreme Court [is not] interested in fixing the injustice, because they are all Jews who want to satisfy the demands of Zvi Gluck." (*Id.* at 12.) Plaintiff attaches letters he sent to Justice Levine and to the Grievance Committee, in which he described his State Court proceeding and the delays he attributes to his counsel, Mr. Dratch. (*Id.* at 14–16, 18–20.)

Plaintiff demands $7.7 million in damages payable to the federal government and seeks injunctive relief in the form of this Court's intervention in Plaintiff's State Court proceeding "to force the [State] Court to oblige [Mr. Dratch] to continue" representing Plaintiff or to give Plaintiff "another lawyer who will bring forth the justice." (*Id.* at 12.)

### STANDARD OF REVIEW

Under 28 U.S.C. § 1915(e)(2)(B), a district court must dismiss an IFP action if the complaint "is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). In addressing the sufficiency of a complaint, a court "accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [it is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hamilton v. Westchester County,* 3 F.4th 86, 90–91 (2d Cir. 2021) (citation omitted). Complaints filed by *pro*

*se* litigants are held to less stringent standards than pleadings drafted by attorneys and the Court is required to read the Plaintiff's *pro se* complaint liberally and interpret it raising the strongest arguments it suggests. *Erickson v. Pardus,* 551 U.S. 89 (2007); *Hughes v. Rowe,* 449 U.S. 5, 9 (1980).

### DISCUSSION

#### I. Plaintiff's Claims Against the State Defendants Are Barred by Absolute Immunity

Plaintiff's claims against the State Court, [6] Justice Levine, Justice Knipel, Tehila Berman Kahan, David Gold, Reginald Thomas, and the Grievance Committee (collectively, "State Defendants") are barred by absolute judicial and quasi-judicial immunity from suit. *Mireles v. Waco,* 502 U.S. 9, 11 (1991); *Forrester v. White,* 484 U.S. 219, 225 (1988); *Li v. Lorenzo,* 712 F. App'x. 21, 23 (2d Cir. 2017) (summary order). Absolute judicial immunity extends to court clerks who are performing tasks "which are judicial in nature and an integral part of the judicial process." *Rodriguez v. Weprin,* 116 F.3d 62, 66 (2d Cir. 1997); *see also McKnight v. Middleton,* 699 F. Supp. 2d 507, 525 (E.D.N.Y. 2010) ("[A] clerk's acts that implement judicial decisions or that are performed at the direction or under the supervision of a judicial officer come under the ambit of judicial immunity.") Absolute immunity also generally extends to officials "who perform functions closely associated with the judicial process." *Oliva v. Heller,* 839 F.2d 37, 39 (2d Cir. 1988). This immunity may be overcome only if the defendant is alleged to have taken nonjudicial actions or if the judicial actions taken were "in the complete absence of all jurisdiction." *Mireles,* 502 U.S. at 11–12. Thus, Plaintiff's claims against the State Defendants are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii) without leave to amend. [7]

6    The Court construes Plaintiff's allegations against the State Court to be against Justice Levine, who is presiding over Plaintiff's State Court proceeding and who Plaintiff alleges has unduly delayed the trial in that proceeding.

7    Moreover, Plaintiff's claims for damages against the State Defendants are barred by the Eleventh Amendment, which provides immunity to states in suits brought against them in federal courts, absent the states' explicit consent or unequivocal Congressional abrogation of immunity. *Pennhurst*

*State School & Hospital v. Halderman*, 465 U.S. 89, 99 (1984); *CSX Transp., Inc. v. N.Y. State Off. of Real Prop. Servs.*, 306 F.3d 87, 94–95 (2d Cir. 2002). "State immunity extends to state agencies and to state officers who act on behalf of the state." *Burnette v. Carothers*, 192 F.3d 52, 57 (2d Cir. 1999) (citation omitted); *see also Pennhurst*, 465 U.S. at 101–02 (1984) ("The Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest.... And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." (internal quotation marks omitted)). Here, the State Defendants are entitled to sovereign immunity. Plaintiff has not identified any waiver or Congressional abrogation of New York's sovereign immunity that would permit him to bring an action for damages or retrospective injunctive relief the State Defendants.

## II. Plaintiff's Claims Against Corporation Counsel Are Similarly Barred by Absolute Immunity

**\*3** Title 42 of the United States Code, Section 1983 allows plaintiffs to seek damages for alleged violations of their civil rights. In order to maintain an action under 42 U.S.C. § 1983, a plaintiff must allege that "the conduct complained of [was] committed by a person acting under color of state law," and "deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). Government attorneys "functioning as an advocate of the state in a way that is intimately associated with the judicial process" are immune from suits for damages under § 1983. *Mangiafico v. Blumenthal*, 471 F.3d 391, 396 (2d Cir. 2006). This absolute immunity has been specifically extended to Corporation Counsel. *See, e.g., Johnson v. City of New York*, No. 16-CV-2879 (PKC) (LB), 2019 WL-2393716, at \*4 (E.D.N.Y. June 6, 2019). Because Plaintiff's claims under § 1983 against Corporation Counsel arise from litigation activities while representing the City of New York in Plaintiff's State Court civil action, Plaintiff's claims for damages against Corporation Counsel are barred by absolute immunity.[8]

[8]    Moreover, the Complaint, even liberally construed, does not seek injunctive relief against Corporation Counsel.

## III. Plaintiff's Claims Against Defendant Gluck Are Dismissed for Failure to State a Claim

Section 1983 does not extend to harms caused by private individuals or private organizations. As the Supreme Court has held, "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quotations omitted). The "state action" requirement may be applied to private individuals in certain limited circumstances, such as where the private individual is engaged in a "public function" or performs conduct that is "fairly attributable to the state." *Id.* at 51.

Title 42 of the United States Code, Section 1985 addresses conspiracies to interfere with an individual's constitutional rights and may include conspiracies that involve private parties. The only component of § 1985 that could potentially apply to Plaintiff's case is the second clause, which concerns conspiracies to obstruct "the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws...." 42 U.S.C. § 1985(2). In order to state a claim under this provision, a plaintiff must "allege that he was a member of a protected class, that the defendants conspired to deprive him of his constitutional rights, that the defendants acted with class-based, invidiously discriminatory animus, and that he suffered damages as a result of the defendants' actions." *Gleason v. McBride*, 869 F.2d 688, 694–95 (2d Cir. 1989). "[T]he intended victims of discrimination must be victims not because of any personal malice the conspirators may have toward them, but because of their membership in or affiliation with a particular class." *Id.* at 695 (quotation omitted); *see also Saunders v. Vinton*, No. 12-CV-581 (MPS), 2013 WL 1729264, at \*7 (D. Conn. Apr. 22, 2013) (to state a conspiracy claim for obstruction of justice regarding a state court proceeding under § 1985(2), plaintiff must allege racial or class-based animus), *aff'd* 554 F. App'x 36 (2d Cir. 2014). Plaintiff's complaint alleges that a private individual, Defendant Zvi Gluck conspired with the State Defendants to delay the adjudication of the State Court proceeding as part of a harassment campaign against Plaintiff. Plaintiff does not assert that Defendant Gluck was performing any public function or acting on behalf of the State Defendants. Neither has Plaintiff alleged that he was discriminated against due to his membership in a protected class and that Defendant Gluck and the State Defendants conspired to violate his civil rights motivated by anti-Semitic animus. In fact, Plaintiff specifically states that the alleged

2022 WL 1093220

interference was related to a personal family issue.[9] Thus, Plaintiff's claims against Defendant Gluck are also dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

[9]    Furthermore, the Complaint's allegations that Dratch is working with State Court judges and officials are purely conclusory and are not supported by any factual allegations in the Complaint.

**\*4** The Court has considered affording Plaintiff a chance to amend the complaint, *see Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000), but declines to do so because it views the opportunity as futile since a review of the Complaint does not suggest that Plaintiff has inadequately or inartfully pleaded any potentially viable claims.

**CONCLUSION**

For the foregoing reasons, the Complaint is dismissed for failure to state a claim and as barred by absolute immunity. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore IFP status is denied for purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962). The Clerk of Court is respectfully directed to enter judgment, close this case, and mail a copy of this Memorandum and Order to Plaintiff.

**All Citations**

Slip Copy, 2022 WL 1093220

---

End of Document                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 819281
United States District Court, N.D. New York.

Kevin MURPHY, Plaintiff,

v.

ONONDAGA COUNTY et al., Defendants.

5:18-cv-1218 (GLS/CFH)
|
Signed 03/18/2022

**Attorneys and Law Firms**

FOR THE PLAINTIFF: JEFFREY R. PARRY, ESQ., Office of Jeffrey R. Parry, 7030 East Genesee Street, Fayetteville, NY 13066, JARROD W. SMITH, ESQ., Office of Jarrod W. Smith, 11 South Main Street, P.O. Box 173, Jordan, NY 13080.

FOR THE DEFENDANTS: JOHN E. HEISLER, JR., ESQ., Onondaga County, The Onondaga Sheriff's Department, Carl Hummel, William Fitzpatrick, Stefano Cambareri, Melanie S. Carden & Lindsey M. Luczka, Onondaga County Department of Law, John H. Mulroy Civic Center, 421 Montgomery Street, 10th Floor, Syracuse, NY 13202, ROBERT J. SMITH, ESQ., ELIZABETH A. HOFFMAN, ESQ., Eugene Conway, Joseph Ciciarelli, Michael Dickinson, Jammie Blumer, Jonathan Anderson, Joseph Peluso, Roy Gratien & Jason Cassalia, Costello, Cooney & Fearon, PLLC, 211 W. Jefferson Street, Syracuse, NY 13202, KATHERINE STEWART, ESQ., 500 Plum Street, Suite 300, Syracuse, NY 13204, JOHN L. MURAD, JR., ESQ., ANNELIESE ALIASSO, ESQ., Bryan K. Edwards & Westcott Events, LLC, Hancock Estabrook, LLP, 1800 AXA Tower I, 100 Madison Street, Syracuse, NY 13202, CHRISTINA M. VERONE JULIANO, ESQ., Goldberg, Segalla Law Firm, 5786 Widewaters Parkway, Syracuse, NY 13214.

**MEMORANDUM-DECISION AND ORDER**

Gary L. Sharpe, Senior District Judge

**I. Introduction**

 **\*1** Plaintiff Kevin Murphy commenced this civil rights action against defendants Onondaga County, The Onondaga County Sheriff's Department, Eugene Conway, Joseph Ciciarelli, Michael Dickinson,[1] Jammie Blumer, Jonathan

Anderson, Joseph Peluso, Roy Gratien, Jason Cassalia, Carl Hummel, William Fitzpatrick, Stefano Cambareri, Melanie S. Carden, Lindsey M. Luczka, Bryan K. Edwards, and Westcott Events, LLC, pursuant to 42 U.S.C. §§ 1983 and 1985, 18 U.S.C. § 1964 (Civil Racketeer Influenced and Corrupt Organizations (RICO) Act), and New York State law, with the individual defendants all being sued in their individual and official capacities. (Am. Compl., Dkt. No. 60.)[2]

1    Plaintiff refers to Dickinson as both "Dickinson" and "Dickenson," the court will refer to this defendant as Dickinson.

2    For the sake of clarity, Dkt. No. 60, is deemed the operative pleading. On June 7, 2019, Murphy filed a motion to amend the complaint. (Dkt. No. 50.) The motion was unopposed, and the clerk of the court was directed to file Exhibit A to the motion, (Dkt. No. 50, Attach. 1), as the amended complaint, (Dkt. No. 53). On July 1, 2019, the amended complaint was filed. (Dkt. No. 56.) However, on July, 2, 2019, the amended complaint was filed again, by Murphy, with the only apparent change being the inclusion of counsel's name. (Dkt. No. 58.) Then again the amended complaint was filed on July 19, 2019, by Murphy, this time attaching previously omitted summonses. (Dkt. No. 60.) To the extent defendants address Dkt. No. 56, 58, and/or 60 in their submissions, the court will construe them as against Dkt. No. 60.

Pending before the court are motions for judgment on the pleadings filed by Conway (Dkt. No. 88), Blumer, (Dkt. No. 90), Peluso, (Dkt. No. 92), Gratien, (Dkt. No. 94), Anderson, (Dkt. No. 96), Cassalia, (Dkt. No. 98), Ciciarelli, (Dkt. No. 100), and Dickinson, (Dkt. No. 102) (hereinafter, collectively referred to as the "Sheriff Defendants"), a motion to amend the amended complaint filed by Murphy, (Dkt. No. 123), a motion to dismiss the amended complaint filed by Edwards and Westcott, (Dkt. No. 143), a motion to amend the RICO statement filed by Murphy, (Dkt. No. 157), a motion to construe their prior motion to dismiss as against any second amended complaint and/or to deny the second amended complaint filed by Edwards and Westcott, (Dkt. No. 144), a motion requesting guidance in responding to Murphy's amended RICO statement filed by the Sheriff Defendants, (Dkt. No. 155), a motion informing the court of alleged "improprieties" by defendants, requesting that the amended RICO statement be accepted as timely, and seeking to file a further amended complaint filed by Murphy, (Dkt. No.

2022 WL 819281, RICO Bus.Disp.Guide 13,617

156), an August 30, 2021, letter motion seeking relief that, admittedly, is unclear to the court filed by Murphy, (Dkt. No. 159), and, finally, another motion to further amend the amended complaint filed by Murphy, (Dkt. No. 170).

For the reasons that follow, the Sheriff Defendants' Rule 12(c) motions, (Dkt. No. 88; Dkt. No. 90; Dkt. No. 92; Dkt. No. 94; Dkt. No. 96; Dkt. No. 98; Dkt. No. 100; Dkt. No. 102), are granted in part and denied in part, as described below. Edwards and Westcott's Rule 12(b)(6) motion (Dkt. No. 143), is granted. Murphy's motion to amend the amended complaint, (Dkt. No. 123), is denied as moot. Murphy's subsequent motion to amend the amended complaint, (Dkt. No. 170), and his motion to amend the RICO statement, (Dkt. No. 157), are denied. Edwards and Westcott's motion regarding Murphy's proposed amended complaint, (Dkt. No. 144), is granted, to the extent it sought denial of Murphy's motion to amend and denied in all other respects. The Sheriff Defendants' motion requesting guidance in responding to the amended RICO statement, (Dkt. No. 155), is denied as moot. Murphy's motion informing the court of alleged "improprieties" by defendants, requesting that the amended RICO statement be accepted as timely, and seeking to file a further amended complaint, (Dkt. No. 156), and August 30, 2021, letter motion, (Dkt. No. 159), are denied.

## II. Background [3]

[3]    The facts are drawn from Murphy's amended complaint, (Dkt. No. 60), and presented in the light most favorable to him.

 *2  Murphy is a Sergeant in the Onondaga County Sheriff's Department. (Am. Compl. ¶ 2.) The Sheriff Defendants were, or are, also members of the Sheriff's Department. (*Id.* ¶¶ 6-13.) Conway is the Sheriff, Cassalia is the Undersheriff, Gratien, who has since retired, was an Assistant Police Chief, Ciciarelli is the Chief Police Deputy, Dickinson is a Captain and Patrol Commander, Blumer and Anderson are Lieutenants, and Peluso, who has since retired, was a Sergeant and is now a Special Patrol Officer at the Onondaga County Civic Center. (*Id.* ¶¶ 6-13, 67.)

Murphy warned his superior officers in the Sheriff's Department of "illegal arrests, inadequate police work, improper training, poor supervision, racially motivated behavior and improper, unprofessional and illegal conduct" committed by members of the Sheriff's Department. (*Id.*

¶ 29.) As a result of this, Murphy was "forbidden [from] do[ing] police work," relieved of specific duties, forbidden from giving orders to subordinates, "required to sit at a desk during his entire shift doing nothing whatsoever," forbidden from using a patrol car or displaying his uniform in public, "subject[ed] to threatening and abusive behavior" by others in the Sheriff's Department, was "deprived of police assistance and ... castigated for his efforts when his ... wife was menaced and assaulted," has had his overtime opportunities reduced, "has been ordered to undertake menial tasks under circumstances that were deliberately chosen to cause him physical discomfort and agitation," passed over for a promotion, subjected to "repeated unwarranted police and grand jury investigations," "arbitrarily transferred," "depriv[ed] ... of income," and was "subjected to public ridicule and embarrassment." (*Id.* ¶ 245.)

Specifically, around November 2008, Murphy discovered improprieties surrounding the involvement of the Sheriff's Department with respect to an individual who committed suicide in the Onondaga County Justice Center. (*Id.* ¶¶ 36-38.) Murphy reported these improprieties, including the falsifying of medical records, to unnamed "supervising officers," and Conway. (*Id.* ¶¶ 39-43.)

On May 30, 2015, Murphy reported to Peluso an instance where a complaint was made by an African-American woman, which Murphy claimed was not properly addressed "due to her ethnic background and her sex," (*id.* ¶¶ 49-55), and requested that the incident be investigated internally, (*id.* ¶¶ 98-100). Murphy was later aggressively confronted by Peluso, who "was loud, screaming and belligerent," and conveyed to Murphy that Peluso did not want an investigation into the woman's complaint, and insinuated that it was inappropriate for Murphy to go against him. (*Id.* ¶¶ 63-64.) Murphy was again aggressively confronted by Peluso at a later date, and, after the confrontation, "bec[a]me[ ] sick" and was "admitted to a hospital with chest pains and high blood pressure," causing him to miss work for several weeks. (*Id.* ¶¶ 134, 140, 143.)

On March 9, 2016, Murphy informed Conway "of the improper use of a temporary holding cell to hold prisoners," potentially in violation of their rights. (*Id.* ¶¶ 69-70.) Murphy documented a similar violation shortly thereafter to "his chain of command," including Gratien, who, along with Conway, failed to remedy the situation. (*Id.* ¶¶ 72-75.)

2022 WL 819281, RICO Bus.Disp.Guide 13,617

On April 23, 2016, Murphy became aware of an unconstitutional search and seizure of a suspect's blood, and, in an attempt to investigate it, contacted Blumer. (*Id.* ¶¶ 78-90.) Blumer told Murphy that she would handle the matter. (*Id.* ¶ 90.) Murphy later discovered that Peluso "falsified the police report to cover up the illegal search and seizure." (*Id.* ¶ 92.) Murphy later learned that Blumer and Peluso contacted others in the Sheriff's Department, including Gratien, and stated that Murphy "was to blame for the illegal search." (*Id.* ¶¶ 93-95.) Murphy was later informed "that, according to ... Gratien, Murphy was not promoted to Lieutenant because he interferes with investigations of others." (*Id.* ¶ 97.) Peluso later filed a "vacuous" hostile work environment complaint against Murphy, intended to prevent him from being promoted. (*Id.* ¶ 101.) Murphy notified Ciciarelli and Gratien of the complaint, and requested that it be investigated, but his request was ignored. (*Id.* ¶¶ 102-04.)

**\*3** On August 17, 2016, Murphy met with Ciciarelli and informed him of the Sheriff's Department's prior failure to properly investigate the aforementioned complaint made by an African-American woman based on "racial and sexual discrimination." (*Id.* ¶¶ 105-06.) Murphy also informed Ciciarelli of the illegal search and seizure and "illegal and falsified reports filed by Peluso," of which Gratien knew. (*Id.* ¶¶ 107-09.) Murphy reported to Ciciarelli that "Gratien had expressed his opinion that Murphy should not be promoted due to his interference with other investigations." (*Id.* ¶ 111.) Finally, Murphy conveyed to Ciciarelli that an "inordinate number of arrests [were being] made by [members of the Sheriff's Department] that were illegal for lack of probable cause." (*Id.* ¶ 112.) After this meeting, Ciciarelli conveyed to an unnamed individual that "he investigated the situation and discovered that some of ... Murphy's allegations were true." (*Id.* ¶ 116.)

On August 29, 2016, Murphy was ordered to meet with Dickinson and Murphy's direct supervisor, Lieutenant Caruso. (*Id.* ¶¶ 59, 118.) During this meeting Murphy voiced his concerns to Dickinson regarding the illegal arrests conducted by members of the Sheriff's Department. (*Id.* ¶ 119.) Dickinson then ordered Murphy to "no longer do police work while under his command" specifically instructing Murphy "to refrain from initiating investigations ... to no longer apply for search warrants." (*Id.* ¶ 121.) Murphy and Caruso both stated that this discipline was unjustified. (*Id.* ¶¶ 122-23.) Ciciarelli was later informed of Dickinson's order. (*Id.* ¶ 132.)

From that point forward, Murphy faced various forms of discipline from members of the Sheriff's Department, including being ordered to "remove" his personal file cabinet, (*id.* ¶ 130), being required to work on Thanksgiving and Christmas, (*id.* ¶ 147), being told that he "ha[d] no duties and no responsibilities and [could not] independently perform any police related duties during his 10-hour shift[s]," (*id.* ¶ 152), and had his teaching schedule at the Police Academy reduced to just one class, at the behest of Dickinson, (*id.* ¶¶ 154-55).

Then, on June 24, 2017, Murphy's wife "was struck by an unruly security guard and subjected to other untoward conduct" while attending a concert at the Amphitheater on Onondaga Lake. (*Id.* ¶ 158b.[4]) The security guard was employed by Westcott, which is owned and operated by Edwards. (*Id.* ¶ 159b.) Murphy was working that day at the venue as "Venue Supervisor." (*Id.* ¶ 164.) Murphy reported the incident involving his wife to Captain M. Pellizzari, and was subsequently relieved of his duties at the Amphitheater based upon complaints made by Edwards, who stated "that if Murphy work[ed there] in the future, the security company w[ould] walk off the job." (*Id.* ¶ 168.)

[4]    The amended complaint contains two paragraphs numbered "158" and two numbers "159." To the extent these paragraph are cited, they will be denoted as "158a" and "158b," and "159a" and "159b."

After the incident with his wife, Murphy continued to faced inter-Department discipline, including threats of "baseless" reprimand from Anderson for "silent insolence," (*id.* ¶ 196-98), which Murphy believed was at the behest of Peluso, (*id.* ¶ 198); having an internal investigation opened against him surrounding his alleged improper use of his personal vehicle, (*id.* ¶¶ 202-04), which lead to Murphy's surveillance by Dickinson, (*id.* ¶ 202); further transfer, adding thirty miles to his daily commute, (*id.* ¶¶ 206-08); being prohibited by Dickinson from using a Sheriff's Department vehicle and being forced to cover his uniform when in public, (*id.* ¶ 210). When Murphy "[wa]s flagrantly disobeyed by [his] subordinates," the subordinates "face[d] no discipline" even after Murphy reported their insubordination. (*Id.* ¶¶ 212-13.) Murphy was ordered to inspect thirty patrol vehicles "in contradiction to established policy" even though he was not sufficiently dressed to perform this task. (*Id.* ¶¶ 215-16.) Murphy was given two "counseling memos" at the behest of Dickinson, accusing him of intentionally misrepresenting

2022 WL 819281, RICO Bus.Disp.Guide 13,617

Dickinson's past orders and alleging violations of department policy. (*Id.* ¶ 219.)

**\*4** Murphy filed this suit on October 11, 2018. (*Id.* ¶ 229; *see* Dkt. No. 1.) After doing so, he "had several improper, unsupported and baseless referrals to the Onondaga County Sheriff's Office Internal Affairs Office" by Dickinson, (Am. Compl. ¶ 229), and he was transferred "without legitimate reason to such a position that would cause him to lose secondary employment opportunities and an immediate loss of income," (*id.* ¶ 242). At an unspecified time, Conway requested that District Attorney Fitzpatrick "institute an unwarranted criminal action against Murphy because it [wa]s impossible to silence him using 'in-house' means." (*Id.* ¶ 234.)

### III. Standard of Review

#### A. Leave to Amend

The filing of amended complaint is governed by Rule 15 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 15. Rule 15 provides that courts "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000); *see Couloute v. Ryncarz*, No. 11-CV-5986, 2012 WL 541089, at \*3 (S.D.N.Y. Feb. 17, 2012) (citation omitted). However, motions to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008); *see Monahan*, 214 F.3d at 283. The decision to grant or deny a motion to amend is committed to the sound discretion of the trial court, and the court's decision is not subject to review on appeal except for abuse of discretion. *See Fielding v. Tollaksen*, 510 F.3d 175, 179 (2d Cir. 2007).

Northern District of New York Local Rule 15.1(a) states, in relevant part: "[A] motion [to amend] must set forth specifically the proposed insertions and deletions of language and identify the amendments in the proposed pleading, either through the submission of a redline/strikeout version of the pleading sought to be amended or through other equivalent means." Failure to comply with Local Rule 15.1(a) can result

in denial of a motion to amend. *See Cottone v. Does*, No. 1:17-cv-1006, 2018 WL 2021513, at \*4 (N.D.N.Y. Apr. 30, 2018)

#### B. Motion to Dismiss

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Wright v. Monroe Cmty. Coll. Hosp.*, 493 F. App'x 233, 234 (2d Cir. 2012) (internal quotation marks and citation omitted). The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here. For a full discussion of the governing standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010), *abrogated on other grounds by Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191 (2d Cir. 2015).

### IV. Discussion

#### A. Murphy's Motions to Amend

On January 10, 2021, Murphy moved to amend his amended complaint. (Dkt. No. 123). On November 19, 2021, Murphy filed another motion to amend, (Dkt. No. 170), and therefore Murphy's former motion to amend is denied as moot.[5] *See Warren v. U.S.*, 859 F. Supp. 2d 522, 526 (W.D.N.Y. 2012) (denying a pending motion to amend as moot after a subsequent motion to amend was filed).

[5]     On August 8, 2021, Murphy filed a motion informing the court of alleged "improprieties" by defendants, requesting that the amended RICO statement be accepted as timely, and seeking to file a further amended complaint. (Dkt. No. 156.) To the extent this motion sought leave to amend, it is denied as moot for the same reasons. Further, Edwards and Westcotts' motion regarding Murphy's proposed amended complaint, (Dkt. No. 144), is granted, to the extent it sought denial of Murphy's motion to amend, and denied in all other respects.

**\*5** In accordance with the court's October, 18, 2021 Text-Only Order, (Dkt. No. 164), Murphy was required to seek leave of the court before filing anything, which he did, (Dkt. No. 165). In granting leave, the court noted that:

Murphy's motion for leave to amend shall be filed on or before November 19, 2021. Failure to file by that deadline will result in the summary denial of the motion for failure to comply with this Text Only Order. Moreover, failure to strictly comply with the Local Rules of Practice, and, in particular, Rules 7.1 and 15.1, will result in summary denial of the motion.

(Dkt. No. 169.) The court deemed it necessary to be explicit in its instructions due to Murphy's history of untimely filings, (Dkt. 154 (filed two days after the required date)), failure to comply with the Local Rules, (Dkt. No.123 (failing to comply with Local Rule 15.1(a))), and general lack of attention to detail with respect to prior submissions. [6]

[6]    For example, Murphy's amended complaint contains multiple errors in paragraph numbering (*e.g.* subsequent paragraphs being numbered as follows: 157, 158, 159, 158, 159, 160; 266, 195, 267; and omitting paragraph number 248). Further, the amended complaint spells defendant's names in alternating fashions (*e.g.* Dickinson and Dickenson; Blumer and Bloomer). In his response to Ciciarelli's motion for judgment on the pleadings, (Dkt. No. 100), Murphy refers to defendant Conway rather than Ciciarelli, (Dkt. No. 126 at 5). Many of Murphy's responses to the Sheriff Defendants' Rule 12(c) motions contained errors in the table of contents, including omitting or repeating Roman numerals (*e.g.*, subsequent sections being enumerated as follows: I., III., V., VI.; and repeating the numeral VII.). (*See, e.g.*, Dkt. No. 124.) Murphy submitted his motion to amend without a cover page and unsigned. (Dkt. No. 170.) In Murphy's response to Cassalia's motion for judgment on the pleadings, (Dkt. No. 98), Murphy responds to a statute of limitations argument that was not made by Cassalia, (Dkt. No. 118 at 17-18.) Finally, in his various responses to the Sheriff Defendants' Rule 12(c) motions, Murphy completely fails to address arguments made by these defendants. (*See, e.g.*, Dkt. No.

125 (failing to address arguments regarding his § 1983 retaliation claims).) While the court can tolerate the occasional inadvertent typographical error, Murphy's errors are numerous, and occur after his counsel has requested a substantial amount of extension of filing deadlines. (Dkt. No. 106; Dkt. No. 109; Dkt. No. 114; Dkt. No. 119; Dkt. No. 146.)

Murphy's November 19, 2021, motion to amend indicated via red text proposed amendments to his *proposed second amended complaint*, (Dkt. No. 123, Attach. 1), rather than the operative complaint, (Dkt. No. 60). Therefore, the court cannot "identify the amendments in the proposed pleading" to the "pleading sought to be amended," and can only readily discern the proposed amendments to Murphy's *proposed* second amended complaint, *which is not* the operative pleading. *See* N.D.N.Y. L.R. 15.1(a). For this reason, and because the court took special pains to ensure compliance with the Local Rules, and warned Murphy about the consequences of his failure to do so, Murphy's motion to amend, (Dkt. No. 170), is denied. *See Cottone*, 2018 WL 2021513, at *4 ("[F]ailure to meet the requirements of [the] Local Rule[s] is an independent ground upon which to deny [a motion to amend]."); (Dkt. No. 169 ("[F]ailure to strictly comply with the Local Rules of Practice, and, in particular, Rules 7.1 and 15.1, will result in summary denial of the motion.")).

**B. RICO**

 **\*6**  Murphy's first and second causes of action allege RICO claims against Conway, Ciciarelli, Dickinson, Blumer, Anderson, Peluso, Gratien, Cassalia, Hummel, Cambareri, [7] Fitzpatrick, Carden, Luczka, and Edwards in both their individual and official capacities. [8] (Am. Compl. at 47, 51.) The Sheriff Defendants and Edwards move to dismiss these causes of action, for several reasons, (Dkt. No. 88, Attach. 1 at 4-11; Dkt. No. 90, Attach. 1 at 4-11; Dkt. No. 92, Attach. 1 at 5-12; Dkt. No. 94, Attach. 1 at 4-11; Dkt. No. 96, Attach. 1 at 4-11; Dkt. No. 98, Attach. 1 at 3-11; Dkt. No. 100, Attach. 1 at 4-11; Dkt. No. 102, Attach. 1 at 4-11; Dkt. No. 143, Attach. 3 at 4-11), but, most notably, because Murphy failed to comply with Local Rule 9.2. (Dkt. No. 120 at 1; Dkt. No. 143, Attach 3. at 9.) Hummel, Cambareri, Fitzpatrick, Carden, and Luczka did not move to dismiss.

[7]    Cambareri is not listed as a defendant in any of the causes of action headings in the amended complaint, but is listed as a defendant in the

paragraphs following Murphy's first cause of action, (Am. Compl. ¶¶ 250-53), therefore the court will construe Cambareri as a defendant to Murphy's first cause of action only.

[8]     Unless otherwise noted, for all of Murphy's causes of action, the individual defendants are sued in their individual and official capacities.

RICO grants standing to pursue a civil damages remedy to "any person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). The statute "imposes liability on individuals working for an 'enterprise' that commits certain predicate crimes that amount to a 'pattern of racketeering activity.' " *Reich v. Lopez*, 858 F.3d 55, 59 (2d Cir. 2017) (quoting 18 U.S.C. §§ 1962, 1964). A plaintiff asserting a RICO violation must adequately plead "(1) the defendant's violation of [18 U.S.C.] § 1962, (2) an injury to plaintiff's business or property, and (3) the causation of the injury by the defendant's violation." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 283 (2d Cir. 2006) (internal quotation marks and citations omitted; alteration in original). To adequately plead the causation element of a RICO claim, the plaintiff must allege that the defendant's conduct was the "legal, or proximate, cause of [his] injury, as well as the logical, or 'but for,' cause." *Id.* at 283-84 (quoting *Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys.*, 271 F.3d 374, 380 (2d Cir. 2001)).

To allege a RICO conspiracy under 18 U.S.C. § 1962(d), a plaintiff must allege "a conspiracy to commit a substantive RICO violation." *Spool*, 520 F.3d at 183. In particular, "[b]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990). As a result, to properly allege a civil RICO conspiracy under Section 1962(d), a plaintiff must allege that the defendant "knew about and agreed to facilitate the [RICO] scheme." *Salinas v. United States*, 522 U.S. 52, 66 (1997). Regarding the facilitation requirement, "a plaintiff must allege that the conspirator intended to further an endeavor that, if completed, would satisfy all of the elements of a substantive" criminal offense; however, it is sufficient for a plaintiff to allege that the "conspirator adopted the goal of furthering or facilitating the criminal endeavor." *Malvar Egerique v. Chowaiki*, No. 19 Civ. 3110, 2020 WL 1974228, at *8 (S.D.N.Y. Apr. 24 2020).

"Local Rule 9.2 requires a party asserting a claim under RICO to 'file a RICO statement within thirty (30) days of the filing of the pleading containing such claim.' " *Poole v. Bendixen*, No. 5:20-CV-0697, 2021 WL 3737780, at *11 (N.D.N.Y. Aug. 24, 2021). Failure to timely file a RICO statement pursuant to this rule is grounds for dismissal of the RICO claims. *See Pierce v. Homecomings Fin. LLC*, No. 17-CV-0882, 2017 WL 5991750, at *2 n.2 (N.D.N.Y. Dec. 4, 2017) (noting that, where a plaintiff failed to file a RICO statement pursuant to Local Rule 9.2, "[p]laintiff's RICO claim may be dismissed for this reason alone"); *see also Amaker v. Kelley*, No. 9:01-CV-877, 2009 WL 385413, at *11 (N.D.N.Y. Feb. 9, 2009) (holding that failure to file a RICO statement "provid[es] a threshold for dismissal of [a] plaintiff's RICO claim"); *Spoto v. Herkimer Cnty. Trust*, No. 99-CV-1476, 2000 WL 533293, at *3 n.2 (N.D.N.Y. Apr. 27, 2000) ("[T]he [c]ourt would be justified to dismiss [the] complaint based upon the[ ] very untimely filing of the[ ] Local Rule 9.2 RICO Statement.").

**\*7** Murphy filed the first iteration [9] of his amended complaint alleging RICO causes of action on July 1, 2019, (Dkt. No. 56), and he filed his RICO statement on August 16, 2021, (Dkt. No. 154), well beyond the time permitted by Local Rule 9.2. Because of this violation of Local Rule 9.2, Murphy's first and second causes of action are dismissed as against all defendants. *See Poole*, 2021 WL 3737780, at *11 (denying RICO claims where Plaintiff failed to timely file a RICO statement under Local Rule 9.2, "regardless of Plaintiffs' good-faith work on other aspects of th[e] case"); *see also Citadel Mgmt., Inc. v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 146-47 (S.D.N.Y. 2000) (dismissing complaint against non-moving defendants where moving defendants raised arguments that supported dismissal of all defendants because plaintiff was "on notice" of these arguments and had "responded in full").

[9]     *See supra* note 2.

Given that Murphy's RICO statement was untimely, and his RICO claims are dismissed, Murphy's motion to amend the RICO statement, (Dkt. No. 157), is denied, and his motion that, among other things, requested that the amended RICO statement be accepted as timely, to the extent it sought such relief, (Dkt. No. 156), is denied as moot. Further, the Sheriff Defendants' motion requesting guidance on responding to Murphy's amended RICO statement, (Dkt. No. 155), is also denied as moot.

## C. Retaliation

Murphy's third, fourth, and sixth causes of action allege retaliation in violation of 42 U.S.C. § 1983 and Article 1, Section 8 of the New York State Constitution against Onondaga County, the Onondaga County Sheriff's Department, the Sheriff Defendants, Hummel, Fitzpatrick, Carden, and Luczka. (Am. Compl. at 52, 56, 64.) The Sheriff Defendants moved to dismiss these claims, arguing that there is no causal connection between Murphy's speech and any alleged adverse employment action. (Dkt. No. 88, Attach. 1 at 11-13; Dkt. No. 90, Attach. 1 at 11-13; Dkt. No. 92, Attach. 1 at 12-13; Dkt. No. 94, Attach. 1 at 12-13; Dkt. No. 96, Attach. 1 at 12-14; Dkt. No. 98, Attach. 1 at 11-12; Dkt. No. 100, Attach. 1 at 12-14; Dkt. No. 102, Attach. 1 at 13-15.) Dickinson also contends that Murphy's speech was made as an employee of the Sheriff's Department, rather than as a member of the public, and that any actions taken by Dickinson were "at most *de minimis* inconvenience[s]" but not adverse employment actions. (Dkt. No. 102, Attach. 1 at 14-15.) Onondaga County, the Onondaga County Sheriff's Department, Hummel, Fitzpatrick, Carden, and Luczka do not move to dismiss.

Murphy fails to address any of the arguments made by Blumer, Anderson, Peluso, Gratien, and Ciciarelli. (Dkt. No. 124; Dkt. No. 125; Dkt. No. 126.) With respect to Conway, Murphy appears to contend that supervisory liability provides a basis to avoid dismissal, and that a further amended complaint will also support his retaliation claims against Conway. (Dkt. No.116 at 15-16.) Regarding Dickinson and Cassalia, Murphy appears to also argue that supervisory liability provides a basis to avoid dismissal, and that Dickinson and Cassalia's "efforts were focused on the fabrication of false reports." (Dkt. No. 117 at 13; 118 at 13.) Murphy does not provide a single citation to the amended complaint in support of this position. (*Id.*)

To withstand a motion to dismiss on a First Amendment retaliation claim, a plaintiff must demonstrate: (1) that he "engaged in protected First Amendment activity;" (2) that "he suffered an adverse employment action;" and (3) that "there was a causal connection between the protected activity and the adverse employment action." *Osuan v. City of New York*, No. 18cv151, 2019 WL 2544866, at *4 (S.D.N.Y. June 20, 2019) (quoting *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007)); *see Smith v. County of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015).

**\*8** Whether an employee's speech is protected by the First Amendment is a two-part inquiry. *See Reynolds v. Village of Chittenango*, No. 5:19-cv-416, 2020 WL 1322509, at *3 (N.D.N.Y. Mar. 20, 2020) (citation omitted). First, the subject of the employee's speech must be "a matter of public concern." *Id.* (quoting *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir. 2011)). Second, the employee must be speaking "as a citizen rather than solely as an employee." *Id.* (quoting *Jackler*, 658 F.3d at 235).

An adverse employment action is qualified as "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Shanks v. Vill. of Catskill Bd. of Trs.*, 653 F. Supp. 2d 158, 166 (N.D.N.Y. 2009) (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225-26 (2d Cir. 2006)). "Under this definition, adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand[;] as well as lesser actions such as negative reviews, false accusations, and menial job assignments." *Id.* (quoting *Zelnik*, 464 F.3d at 226) (internal quotation marks and other citation omitted).

Finally, a plaintiff must establish "a causal relationship between the protected speech and the adverse employment action." *Id.* "The causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action." *Cotarelo v. Vill. of Sleepy Hollow Police Dept.*, 460 F.3d 247, 251 (2d Cir. 2006) (citation omitted). "Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." *Shanks*, 653 F. Supp. 2d at 167 (citation omitted). To demonstrate a causal connection, such to "survive a motion to dismiss," a plaintiff "need not clearly establish that the defendant harbored retaliatory intent. It is sufficient to allege facts which could reasonably support an inference to that effect." *Stajic v. City of New York*, 214 F. Supp. 3d 230, 235 (S.D.N.Y. 2016) (quoting *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 418 (2d Cir. 1999)).

The Second Circuit has recently clarified that "there is no special rule for supervisory liability [under § 1983]. Instead, a plaintiff must plead and prove that each ... defendant, through [their] own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks and citation omitted).

As a preliminary matter, Murphy's retaliation claim pursuant to Article I, Section 8 of the New York State Constitution is duplicative of his § 1983 First Amendment retaliation claim. *See Leibovitz v. City of New York*, No. 14-CV-7106, 2018 WL 1157872, at *21 (E.D.N.Y. Mar. 2, 2018) ("[V]arious federal courts in this circuit have held that there is no private right of action under the New York State Constitution where ... remedies are available under [§] 1983.") (internal quotation marks and citations omitted); *cf. Sanders v. City of New York*, No. 12 CV 2906, 2015 WL 2331105, at *9 (S.D.N.Y. May 11, 2015). Thus, Murphy's sixth cause of action, alleging a violation of the New York Constitution, is dismissed as to all defendants.

**\*9** With respect to Murphy's First Amendment retaliation claims brought pursuant to § 1983, he has adequately pleaded that he was speaking as a citizen on matters of public concern when he reported to his superior officers "illegal arrests, inadequate police work, improper training, poor supervision, racially motivated behavior and improper, unprofessional[,] and illegal conduct" committed by members of the Sheriff's Department. (Am. Compl. ¶ 29); *see Raymond v. City of New York*, 317 F. Supp. 3d 746, 755-56 (S.D.N.Y. 2018) (holding that a police officer "engaged in speech in his capacity as a private citizen on a matter of public concern" when he alerted his commanding officer of improper arrests); *see also Matthews v. City of New York*, 779 F.3d 167, 174 (2d Cir. 2015) ("[W]hen a public employee whose duties do not involve formulating, implementing, or providing feedback on a policy ... engages in speech concerning that policy, and does so in a manner in which ordinary citizens would be expected to engage, he or she speaks as a citizen, not as a public employee."); *see also Shanks*, 653 F. Supp. 2d at 165 (N.D.N.Y. 2009) (finding that a firefighter reporting fire department safety violations was protected speech).

Further, Murphy has adequately pleaded that he faced adverse employment action. Specifically, Murphy alleges that Conway requested that Fitzpatrick "institute an unwarranted criminal action against Murphy," (Am. Compl. ¶ 234), that Gratien, Blumer, [10] and Peluso colluded to create a falsified police report in an attempt to blame Murphy for an illegal search and seizure conducted by others in the Sheriff's Department, raised by Murphy, (*id.* ¶ 322), that Anderson filed an unsubstantiated internal complaint against Murphy, (*id.* ¶¶ 198, 322), that Peluso filed multiple unsubstantiated internal complaints against him, (*id.* ¶¶ 101, 137), at least one of which was "specifically intended to prevent ... Murphy from being promoted," (*id.* ¶ 101), and, finally, that Dickinson

drastically reduced Murphy's duties and responsibilities, including his teaching role at the police academy, and made "several improper, unsupported and baseless referrals [of Murphy] to the Onondaga County Sheriff's Office Internal Affairs Office," (*id.* ¶¶ 121, 154-55, 229). These all constitute adverse employment actions. *See Shanks*, 653 F. Supp. 2d at 166. [11]

10    While the amended complaint refers to an individual named "Bloomer," out of an abundance of caution, the court will assume this was an error by Murphy, and assume he intended to refer to defendant Blumer.

11    Murphy also pleads numerous "lesser" actions, which, when considered together would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Zelnik*, 464 F.3d at 225-26; *see Philips v. Bowan*, 278 F.3d 103, 109 (2d Cir. 2002). For example, Murphy alleges he was forbidden from giving orders to subordinates, forbidden from using a patrol car or from displaying his uniform in public, "subject[ed] to threatening and abusive behavior" by others in the department, had his overtime opportunities reduced, was "ordered to undertake menial tasks under circumstances that were deliberately chosen to cause him physical discomfort and agitation," was arbitrarily transferred, and was "subjected to public ridicule and embarrassment." (Am. Compl. ¶ 245.)

Finally, Murphy has adequately pleaded a causal connection between his speech and these adverse actions with respect to the Sheriff Defendants, other than Ciciarelli and Cassalia. The amended complaint alleges that, after Murphy informed Conway of the alleged corruption in the Sheriff's Department, Conway requested that Fitzpatrick "institute an unwarranted criminal action against Murphy, because it [wa]s impossible to silence him using 'in-house' means." (Am. Compl. ¶¶ 69, 234.) At this stage in the litigation, this is adequate to demonstrate a causal connection between Murphy's speech and the alleged adverse employment action carried out by Conway. *See Reynolds*, 2020 WL 1322509, at *3 (holding a causal connection existed where "after [plaintiff] complained about his defective patrol car, he was subject to ... threats of false and malicious criminal prosecution" (internal quotation marks and citation omitted)).

**\*10** With respect to Gratien, Blumer, and Peluso, the amended complaint alleges that, shortly after raising concerns to Blumer regarding an improper search and seizure conducted by members of the Sheriff's Department, which involved Peluso falsifying a policy report to cover the incident up, Gratien, Blumer, and Peluso "collu[ded]" to create a falsified police report in an attempt to blame Murphy for the incident. (Am. Compl. ¶¶ 88-95, 322). Further, after that incident, Gratien expressed that Murphy "was not promoted to Lieutenant because he interferes with investigations of others." (*Id.* ¶ 97.) At this stage in the litigation, these allegations are adequate to demonstrate a causal connection between Murphy's speech and the adverse employment actions carried out by Gratien, Blumer, and Peluso.[12] *See Jackson*, WL 5698535, at \*5 (finding a causal connection existed based on allegations that the defendants threatened and harassed the plaintiff, and falsely represented the plaintiff's performance reviews).

[12]     Further, with respect to Peluso, the amended complaint also alleges that shortly after raising concerns to Peluso that a complainant was not properly "attent[ed to] by [the Sheriff's Department] ... due to [the complainant's] ethnic background and her sex," Murphy was aggressively confronted by Peluso, who later filed a "vacuous" internal complaint against Murphy which was "specifically intended to prevent ... Murphy from being promoted." (Am. Compl. ¶¶ 44-55, 63-66, 101.) This further demonstrates a causal connection between Murphy's speech and the adverse employment actions carried out by Peluso. *See Shanks*, 653 F. Supp. 2d at 167.

With respect to Anderson, the amended complaint alleges that, he filed an internal affairs complaint against Murphy, "following Peluso's lead." (Am. Compl. ¶¶ 198, 322). Given that Peluso's complaint was brought shortly after Murphy raised concerns to Peluso about an instance where a complainant was not "attent[ed to] by [the Sheriff's Department] ... due to her ethnic background and her sex," that the complaint was "specifically intended to prevent ... Murphy from being promoted," and because Anderson, was "following Peluso's lead," (Am. Compl. ¶¶ 44-55, 101, 322), Anderson's Rule 12(c) motion is denied. *Stajic*, 214 F. Supp. 3d at 235 (holding, that to "survive a motion to dismiss," a plaintiff "need not clearly establish that the defendant harbored retaliatory intent. It is sufficient to allege facts which

could reasonably support an inference to that effect" (citation omitted)).

With respect to Cicarelli and Cassalia, Murphy has failed to adequately plead a cause of action for retaliation. Regarding Cassalia, there is not a single *specific* allegation in the amended complaint demonstrating that Cassalia was a participant in any adverse employment action. Regarding Cicarelli, Murphy alleges simply that Cicarelli was aware of the adverse employment action, but not that he was involved in anyway, which is inadequate. *See Tangreti*, 983 F.3d at 618.

To the extent Murphy argues that future amendments will cure any defect with respect to this clause of action, (*see, e.g.*, Dkt. No.116 at 15-16), this argument does not save his claim.[13] *See Austin Air Sys., Ltd. v. Sager Elec. Supply Co., Inc.*, No. 19-CV-562JLS, 2022 WL 464230, at \*8 (W.D.N.Y. Feb. 15, 2022) ("In ruling on a motion under Rule 12(b)(6), ... the court may consider only 'the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated into the complaint by reference.' ") (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007)); *see also supra* Part IV.A. (denying Murphy's pending motions to amend).

[13]     To the extent Murphy makes this argument with respect to his other causes of action, it is similarly unpersuasive. (*See, e.g.*, Dkt. No. 116 at 21, 23-24; Dkt. No. 117 at 14, 19-20; Dkt. No. 118 at 14, 19-20; Dkt. No. 124 at 15; Dkt. 125 at 15-16; Dkt. No. 126 at 15.)

**\*11** For these reasons, Murphy's third and fourth causes of action are dismissed as against Cicarelli and Cassalia, and may proceed against all of the other Sheriff Defendants, as well as the non-moving parties: Onondaga County, the Onondaga County Sheriff's Department, Hummel, Fitzpatrick, Carden, and Luczka.

### D. Section 1985 Conspiracy

Murphy alleges a § 1985 conspiracy against Onondaga County, the Onondaga County Sheriff's Department, the Sheriff Defendants, Hummel, Fitzpatrick, Carden, and Luczka. The Sheriff Defendants move to dismiss this claim, arguing among other things, that, if the court is to construe this cause of action as brought under § 1985(2), that the "amended complaint contains only vague and conclusory allegations which fail to identify a single act [by any of the

Sheriff Defendants] in furtherance of any conspiracy." (Dkt. No. 129 at 7; *see* Dkt. No. 130 at 6; Dkt. No. 131 at 6; Dkt. No. 135 at 6-7; Dkt. No. 136 at 6-7; Dkt. No. 137 at 6-7.) Onondaga County, the Onondaga County Sheriff's Department, Hummel, Fitzpatrick, Carden, and Luczka do not move to dismiss.

Murphy argues that "unquestionably, [he] was the subject of efforts by all of the defendants to impede, hinder, obstruct and/or defeat his pursuit of justice during the course of this federal proceeding," citing only one example in support of this position, that he "was the subject of a grand jury target letter" that "was based on no probable cause and was purely an attempt to deter [him]." (Dkt. No. 116 at 18; Dkt. No. 124 at 12; Dkt. No. 125 at 12-13; Dkt. No. 126 at 12.) Further, with respect to certain defendants, Murphy argues that future "supplement[ations]" will cure any defect in the amended complaint regarding his § 1985 claim. (Dkt. No. 117 at 14; Dkt. No. 118 at 14.)

As a preliminary matter, there is some dispute pursuant to which paragraph of 42 U.S.C. § 1985 Murphy brings his fifth cause of action. Murphy's fifth claim is for "conspiracy to retaliate in violation of the first amendment" under 42 U.S.C. § 1985. (Am. Compl. at 60-61.) It appears that Murphy brings this cause of action under 42 U.S.C. § 1985(3) (Am. Compl. ¶ 321 ("Defendants ... entered into a corrupt agreement to injure ... Murphy ... [and] deprive him of his Constitutional rights")); *see Oliver v. N.Y. State Police*, No. 1:19-cv-233, 2020 WL 1849484, at *9 (N.D.N.Y. Apr. 13, 2020) (holding that, "[t]o state a conspiracy claim under Section 1985(3), among other things, a plaintiff must allege: "1) a conspiracy; 2) for the purpose of depriving ... any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws' " (quoting *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015)).

However, after the Sheriff Defendants, in their various Rule 12(c) motions, noted that, under 42 U.S.C. § 1985(3), a plaintiff must allege "some class based discriminatory amicus," which Murphy had not adequately pleaded, (*see, e.g.*, Dkt. No. 88, Attach. 1 at 14) (citing *Trombley v. O'Neill*, 929 F. Supp. 2d 81, 96 (N.D.N.Y. 2013)), Murphy argues that his fifth cause of action is actually conspiracy to obstruct justice, in violation of the second clause of 42 U.S.C. § 1985(2), (*see, e.g.*, Dkt. 116 at 17-18.)

Even though the court is not persuaded that Murphy intended to bring this cause of action under 42 U.S.C. § 1985(2), out of an abundance of caution, it will analyze it as such.

**\*12** The second clause of 42 U.S.C. § 1985(2) prohibits "two or more persons" from conspiring for to purpose of:

> [I]mpeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

With respect to a claim brought under this clause of § 1985(2), a plaintiff must plead "(1) a conspiracy, (2) for the purpose of impeding, hindering, obstructing, or defeating, in any manner, (3) the due course of justice in any State or Territory, (4) with intent to deny any citizen the equal protection of the laws." *Thomas v. DeCastro*, No. 14-CV-6409, 2018 WL 1322207, at *12 (S.D.N.Y. Mar. 13, 2018) (internal quotation marks and citation omitted). "[A] claim under the second clause of [§] 1985(2) requires a showing of class-based invidiously discriminatory animus on the part of the conspiring parties." *Langton v. Town of Chester Library Bd.*, No. 14-cv-9474, 2020 WL 2850898, at *4 (S.D.N.Y. June 1, 2020) (internal quotation marks and citation omitted); *see Ruggiero v. City of Cortland*, No. 5:17-CV-790, 2018 WL 5983505, at *8 (N.D.N.Y. Nov. 14, 2018) (dismissing a conspiracy claim brought under the second clause of § 1985(2) where, plaintiff "failed to plausibly allege that any of th[e] conspiratorial misconduct stem[ed] from the kind of racial or other class-based animus required by controlling federal law" (internal quotation marks and citation omitted)).

Murphy concedes the fact that he "has not alleged that damages were caused as a result of racial discrimination or other discriminatory means," (*see, e.g.*, Dkt. No. 124 at 11), a requirement under the second clause of § 1985(2). *See Langton*, 2020 WL 2850898, at *4; *see Ruggiero*, 2018 WL 5983505, at *8. Because Murphy makes no attempt to demonstrate racial or other class-based animus [14] on behalf of

any defendant, he has failed to adequately plead a claim under the second clause of § 1985(2), and, thus, his fifth cause of action is dismissed as against all defendants. [15] *See Citadel*, 123 F. Supp. at 146-47.

[14]    Murphy's argument that he is a member of a "class of one" (*see, e.g.*, Dkt. No. 125 at 13), is inapplicable here. *See infra* Part IV.E.; *see also Volunteer Fire Ass'n of Tappan, Inc. v. Cty. of Rockland*, No. 09-CV-4622, 2010 WL 4968247, at *8 n.13 (S.D.N.Y. Nov. 24, 2010) ("A plaintiff alleging a Section 1985 violation may not proceed under a 'class of one' theory." (citation omitted)).

[15]    Because Murphy is represented by counsel, his amended complaint is not entitled to the special solicitude afforded to pro se pleadings. *See Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006). Therefore, the court has not considered whether the amended complaint states a claim pursuant to the first clause of § 1985(2), which requires that a plaintiff plead: "(1) a conspiracy between two or more persons, (2) to deter a witness from court, intimidation or threat from attending court or testifying freely in any pending matter, which (3) results in injury to the plaintiff," *Greene v. City of New York*, No. 08-cv-00243, 2017 WL 1030707, at *31 (E.D.N.Y. Mar. 15, 2017) (quoting *Chalal v. Paine Webber Inc.*, 725 F.2d 20, 23 (2d Cir. 1984)), and which does not require a showing of any class-based animus. *See Kush v. Rutledge*, 460 U.S. 719, 726 (1983); *c.f. Langton v. Town of Chester*, No. 14 Civ. 9474, 2017 WL 6988708, at *6 (S.D.N.Y. Sept. 26, 2017) (citation omitted).

### E. Equal Protection

**\*13** Murphy's seventh cause of action alleges violations of the Equal Protection Clause of the Fourteenth Amendment, under 42 U.S.C. § 1983 against Onondaga County, the Onondaga County Sheriff's Department, the Sheriff Defendants, Hummel, Fitzpatrick, Carden, and Luczka. (Am. Compl. at 68.) The Sheriff Defendants move to dismiss this claim, raising several arguments in support of their position, (Dkt. No. 88, Attach. 1 at 15-17; Dkt. No. 90, Attach. 1 at 16-17; Dkt. No. 92, Attach. 1 at 16-17; Dkt. No. 94, Attach. 1 at 16-18; Dkt. No. 96, Attach. 1 at 16-17; Dkt. No. 98, Attach. 1 at 14-16; Dkt. No. 100, Attach. 1 at 16-18; Dkt. No. 102, Attach. 1 at 17-18). Relevant here, they contend that

Murphy bases his equal protection claim on a class-of-one theory, which is inapplicable. (Dkt. No. 129 at 7-8; Dkt. No. 130 at 7; Dkt. No. 131 at 7; Dkt. No. 135 at 7-8; Dkt. No. 136 at 7-8; Dkt. No. 137 at 7-8.) Onondaga County, the Onondaga County Sheriff's Department, Hummel, Fitzpatrick, Carden, and Luczka do not move to dismiss.

"The Equal Protection Clause of the Fourteenth Amendment requires the government to treat all similarly situated individuals alike." *Young v. Suffolk County*, 705 F. Supp. 2d 183, 204 (E.D.N.Y. 2010) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, (1985)). When a plaintiff does not allege an equal protection violation due to their membership in a protected class, they may still prevail on their claim under a "class-of-one" theory. *See NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177 (2d Cir. 2019) ("[T]he Supreme Court has ... endorsed a class-of-one theory for equal protection claims, under which a single individual can claim a violation of her Equal Protection rights based on arbitrary disparate treatment." (internal quotation marks and citations omitted)); *see also Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To succeed under a class-of-one theory, a plaintiff must demonstrate "[1] that [ ] he has been intentionally treated differently from others similarly situated and [2] that there is no rational basis for the difference in treatment." *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (citation omitted).

In *Engquist v. Oregon Department of Agriculture*, the Supreme Court held that the class-of-one theory has no application in the public employment context. *See* 553 U.S. 591, 607-08 (2008); *see also Booker v. City of New York*, No. 14 Civ. 9801, 2017 WL 151625, at *5 (S.D.N.Y. Jan. 13, 2017) ("[B]ecause 'class-of-one' Equal Protection claims are unavailable in the public employment context, plaintiff cannot state a viable federal Equal Protection claim [under § 1983].").

Because Murphy's equal protection claim relies on the class of one theory, (Dkt. No. 116 at 18-19 ("It has long been held that plaintiff might bring a suit based upon his membership in [a] class[-]of[-]one.... [Murphy's] class ... may be articulated in any number of ways including 'all Sheriff's Deputies', 'all Sheriff's Deputies in Onondaga County', 'all police officers', etc." (internal citation omitted)); *see* Dkt. No. 117 at 15; Dkt. No. 118 at 15; Dkt. No. 124 at 12-13; Dkt. No. 125 at 13; Dkt. No. 126 at 12-13), and Murphy's claim is in the context of public employment, it must be dismissed. *See Stas v. Lynch*, 576 F. Supp. 2d 322, 323, 325 (D. Conn. 2008) (finding that

former Connecticut State Police Trooper did not have a valid claim against Connecticut State Police official pursuant to § 1983, under the class-of-one theory, because this theory was inapplicable in the context of public employment). For this reason, Murphy's seventh cause of action is dismissed as against all defendants. See *Citadel*, 123 F. Supp. 2d at 146-47.

## F. Defamation

Murphy's eighth cause of action is for defamation, defamation per se, slander, and libel against Onondaga County, the Onondaga County Sheriff's Department, the Sheriff Defendants, Hummel, Fitzpatrick, Carden, Luczka, and Edwards. (Am. Compl. at 70.)

The Sheriffs Defendants and Edwards move to dismiss these claims, with the Sheriffs Defendants arguing that Murphy has not adequately pleaded defamation, (Dkt. No. 88, Attach. 1 at 17-18; Dkt. No. 90, Attach. 1 at 18-20; Dkt. No. 92, Attach. 1 at 18-19; Dkt. No. 94, Attach. 1 at 19-20; Dkt. No. 96, Attach. 1 at 18-19; Dkt. No. 98, Attach. 1 at 16-17; Dkt. No. 100, Attach. 1 at 18-20; Dkt. No. 102, Attach. 1 at 19-21), and that, even if he did, the claims are time-barred, (Dkt. No. 88, Attach. 1 at 19-20; Dkt. No. 90, Attach. 1 at 17-18; Dkt. No. 92, Attach. 1 at 17-18; Dkt. No. 94, Attach. 1 at 18-19; Dkt. No. 96, Attach. 1 at 17-18; Dkt. No. 100, Attach. 1 at 18; Dkt. No. 102, Attach. 1 at 18-19), and Edwards making similar arguments, (Dkt. No. 143, Attach. 3 at 11-14). Onondaga County, the Onondaga County Sheriff's Department, Hummel, Fitzpatrick, Carden, and Luczka do not move to dismiss.

**\*14** Murphy argues that the statute of limitations does not bar his claims because "[e]ven if the slanderous comments made by defendants during the meeting that [sic.] the Onondaga County District Attorney's Office were the only comments to base his claim on, ... [that] this meeting occurred in or about January of 2019." (Dkt. No. 116 at 20-21; *see* Dkt. 117 at 17; Dkt. No. 118 at 17; Dkt. No. 124 at 14-15; Dkt. No. 125 at 15; Dkt. No. 126 at 14-15; Dkt. No. 148 at 24.) He also contends that the statute of limitation does not bar his claims because the defendants' "investigations and allegations against Murphy continued even as this case progressed." (Dkt. No. 124 at 15; Dkt. No. 125 at 15; Dkt. No. 126 at 150; see Dkt. No. 148 at 25.) Murphy further asserts that he has sufficiently pleaded all elements to his defamation claims because "[a]s to who the defaming remarks were made, that would include the defendants herein, selected members of the District Attorney's Office, possibly grand jury participants and others. As to the words stated, that would include false

allegations that Murphy had committed a crime." (Dkt. No. 116 at 20; *see* Dkt. No. 117 at 18; Dkt. No. 118 at 18; Dkt. No. 124 at 15; Dkt. No. 125 at 15; Dkt. No. 126 at 15; *see* Dkt. No. 148 at 25.) Murphy also asserts that his proposed second amended complaint establishes additional support for his defamation claims. (Dkt. No. 116 at 21; Dkt. No. 124 at 15; Dkt. 125 at 15-16; Dkt. No. 126 at 15.) Finally, he argues that discovery would allow him to cure any defects in his defamation cause of action. (Dkt. No. 118 at 18; Dkt. No. 148 at 25 ("As it cannot be denied that there was a Grand Jury investigation, there must be a criminal complaint from Edwards/ Westcott. Further, it is obvious that there is no probable cause to institute such an investigation. Undeniably, someone lied. Plaintiff asks only the opportunity to view these documents. That is only fair.").)

"Defamation ... consist[s] of the twin torts of libel and slander." *Alexander v. City of Syracuse*, No. 5:17-CV-1195, 2018 WL 6591426, at \*6 (N.D.N.Y. Dec. 13, 2018) (quoting *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001)). To state a claim for defamation under New York law, a plaintiff must allege "a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, ... caus[ing] special harm or constitut[ing] defamation per se." *Jackie's Enters., Inc. v. Belleville*, 165 A.D.3d 1567, 1569-70 (3d Dep't 2018) (citations omitted). "While the Second Circuit has abandoned the stringent *in haec verba* standard in defamation cases, to comply with the dictates of Rule 8(a) a plaintiff must still 'afford defendant sufficient notice of the communications complained of to enable him to defend himself.' " [16] *Simons v. New York*, 472 F. Supp. 2d 253, 267 (N.D.N.Y. 2007) (quoting *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986)).

[16]     The Sheriff Defendants' argument that Murphy has failed to state a claim for defamation appears to be premised on the more stringent pleading requirements of N.Y. C.P.L.R. § 3016(a), which requires that "the particular words complained of shall be set forth in the complaint." (*See, e.g.*, Dkt. No. 88, Attach. 1 at 19.) While the amended complaint does not meet this standard, "state procedural rules do not apply to federal courts ... and federal courts instead apply the pleading standards set forth in Rule 8 of the Federal Rules of Civil Procedure." *Nouinou v. Smith*, No. 20-CV-8682, 2021 WL 4340952, at \*5 (S.D.N.Y. Sept. 22, 2021) (citing *Treistman v. Wacks*, No. 12-CV-1897, 2017 WL 639322,

at *4 (N.D.N.Y. 2017)); *but see Nichols v. BAC Home Loans Servicing LP*, No. 1:13-CV-00224, 2013 WL 5723072, at *12 (N.D.N.Y. Oct. 18, 2013) (applying the heightened pleading standard of C.P.L.R. 3016 and requiring the plaintiff to plead "the particular words giving rise to his [defamation] claim"). However, as explained herein, Murphy's cause of action fails under either pleading standard.

For a defamation claim to survive a motion to dismiss, in compliance with Rule 8, a plaintiff must "identify (1) the allegedly defamatory statements; (2) the person who made the statements; (3) the time when the statements were made; and, (4) the third parties to whom the statements were published." *Hillary v. Vill. of Potsdam*, No. 7:12-cv-1669, 2015 WL 902930, at *11 (N.D.N.Y. Mar. 3, 2015) (citation omitted). In other words, the allegations must include "the time, place, and manner of the false statement." *Arvanitakis v. Lester*, 145 A.D.3d 650, 651 (2d Dep't 2016).

As to slander per se, there are four categories of statements for which damages need not be shown: statements "(i) charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman." *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992) (citations omitted).

**\*15** "Under New York law, the statute of limitations for a defamation claim is one year." *McKenzie v. Dow Jones & Co., Inc.*, 355 F. App'x 533, 535 (2d Cir. 2009) (citing N.Y. C.P.L.R. § 215(3)).

With respect to Conway, Murphy fails to adequately plead a claim for defamation. Murphy alleges two arguably[17] defamatory statements attributable to Conway in the amended complaint. (Am. Compl. ¶¶ 73, 234.) The first of these statements occurred on March 9, 2016, (*Id.* ¶ 73), assuming *arguendo* that this statement was defamatory, it is time-barred, as it occurred more than one year prior to the commencement of this action, on October 11, 2018, (Dkt. No. 1). The second statement attributable to Conway is: "Conway request[ed] ... Fitzpatrick to institute an unwarranted criminal action against Murphy because it is impossible to silence him using 'in-house' means." (Am. Compl. ¶ 234.) Although Murphy appears to argue in his opposition papers that this occurred "in or about January of 2019," (Dkt. No. 116 at 21), the amended complaint does not allege when this statement was made, (Am. Compl. ¶ 234), and, thus, fails to adequately plead a claim for defamation against Conway. *See Moleon v.*

*Alston*, No. 21 Civ. 1398, 2021 WL 5772439, at *15 (S.D.N.Y. Dec. 3, 2021) ("Where a plaintiff fails to identify ... the time ... in which [the statement] w[as] made, a defamation claim does not survive a motion to dismiss." (internal quotation marks and citation omitted)); *see also Austin Air Sys.*, 2022 WL 464230, at *8 ("In ruling on a motion under Rule 12(b)(6), ... the court may consider only 'the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated into the complaint by reference.' " (quoting *McCarthy*, 482 F.3d at 191)).

[17]    The court will not discuss statements attributable to any of the defendants that are clearly non-defamatory, such as: "Blumer indicated that she would address the matter with the deputy," (Am. Compl. ¶ 90), "Peluso ... stated ... that when he 'sixes' a complaint, it stays 'sixed,' " (*id.* ¶ 63), or "Ciciarelli informed Murphy that Gratien had not recorded the fact of the illegal search and seizure in his Duty Commander log for that night," (*id.* ¶ 110). *See Premier Med. Sys., LLC v. NeuroLogica Corp.*, No. 1:21-cv-1337, 2022 WL 603999, at *12 (S.D.N.Y. Feb. 28, 2022) (finding that a defamatory statement must "expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and ... deprive him of ... friendly intercourse in society") (citation omitted).

Murphy also fails to adequately plead a claim for defamation against Blumer, Peluso, Anderson, Gratien, and Dickinson. Murphy alleges several arguably defamatory statements attributable to these defendants in the amended complaint. (Am. Compl. ¶¶ 65, 95, 97,111, 118, 124, 136, 141-42, 154, 168, 196, 322.) As alleged in the amended complaint, these statements were made "[a] few days [after]" May 30, 2015, (*id.* ¶¶ 49, 63, 65), on or about April 24, 2016, (*id.* ¶¶ 78, 93, 95), on or before June 3, 2016, (*id.* ¶ 97), on or before August 10, 2016, (*id.* ¶ 101), on September 29, 2016, (*id.* ¶¶ 134, 136-137), on October 5, 2016, (*id.* ¶ 141), "[d]uring the November, 2016 time period," (*id.* ¶ 154), and "on or about June 24, 2017," (*id.* ¶¶ 158, 168), and in or before September 2017, (*id.* ¶ 196). Assuming without deciding that these statements were defamatory, they are time-barred, as they occurred more than one year prior to the commencement of this action, on October 11, 2018, (Dkt. No. 1). [18]

18      Murphy also alleges, with respect to Dickinson, that, after Murphy brought this suit, Dickinson made "had several improper, unsupported and baseless referrals to the Onondaga County Sheriff's Office Internal Affairs Office." (Am. Compl. ¶ 229.) Murphy does not provide the content of these referrals, however, and, thus, this allegation does not allow him to avoid dismissal as to Dickinson. *See Hillary*, 2015 WL 902930, at *11 (holding that, for a defamation claim to survive a motion to dismiss, a plaintiff must "identify ... the allegedly defamatory statements" (citation omitted)).

**\*16** Nowhere in the amended complaint does Murphy attribute any specific defamatory statements to Cassalia or Ciciarelli, [19] and, thus, he has not made out a claim for defamation as against them. *See Hillary*, 2015 WL 902930, at *11 (for a defamation claim to survive a motion to dismiss, a plaintiff must "identify ... the allegedly defamatory statements ... [and] the person who made the statements" (internal quotation marks and citation omitted)).

19      Murphy lists five ambiguous statements within his defamation cause of action, none of which are attributed to a particular defendant. (Am. Compl. ¶ 360.) To the extent these are alleged as against Cassalia, Ciciarelli, or any of the defendants, they do not make out a claim of defamation. See *Hillary*, 2015 WL 902930, at *11 (for a defamation claim to survive a motion to dismiss a plaintiff must "identify ... the person who made the statements" (citation omitted)).

Finally, with respect to Edwards, Murphy has failed to adequately plead defamation. The only arguably defamatory statement made by Edwards included in the amended complaint was made "on or about June 24, 2017." (Am. Compl. ¶¶ 158, 168.) Again, assuming *arguendo* that this statement was defamatory, it is time-barred, as it occurred more than one year prior to the commencement of this action, on October 11, 2018. (Dkt. No. 1.)

Finally, in Murphy's various opposition papers, he appears to make the same, or substantially similar, arguments, regardless of the applicability of the arguments to the specific motion he is opposing. (*See, e.g.*, Dkt. 118 at 17-18 (responding to a statute of limitations argument that was not made with respect to this specific defendant).) He argues that his claims are not time-barred because "[e]ven if the slanderous comments made by defendants during the meeting that the Onondaga

County District Attorney's Office were the only comments to base his claim on, there is no problem with the statute of limitations ... [because] this meeting occurred in or about January of 2019." (Dkt. No. 116 at 20-21; Dkt. 117 at 17; Dkt. No. 118 at 17; Dkt. No. 124 at 14-15; Dkt. No. 125 at 15; Dkt. No. 126 at 14-15). This is borderline nonsensical. It is not apparent to the court to which "meeting that [sic.] the Onondaga County District Attorney's Office" Murphy is referring, as the amended complaint does not discuss such a meeting. If Murphy is referring to his allegation that "Conway request[ed] District Attorney Fitzpatrick ... institute an unwarranted criminal action against Murphy," (Am. Compl. ¶ 234), then this argument would have no baring on any claim against any defendant besides Conway, [20] as there is nothing indicating that any defendant besides Conway and Fitzpatrick were present or involved in this meeting, let alone made defamatory statements during the meeting. Further, Murphy contends that "[defendant's] investigations and allegations against Murphy continued even as this case progressed," (Dkt. No. 124 at 15; Dkt. No. 125 at 15; Dkt. No. 126 at 150; see Dkt. No. 148 at 25), yet he provides no citations to the amended complaint in support of this position. Finally, Murphy's contention that future discovery would cure any defects in his defamation cause of action, (Dkt. No. 118 at 18; Dkt. No. 148 at 25), is equally unpersuasive. *See Arrindel-Martin v. City of Syracuse*, No. 5:18-CV-780, 2018 WL 6622193, at *6 (N.D.N.Y. Dec. 18, 2018) ("[T]he purpose of the plausibility standard is to require a plaintiff to allege sufficient facts to state a claim; it is not a license for a plaintiff to conduct a fishing expedition in an attempt to obtain discovery that might support his allegations." (citation omitted)).

20      For the reasons noted above, Murphy's defamation claims against Conway are dismissed, regardless of this argument.

**\*17** For these reasons, Murphy's eighth cause of action for defamation, defamation per se, slander, and libel is dismissed as against the Sheriff Defendants and Edwards, and remains against the non-moving defendants: Onondaga County, the Onondaga County Sheriff's Department, Hummel, Fitzpatrick, Carden, and Luczka.

## G. Conspiracy to Defame

Murphy's ninth cause of action is for conspiracy to defame against Onondaga County, the Onondaga County Sheriff's Department, the Sheriff Defendants, Hummel, Fitzpatrick, Carden, Luczka, Edwards, and Westcott. (Am. Compl. at 73.)

"In order to properly plead a cause of action to recover damages for civil conspiracy, the plaintiff must allege *a cognizable tort*, coupled with an agreement between the conspirators regarding the tort, and an overt action in furtherance of the agreement." *Fairstein v. Netflix, Inc.*, No. 20-cv-8042, 2021 WL 3501527, at *23 (S.D.N.Y. Aug. 9, 2021) (emphasis added) (quoting *Perez v. Lopez*, 948 N.Y.S.2d 312, 314 (2d Dep't 2012)).

Where a plaintiff fails to adequately plead "facts sufficient to demonstrate the underlying tort of defamation" their claims for civil conspiracy to commit defamation must also be dismissed. *See Sparrow Fund Mgmt. LP v. MiMedx Group, Inc.*, No. 18 Civ. 4921, 2019 WL 1434719, at *12 (S.D.N.Y. Mar. 31, 2019); *see also Nunes v. Cable News Network, Inc.*, 520 F. Supp. 3d 549, 561 (S.D.N.Y. Feb. 19, 2021) ("In light of [p]laintiff's failure to plead a viable defamation claim, there is no underlying tort to support a viable claim for conspiracy here.").

Because Murphy's defamation claims against the Sheriff Defendants and Edwards are dismissed, his ninth cause of action for conspiracy to defame as against these same defendants and Westcott is likewise dismissed. *See Sparrow*, 2019 WL 1434719, at *12. His defamation claims remain against the non-moving parties: Onondaga County, the Onondaga County Sheriff's Department, Hummel, Fitzpatrick, Carden, and Luczka.

### H. Intentional Infliction of Emotional Distress

Murphy's tenth cause of action alleges intentional infliction of emotional distress (IIED) against Onondaga County, the Onondaga County Sheriff's Department, the Sheriff Defendants, and Hummel. (Am. Compl. at 77.)

The Sheriff Defendants argue that this claim must be dismissed for several reasons, (Dkt. No. 88, Attach. 1 at 21-23; Dkt. No. 90, Attach. 1 at 21-23; Dkt. No. 92, Attach. 1 at 22-23; Dkt. No. 94, Attach. 1 at 22-23; Dkt. No. 96, Attach. 1 at 22-23; Dkt. No. 98, Attach. 1 at 28-20; Dkt. No. 100, Attach. 1 at 22-23; Dkt. No. 102, Attach. 1 at 22-24), but most notably here, because Murphy's allegations do not meet the high standard required for a claim of intentional affliction of emotional distress, (Dkt. No. 88, Attach. 1 at 22-23; Dkt. No. 90, Attach. 1 at 22-23; Dkt. No. 92, Attach. 1 at 22-23; Dkt. No. 94, Attach. 1 at 22-23; Dkt. No. 96, Attach. 1 at 22-23; Dkt. No. 98, Attach. 1 at 19-20; Dkt. No. 100, Attach. 1 at 22-23; Dkt. No. 102,

Attach. 1 at 23-24). Onondaga County, the Onondaga County Sheriff's Department, and Hummel do not move to dismiss.

With respect to Conway, Dickinson, and Cassalia, Murphy appears to concede this point, (Dkt. No. 116 at 23-24 ("Plaintiff's proposed amended complaint alleviates this inadvertent error ... [a]ccordingly, plaintiff will move for an amended complaint to alleviate this inadvertent error and place th[is] extreme conduct before the Court in th[is] ... cause[ ] of action."); *see* Dkt. No. 117 at 19-20; Dkt. No. 118 at 19-20), and argues, that with respect Blumer, Peluso, Gratien, Anderson, and Ciciarelli, the standard has been met, (Dkt. No. 124 at 16-17; Dkt. No. 125 at 17-18; Dkt. No. 126 at 16-17).

 **\*18** IIED is a "highly disfavored tort under New York law.... to be invoked only as a last resort." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) (internal quotation marks and citations omitted). Under New York law, IIED has four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and the injury; and (iv) severe emotional distress." *Chanko v. Am. Broad. Cos.*, 27 N.Y.3d 46, 56 (2016) (citation omitted). As to the first element, the "conduct [must have] been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (internal quotation marks and citation omitted). This standard is "rigorous[ ] and difficult to satisfy." *Id.* Establishing extreme and outrageous conduct "is difficult, even at the pleadings stage." *Ifill v. United Parcel Serv.*, No. 04Civ.5963, 2005 WL 736151, at *6 (S.D.N.Y. Mar. 29, 2005) (quoting *Conboy v. AT & T Corp.*, 84 F. Supp. 2d 492, 507 (S.D.N.Y. 2000)). Indeed, "of the IIED claims considered by [the New York Court of Appeals], 'every one has failed because the alleged conduct was not sufficiently outrageous.' " *Taylor v. N.Y.C. Fresh Market*, No. 19 CV 4797, 2020 WL 10356230, at *8 (E.D.N.Y. Dec. 23, 2020) (quoting *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 122 (1993)).

Under the IIED heading in the amended complaint, Murphy alleges that he "was not allowed to appear in public in uniform," "was not allowed to supervise patrol officers," "was not allowed to do police work," "was required to sit at a desk all day, with no work, while others looked on," "was wrongly passed over for promotion in favor of an officer with less experience," and that his "wife was assaulted without the [Sheriff's] Department so much as instituting an

investigation." (Am. Compl. ¶ 391; *see id.* ¶ 245.) These allegations do not meet the standard for IIED. *See Kolchinsky v. Moody's Corp.*, No. 10 Civ. 6840, 2012 WL 639162, at *1-3, 7 (S.D.N.Y. Feb. 28, 2012) (holding that, where a plaintiff alleged, because of his role as a whistle blower, he was barred from meetings, demoted, had his responsibilities and salary decreased, defamed, and ultimately suspended from the company, that these "allegations do not have a hint" of the required extreme and outrageous conduct); *see also Ifill v. United Parcel Serv.*, No. 04Civ.5963, 2005 WL 736151, at *1-2, 7 (S.D.N.Y. Mar. 29, 2005) (finding that allegations that employer harassed, discriminated, demoted, and retaliated against plaintiff were insufficient to state IIED). For this reason, Murphy's tenth cause of action for IIED is dismissed as against the Sheriff Defendants. This cause of action remains against the non-moving defendants: Onondaga County, the Onondaga County Sheriff's Department, and Hummel.

## I. Negligent Infliction of Emotional Distress

Murphy's eleventh cause of action is for negligent infliction of emotional distress (NIED) against Onondaga County, the Onondaga County Sheriff's Department, the Sheriff Defendants, Hummel, Fitzpatrick, Carden, and Luczka. (Am. Compl. at 79.)

The Sheriff Defendants argue that this cause of action must be dismissed against them because none of the Sheriff Defendants breached a duty owed to Murphy which resulted in a threat or endangerment to his physical safety. (Dkt. No. 88, Attach. 1 at 24-25; Dkt. No. 90, Attach. 1 at 24-25; Dkt. No. 92, Attach. 1 at 24-25; Dkt. No. 94, Attach. 1 at 24-25; Dkt. No. 96, Attach. 1 at 24; Dkt. No. 98, Attach. 1 at 21; Dkt. No. 100, Attach. 1 at 24-25; Dkt. No. 102, Attach. 1 at 25.) Onondaga County, the Onondaga County Sheriff's Department, Hummel, Fitzpatrick, Carden, and Luczka do not move to dismiss.

With respect to Conway, Dickinson, and Cassalia, Murphy appears to concede this point. (Dkt. No. 116 at 23-24; Dkt. No. 117 at 19-20; Dkt. No. 118 at 19-20), and completely fails to address Blumer, Peluso, Gratien, Anderson, and Ciciarelli's arguments regarding NIED. (Dkt. No. 124 at 16-17; Dkt. No. 125 at 17-18; Dkt. No. 126 at 16-17.)

**\*19** Under New York law, a plaintiff may establish a claim for NIED in two ways, under the "bystander theory" or "direct duty theory." See *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996). A plaintiff may recover "under the 'bystander'

theory when: (1) [he] is threatened with physical harm as a result of defendant's negligence; and (2) consequently [he] suffers emotional injury from witnessing the death or serious bodily injury of a member of [his] immediate family." *Id.* (citation omitted); *see Quinn v. U.S.*, 946 F. Supp. 2d 267, 278 (N.D.N.Y. 2013). "A plaintiff may recover under a direct duty theory when [he] suffers an emotional injury from defendant's breach of a duty which unreasonably endangered [his] own physical safety." *Quinn*, 946 F. Supp. 2d at 278 (internal quotation marks and citation omitted); *see Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996). Importantly, "[t]he duty in such cases must be specific to the plaintiff, and not some amorphous, free-floating duty to society." *See Mortise*, 102 F.3d at 696 (citation omitted); *see also Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 285 (N.D.N.Y. 2018).

Murphy appears to seek recovery under a direct duty theory. (Am. Compl. ¶¶ 393-99.) However, Murphy does not plead that any of the Sheriff Defendants owned him a specific duty, but rather that "[d]efendants had a duty not only to avoid such conduct but, to conduct themselves in a civilized and professional manner." (Am. Compl. ¶ 395.) Because Murphy has failed to plead a violation of a *specific* duty owed to him to him by any of the defendants, his eleventh cause of action for NIED is dismissed as against the Sheriff Defendants. See *Burroughs*, 325 F. Supp. 3d at 285; *see also Leibenguth v. U.S.*, No. 08-CV-6008, 2009 WL 3165846, at *4 (W.D.N.Y. Sept. 29, 2009). This claim remains against the non-moving defendants: Onondaga County, the Onondaga County Sheriff's Department, Hummel, Fitzpatrick, Carden, and Luczka.

## J. Murphy's Other Motions

Although it is admittedly not entirely clear to the court the full extent of the relief sought by Murphy in his motion informing the court of alleged "improprieties" by defendants, (Dkt. No. 156), and his August 30, 2021, letter motion, (Dkt. No. 159), to the extent they seek relief inconsistent with the above, they are denied.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Conway's motion for judgment on the pleadings (Dkt. No. 88) is **GRANTED IN PART and DENIED IN PART** as follows:

**GRANTED** as to the following claims, which are **DISMISSED**, Murphy's RICO claims; § 1985 conspiracy claim; retaliation claim pursuant to Article 1, Section 8 of the New York State Constitution; § 1983 equal protection claim; defamation claims; conspiracy to defame claim; IIED; and NIED; and

**DENIED** in all other respects; and it is further

**ORDERED** that Blumer's motion for judgment on the pleadings (Dkt. No. 90) is **GRANTED IN PART and DENIED IN PART** as follows:

**GRANTED** as to the following claims, which are **DISMISSED**, Murphy's RICO claims; § 1985 conspiracy claim; retaliation claim pursuant to Article 1, Section 8 of the New York State Constitution; § 1983 equal protection claim; defamation claims; conspiracy to defame claim; IIED; and NIED; and

**DENIED** in all other respects; and it is further

**ORDERED** that Peluso's motion for judgment on the pleadings (Dkt. No. 92) is **GRANTED IN PART and DENIED IN PART** as follows:

**GRANTED** as to the following claims, which are **DISMISSED**, Murphy's RICO claims; § 1985 conspiracy claim; retaliation claim pursuant to Article 1, Section 8 of the New York State Constitution; § 1983 equal protection claim; defamation claims; conspiracy to defame claim; IIED; and NIED; and

**DENIED** in all other respects; and it is further

**ORDERED** that Gratien's motion for judgment on the pleadings (Dkt. No. 94) is **GRANTED IN PART and DENIED IN PART** as follows:

**\*20 GRANTED** as to the following claims, which are **DISMISSED**, Murphy's RICO claims; § 1985 conspiracy claim; retaliation claim pursuant to Article 1, Section 8 of the New York State Constitution; § 1983 equal protection claim; defamation claims; conspiracy to defame claim; IIED; and NIED; and

**DENIED** in all other respects; and it is further

**ORDERED** that Anderson's motion for judgment on the pleadings (Dkt. No. 96) is **GRANTED IN PART and DENIED IN PART** as follows:

**GRANTED** as to the following claims, which are **DISMISSED**, Murphy's RICO claims; § 1985 conspiracy claim; retaliation claim pursuant to Article 1, Section 8 of the New York State Constitution; § 1983 equal protection claim; defamation claims; conspiracy to defame claim; IIED; and NIED; and

**DENIED** in all other respects; and it is further

**ORDERED** that Cassalia's motion for judgment on the pleadings (Dkt. No. 98) is **GRANTED**; and it is further

**ORDERED** that Ciciarelli's motion for judgment on the pleadings (Dkt. No. 100) is **GRANTED**; and it is further

**ORDERED** that Dickinson's motion for judgment on the pleadings (Dkt. No. 102) is **GRANTED IN PART and DENIED IN PART** as follows:

**GRANTED** as to the following claims, which are **DISMISSED**, Murphy's RICO claims; § 1985 conspiracy claim; retaliation claim pursuant to Article 1, Section 8 of the New York State Constitution; § 1983 equal protection claim; defamation claims; conspiracy to defame claim; IIED; and NIED; and

**DENIED** in all other respects; and it is further

**ORDERED** that the following claims remain: Murphy's third and fourth causes of action for § 1983 retaliation against Onondaga County, the Onondaga County Sheriff's Department, Conway, Dickinson, Blumer, Anderson, Peluso, Gratien, Hummel, Fitzpatrick, Carden, Luczka; Murphy's eighth cause of action for defamation, defamation per se, libel, and slander against Onondaga County, the Onondaga County Sheriff's Department, Hummel, Fitzpatrick, Carden, and Luczka; Murphy's ninth cause of action for conspiracy to commit defamation, defamation per se, libel, and slander against Onondaga County, the Onodaga County Sheriff's Department, Hummel, Fitzpatrick, Carden, and Luczka; Murphy's tenth cause of action for IIED against Onondaga County, the Onondaga County Sheriff's Department, and Hummel; and, Murphy's eleventh cause of action for NIED against Onondaga County, the Onondaga County Sheriff's Department, Hummel, Fitzpatrick, Carden, and Luczka; and it is further

**ORDERED** that Murphy's motion to amend the amended complaint (Dkt. No. 123) is **DENIED** as moot; and it is further

**ORDERED** that Edwards and Westcott's motion to dismiss (Dkt. No. 143) is **GRANTED**; and it is further

**ORDERED** that Edwards and Westcott's motion regarding Murphy's proposed amended complaint (Dkt. No. 144) is **GRANTED IN PART and DENIED IN PART** as follows:

   **GRANTED** to the extent it sought denial of Murphy's motion to amend, and

   **DENIED** in all other respects; and it is further

**ORDERED** that the Sheriff Defendants' motion requesting guidance in responding to the amended RICO statement (Dkt. No. 155) is **DENIED** as moot; and it is further

**ORDERED** that the following defendants are dismissed: Cassalia, Ciciarelli, Cambareri, Edwards, and Westcott; and it is further

**ORDERED** that Murphy's motion informing the court of alleged "improprieties" by defendants, requesting that the amended RICO statement be accepted as timely, and seeking to file a further amended complaint (Dkt. No. 156) is **DENIED**; and it is further

 **\*21  ORDERED** that Murphy's motion to amend the RICO statement, (Dkt. No. 157) is **DENIED**; and it is further

**ORDERED** that Murphy's August 30, 2021, letter motion (Dkt. No. 159), to the extent it seeks relief from the court, is **DENIED**; and it is further

**ORDERED** that Murphy's motion to amend, (Dkt. No. 170) is **DENIED**; and it is further

**ORDERED** that the parties shall contact Magistrate Judge Christian F. Hummel to schedule further proceedings; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2022 WL 819281, RICO Bus.Disp.Guide 13,617

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 1729264

2013 WL 1729264
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Randall SAUNDERS, Plaintiff,
v.
Blair VINTON, et al., Defendants.

No. 3:12–cv–581 (MPS).
|
April 22, 2013.

**Attorneys and Law Firms**

Randall Saunders, Brooklyn, CT, pro se.

Steven R. Strom, Office of the Attorney General, Hartford, CT, for Defendants.

*RULING ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [Doc. # 40] and
PLAINTIFF'S MOTION IN OPPOSITION [Doc. # 47]*

MICHAEL P. SHEA, District Judge.

**\*1** The plaintiff, Randall Saunders, alleges in his complaint that the defendants, Captain Blair Vinton, Lieutenant Neva Lloyd and Correctional Officer Hector Rivera, conspired against him and interfered with his legal mail in violation of his right of access to the courts. The defendants have filed a motion for summary judgment. In opposition, the plaintiff has filed a motion asking the court to deny the motion. For the reasons that follow, the defendants' motion is granted and the plaintiff's motion is denied.

*I. Standard of Review*

A motion for summary judgment may be granted only where there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* Rule 56(a), Fed.R.Civ.P.; *In re Dana Corp.,* 574 F.3d 129, 151 (2d Cir.2009). The moving party may satisfy his or her burden "by showing-that is pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v.. v. Coca–Cola Co.,* 315 F.3d 101, 105 (2d Cir.2002) (per curiam) (internal quotation marks and citations omitted). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord,* 554

F.3d 255, 266 (2d Cir.2009). In order to defeat the motion for summary judgment, the plaintiff must present such evidence as would allow a jury to find in his or her favor. *Graham v. Long Island R.R.,* 230 F.3d 34, 38 (2d Cir.2000). Merely verifying the conclusory allegations of the complaint in an affidavit, however, is insufficient to oppose a motion for summary judgment. *Zigmund v. Foster,* 106 F.Supp.2d 352, 356 (D.Conn.2000) (citing cases).

When reviewing the record, the court resolves all ambiguities and draws all permissible factual inferences in favor of the party against whom summary judgment is sought. *Loeffler v. Staten Island Univ. Hosp.,* 582 F.3d 268, 274 (2d Cir.2009). If there is any evidence in the record on a material issue from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is inappropriate. *Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.,* 391 F.3d 77, 83 (2d Cir.2004). However, the existence of a mere "scintilla" of evidence supporting the plaintiff's position is insufficient to defeat a motion for summary judgment. *Harvey v. Homebound Mortgage, Inc.,* 547 F.3d 158, 163 (2d Cir.2008).

II. *Facts* [1]

[1]    The facts are taken from the parties' Local Rule 56(a) Statements and attached exhibits.

In December 2011, the plaintiff contacted Attorney Martin Zeldis, from the Office of the Public Defender, renewing his October 4, 2011 request that Attorney Zeldis send the plaintiff his legal file. The plaintiff learned that the file had been mailed to him on October 12, 2011. (*See* Doc. # 48 at 59.) Attorney Zeldis contacted defendant Lloyd, who located the box and delivered it to the plaintiff during the first week in January 2012. The box was marked legal mail. The parties disagree as to whether the box had been opened before it was given to the plaintiff.

**\*2** During the time the box was missing, the plaintiff's appeal of a state habeas action was pending. The plaintiff filed his appellate brief on October 3, 2011, before the box was mailed to him. The respondent filed his brief on January 11, 2012, after the plaintiff had received the box. The plaintiff filed a reply brief on January 30, 2012.

Prior to receiving the box, the plaintiff had five boxes of legal materials in his cell. Defendant Lloyd told the plaintiff that, per Department of Correction Administrative Directive

Saunders v. Vinton, Not Reported in F.Supp.2d (2013)
Case 6:22-cv-01082-GTS-TWD    Document 5    Filed 11/09/22    Page 67 of 96
2013 WL 1729264

6.10, § 19, he was permitted to have only two boxes of legal materials in his cell at one time.

Additional boxes could be stored in the property room and exchanged for the boxes in his cell by notifying the property officer. The plaintiff contends that he had written permission from Warden Maldonado to retain his legal materials in his cell while he had pending litigation and that the permission was contained in a notice in his file. The plaintiff has not provided a copy of this notice.

In January 2012, an envelope addressed to the plaintiff and marked "Legal Correspondence" was referred to defendant Vinton for review. The return address included a post office box but no name. The envelope had been opened and secured with two staples. On January 23, 2012, defendant Vinton spoke with the plaintiff regarding the envelope and asked him how the facility mail staff would know that this was legitimate legal mail. The plaintiff stated that he was representing himself in several actions and had received many such envelopes from Ms. Joy, who is not an attorney, containing legal research and documents from his legal files. The plaintiff explained that, at a different correctional facility, Ms. Joy had been permitted to mark the envelopes as legal correspondence and the envelopes were opened only in the plaintiff's presence. The plaintiff provides no evidence other than his and Ms. Joy's statements supporting this assertion.

Administrative Directive 10.7, § 3(H), defines "legal mail" as correspondence from an attorney, court or government official. The plaintiff conceded that Ms. Joy is not an attorney and does not satisfy the requirements to be considered a privileged correspondent. Section 4(I) requires that such correspondence must clearly be identified as privileged and specify the correspondent. Although the envelope was stamped as legal correspondence, the return address included only a post office box. Defendant Vinton told the plaintiff that he was in violation of the directive and advised him to seek other methods of receiving such correspondence.

III. *Discussion*

The plaintiff filed this action pursuant to 42 U.S.C. §§ 1983, 1985(2) and 1986. He asserts claims of denial of access to the courts and conspiracy.

A. *Access to the Courts*

The plaintiff argues that the defendants denied him access to the courts by delaying delivery of the box containing

his legal file and refusing to permit Ms. Joy to send him correspondence marked as legal mail. He also alleges generally that the defendants destroyed documents from the legal file. (*See* Doc. # 1–1.[2])

[2]    On September 6, 2012, the plaintiff filed a document entitled Amended Complaint. (*See* Doc. # 23.) The document is not a complaint, but rather a list of changes to the complaint the plaintiff wished to make. As the plaintiff never filed a proper amended complaint, Doc. # 1–1 remains the operative complaint.

**\*3** It is well-settled that inmates have a First Amendment right of access to the courts. *See Bounds v. Smith,* 430 U.S. 817, 828 (1977), *modified on other grounds by Lewis v. Casey,* 518 U.S. 343, 350 (1996). To state a claim for denial of access to the courts, the plaintiff must demonstrate that the defendants acted deliberately and maliciously and that he suffered an actual injury. *See Lewis,* 518 U.S. at 353. To establish an actual injury, the plaintiff must allege facts showing that the defendants took or were responsible for actions that hindered his efforts to pursue a legal claim, prejudiced one of his existing actions, or otherwise actually interfered with his access to the courts. *See Monsky v. Moraghan,* 127 F.3d 243, 247 (2d Cir.2002). For example, the plaintiff could demonstrate an actual injury by providing evidence "that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of the deficiencies in the prison's legal assistance facilities, he could not have known." *Lewis,* 581 U.S. at 351.

1. *Correspondence from Ms. Joy*

The claim regarding correspondence from Ms. Joy is based on the opening of the envelopes outside of his presence and a further allegation of delay in receiving documents. The act of opening incoming mail by itself does not involve an inmate's right of access to the courts. "The policy that incoming confidential legal mail should be opened in inmates' presence instead serves the prophylactic purpose of assuring them that confidential attorney-client mail has not been improperly read in the guise of searching for contraband." *Beaulieu v. Ludeman,* 690 F.3d 1017, 1037 (8th Cir.2012) (internal quotation omitted). Although Ms. Joy has a power of attorney from the plaintiff, she is not an attorney. The plaintiff does not have an attorney-client privilege with Ms. Joy, and their communications are not protected as attorney work product. *See Spartalian v. Citibank N.A.,* No. 2:12–cv–00742–MMD–PAL, 2013 WL 800269, at *7 (D.Nev. Mar. 4,

2013) (holding that plaintiff's communications with a friend, who was a paralegal not working under the direct supervision of a lawyer, were not protected by attorney-client or work product privileges). Correspondence from Ms. Joy does not fit within the Department of Correction's definition of privileged legal correspondence and the plaintiff's right of access to the courts was not violated by the failure to treat correspondence from Ms. Joy as privileged legal mail.

The plaintiff also argues that communications from Ms. Joy were delayed. He fails, however, to demonstrate that he suffered an actual injury as a result of this delay, such that he could make a claim for denial of access to the courts. In opposition to the defendants' motion for summary judgment, the plaintiff alleges that he experienced "additional expenses in motion practice, missed deadlines, mailings and phone calls." (Doc. # 48 at 7–8.) He does not identify any claim he was prevented from asserting or any case that was dismissed as a result of the alleged delays in receiving mail from Ms. Joy. *See Ford v. Fischer,* No. 9:09–CV–723 (DNH/ATB), 2011 WL 856416m at *7 (N.D.N.Y. Jan. 31, 2011) (delays in legal correspondence do not violate a prisoner's right of access to the courts unless he can establish actual injury suffered as a result of the defendants' actions); *Jermosen v. Coughlin,* 877 F.Supp. 864, 871 (S.D.N.Y.1995) (mere delay in being able to work on legal action or communicate with the courts does not rise to level of constitutional violation). Cost incurred for telephone calls and sending materials a second time do not rise to the level of a actual injury. *See Rueb v. Brown,* No. 12–1117, 2012 WL 6014604, at *2 (10th Cir. Dec. 4, 2012) (additional photocopying costs do not constitute actual injury to support claim for denial of access to the courts).

*\*4* The plaintiff also argues in his memorandum that defendant Vinton "overruled a federal court judge" with regard to his orders concerning correspondence from Ms. Joy. (Doc. # 48 at 19.) The plaintiff refers to an electronic endorsement denying without prejudice a motion filed in *Saunders v. Commissioner,* No. 3:10cv410(MRK), 2011 WL 572313 (D.Conn. Feb. 15, 2011). The plaintiff had asked the court to order that all mail received from Ms. Joy be treated as legal mail. The court denied the motion as moot based on the respondent's representation that the mail in question had been delivered to the plaintiff. Although the court noted that the plaintiff is entitled to receive mail marked as legal correspondence, that statement was dicta. In addition, the court did not order that all correspondence from Ms. Joy be treated as legal mail. Thus, any argument that the defendants

in this action violated any order from the district court is without merit.

### 2. Box Containing Legal File

The plaintiff contends that the delay in receiving the box containing his legal file and the documents missing from that file caused him to miss deadlines in his state court appeal and prejudiced him in pursuing a federal habeas corpus action. He claims that "the habeas appeal was settled to in [sic] an inadequate result due to the missing evidence delayed and destroyed in original appellate file." (Doc. # 48 at 9–10.) He states generally that he was unable to pursue legal theories or cite cases in his brief.

The plaintiff's allegations were sufficient to survive initial review of the complaint. Interference with legal mail may implicate an inmate's right of access to the court. To state a plausible claim, however, the plaintiff must allege facts showing deliberate and malicious conduct by the defendants that hindered his efforts to pursue a legal claim and resulting actual injury. *See Cohen v. County of Nassau,* No. 10–CV–5836(SJF)(ETB), 2011 WL 1630136 at *6 (E.D.N.Y. Apr. 27, 2011)* (citations omitted). To successfully oppose a motion for summary judgment, the plaintiff must submit admissible evidence supporting those allegations.

The plaintiff prepared and filed his appellate brief in his state habeas case before the case file was mailed to him. Thus, any delay in receiving the file did not prevent him from filing a brief, and plaintiff has submitted no evidence that any such delay affected the arguments he actually raised in the appeal. In addition, he received the file well before he filed his reply brief. Although the plaintiff refers to his federal habeas action, that action was dismissed in February 2011, long before the plaintiff requested his case file. *See Saunders v. Commissioner,* No. 3:10cv410(MRK), 2011 WL 572313 (D.Conn. Feb. 15, 2011).* Thus, the lack of the case file had no impact on the federal case. The plaintiff has not demonstrated any actual injury suffered as a result of the two-month delay in receiving the legal file.

*\*5* The plaintiff's argument that the defendants destroyed documents from the file also is without merit. The plaintiff has not identified any document missing from the file. He submits a letter from Attorney Zeldis stating that Attorney Zeldis gave the file to a paralegal to be mailed to the plaintiff on October 12, 2011; Attorney Zeldis does not indicate in the letter that he knew what actually was in the box. The plaintiff states in his affidavit that the transmittal sent with the box indicated

2013 WL 1729264

there were no copies of the files contained in the box. (*See* Doc. # 48–3 at ¶ 4.) Absent any evidence of what the box contained before it was mailed and after it was received, the plaintiff has not demonstrated that anything was missing from the box when he received it.

Even if one or more documents were missing, the plaintiff has not presented any evidence of an actual injury. He alleges generally that he cannot adequately prosecute a state habeas action, but does not indicate what claims he included in that action and what missing documents would have supported those claims. To oppose successfully a motion for summary judgment, the plaintiff must do more that repeat his allegations in an affidavit. *See Zigmund,* 106 F.Supp.2d at 356. He must present admissible evidence demonstrating a genuine issue of material fact. *See Graham,* 230 F.3d at 38. The plaintiff has not done so. Accordingly, the defendants' motion for summary judgment is granted on the plaintiff's access to courts claims.

### B. *Retaliation*

Although the plaintiff includes the words "acts of retaliation" in his complaint, it is not clear whether he is asserting a separate retaliation claim or merely providing examples in support of his claim for denial of access to the courts. (*See* Doc. # 1–1 at 4.) The parties did not address retaliation in their briefs—which suggests that the plaintiff does not in fact assert a separate retaliation claim—but the Court nevertheless will address this issue. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) (allowing the district court to dismiss at any time a complaint that fails to state a cognizable claim). To the extent that the plaintiff asserts a separate retaliation claim, it is dismissed for failure to state a cognizable claim.

Prison officials may not retaliate against inmates for exercising their constitutional rights. To establish a retaliation claim, the plaintiff must show that his actions were protected by the Constitution or federal law and that his protected conduct was a "substantial or motivating factor" in the alleged retaliatory conduct. *Friedl v. City of New York,* 210 F.3d 79, 85 (2d Cir.2000). Because claims of retaliation are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific facts; conclusory statements are not sufficient. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.2003). To support a claim of retaliation, the allegedly retaliatory conduct must deter a similarly-situated inmate of ordinary resolve from exercising his constitutional rights. *See Gill v. Pidlypchak,* 389 F.3d 379,

381 (2d Cir.2004). Any lesser conduct is *de minimis* and does not support a retaliation claim.

**\*6** The plaintiff alleges that defendant Vinton retaliated against him in two ways. First, upon arrival at the Enfield Correctional Institution, the plaintiff alleges that he was directed to have all "legal correspondence" from Ms. Joy sent to defendant Vinton and not just mailed to the facility. (*See* Doc. 1–1 at ¶ 16.) The plaintiff fails, however, to identify any specific protected action he took that preceded defendant Vinton's allegedly retaliatory directive. Indeed, the plaintiff's description of the directive as being issued "*[u]pon arrival* at Enfield C.I." raises doubt that it could have been retaliatory, as there would not have been any opportunity for the plaintiff to undertake a protected activity until *after* his arrival. (*Id.* (emphasis added).) Second, the plaintiff alleges that defendant Vinton retaliated against him by barring Ms. Joy from stamping her mailings "legal correspondence," as she supposedly had done in the past. (*Id.* at ¶ 22.) The plaintiff alleges that defendant Vinton's action was in retaliation for Deputy Warden Burgos's directing him to write an incident report regarding an opened enveloped marked "legal correspondence" that was on his desk. (*Id.* at ¶ 21.) This allegedly retaliatory act, however, is premised on the action of the deputy warden, not on any protected act of the plaintiff. The plaintiff has failed to state a cognizable retaliation claim against defendant Vinton.

The plaintiff also alleges that defendant Lloyd ordered that the plaintiff could not keep all of his legal materials in his cell after he complained about the alleged mishandling of the box containing his legal file. The excess boxes were kept in the property room and could be exchanged for the boxes in his cell. Retaliatory acts must deter an inmate of ordinary resolve from exercising his constitutional rights. Keeping only a portion of his legal materials in his cell does not rise to that level. The plaintiff fails to state a cognizable retaliation claim against defendant Lloyd.

### C. *Conspiracy*

In his complaint, the plaintiff clearly states that he brings his conspiracy claim pursuant to 42 U.S.C. § 1985(2). In their motion for summary judgment, the defendants address § 1985(**3**), not § 1985(**2**). The plaintiff asserts no conspiracy claim under § 1985(3), and therefore, the motion for summary judgment is denied with respect to the plaintiff's conspiracy claim. Under 28 U.S.C. § 1915(e)(2)(B)(ii), however, the court may dismiss at any time a complaint that fails to state a cognizable claim. As discussed below, the plaintiff has failed

to state a cognizable claim under § 1985(2), and thus the conspiracy claim must be dismissed.

Section 1985 provides for a cause of action for conspiracy to interfere with civil rights. Part two of that statute, the part under which the plaintiff brings his claim, concerns obstruction of justice. Section 1985(2) contains two parts. [3] The first part prohibits a conspiracy aimed at deterring a party or witness from attending or testifying in *federal court.* The second part prohibits a conspiracy aimed at impeding or obstructing justice in *state court.* The plaintiff does not specify under which part of § 1985(2) he brings his claim, so the Court will address both.

[3]    Section 1985 provides:

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws ... the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

**\*7** The plaintiff cannot establish a claim under § 1985(2) for deterring a party or witness from attending or testifying in federal court, because the plaintiff has failed to allege that there was a federal court proceeding at which a party or witness might have appeared or testified. Indeed, a review of the district court docket indicates that the plaintiff had one federal case pending during the time covered by this action, *Saunders v. Commissioner,* No. 3:10cv410(MRK), filed March 18, 2010 and dismissed February 15, 2011. This was a habeas corpus action, and there was no order for a hearing in the case. Thus, the plaintiff could not have been prevented from attending any federal court proceeding, and there was no proceeding at which witnesses could have testified. The plaintiff has failed to allege a factual basis for a claim under the first part of § 1985(2).

To the extent that the plaintiff's conspiracy claim is based on the second part of § 1985(2), obstruction of justice regarding a state court proceeding, it fails for lack of any allegations of racial or class-based animus. To state a cognizable claim under part two of § 1985(2), the plaintiff "had to allege he was a member of a protected class, that the defendants conspired to deprive him of his constitutional rights, that the defendants acted with class-based, invidiously discriminatory animus, and that he suffered damages as a result of the defendants' actions." *Gleason v. McBride,* 869 F.2d 688, 694–95 (2d Cir.1989); *see also Doe v. Green,* 593 F.Supp.2d 523, 539 (W.D.N.Y.2009) ("The second part of § 1985(2), which deals with conspiracies to obstruct justice, applies to state court proceedings, but requires a showing of invidious class-based animus."). As the plaintiff includes no such allegations in his complaint, the conspiracy claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

The plaintiff also invokes 42 U.S.C. § 1986. Section 1986 provides an action for neglecting or refusing to act upon knowledge that "any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed." A prerequisite to stating a claim under this section is a cognizable claim under § 1985. As the § 1985 claim has been dismissed, the § 1986 claim is dismissed as well.

### D. *State Law Claims*

In his complaint, the plaintiff states that this Court has supplemental jurisdiction over state law claims but fails to set forth any specific state law claims. Where no federal claims remain in a lawsuit, the district court may decline to exercise supplemental jurisdiction and leave the state law claims to be considered by the state courts. *See* 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction over state law claims where all federal claims have been dismissed); *Giordano v. City of New York,* 274 F.3d 740, 754 (2d Cir.2001) (collecting cases). As the Court has granted summary judgment in favor of the defendants or

2013 WL 1729264

dismissed all of the plaintiff's federal claims, it declines to exercise supplemental jurisdiction over any state law claims.

IV. *Conclusion*

 **\*8**  The defendants' motion for summary judgment [**Doc. # 40**] is **DENIED** with regard to any claim pursuant to 42 U.S.C. § 1985(3) and **GRANTED** in all other respects. The claims filed pursuant to 42 U.S.C. §§ 1985(2) and 1986 and any retaliation claims are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

The plaintiff's motion to deny the motion for summary judgment [**Doc. # 47**] is **DENIED.** The Clerk is directed to enter judgment in favor of the defendants and close this case.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 1729264

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 5872264
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

James H. BRADY, Plaintiff-Appellant,

v.

Mark S. FRIEDLANDER, Esq., the Law Firm
of Mark S. Friedlander, Kenneth Andrew
McLellan, Esq., Keith R.M. Roussel, Esq., Winget,
Spadafora, Schwartz, LLP, Defendants-Appellees.

No. 20-3515-cv
|
December 13, 2021

Appeal from a judgment of the United States District Court
for the Southern District of New York (Paul A. Engelmayer,
*Judge*; Ona T. Wang, *Magistrate Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED that the
judgment of the District Court is AFFIRMED.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: James H. Brady, pro se,
Manasquan, NJ.

FOR DEFENDANTS-APPELLEES Mark S. Friedlander,
Esq. and The Law Firm of Mark S. Friedlander: William L.
Schleifer, Catalano Gallardo & Petropoulos, LLP, Jericho,
NY.

FOR DEFENDANTS-APPELLEES Kenneth Andrew
McLellan, Esq., Keith R.M. Roussel, Esq., and Winget,
Spadafora, Schwartz, LLP: John T. Mills (Joseph Salvo, on
the brief), Gordon Rees Scully Mansukhani, LLP, New York,
NY.

PRESENT: ROBERT D. SACK, RAYMOND J. LOHIER,
JR., Circuit Judges, JOHN P. CRONAN, District Judge. *

*        Judge John P. Cronan, of the United States District
         Court for the Southern District of New York, sitting
         by designation.

**SUMMARY ORDER**

**\*1** James H. Brady, proceeding pro se, appeals from the
September 8, 2020 judgment of the United States District
Court for the Southern District of New York (Engelmayer,
J.; Wang, M.J.) dismissing Brady's claims against his former
attorney, Mark S. Friedlander, as well as Friedlander's law
firm and Friedlander's former defense attorneys. In 2012
Brady commenced suit against Friedlander in New York state
court, alleging that Friedlander's legal representation of Brady
in a longstanding real estate dispute was deficient. Brady
claimed that, among other things, Friedlander extorted Brady
into paying exorbitant legal fees and improperly withdrew
from the case after Brady paid the fees. Brady's claims were
adjudicated and rejected by two state court judges: in 2013
a state court judge granted in part Friedlander's motion to
dismiss Brady's complaint, and in 2019 another state court
judge granted Friedlander's motion for summary judgment
dismissing Brady's remaining claims ("Friedlander I").

Brady did not appeal the state court's 2019 judgment. Instead,
he filed this federal lawsuit against the Defendants-Appellees
("Friedlander II"), which, in addition to claims about
Friedlander's specific actions and performance as an attorney
during the litigation, accuses Friedlander, Friedlander's
former defense attorneys, and one of the state court judges
of conspiring to improperly dismiss Brady's case (hereinafter
"the conspiracy claims"). The District Court adopted the July
20, 2020 Report and Recommendation of the United States
Magistrate Judge (Wang, M.J.) and granted the defendants'
motion to dismiss all of Brady's claims. We assume the
parties' familiarity with the underlying facts and the record
of prior proceedings, to which we refer only as necessary to
explain our decision to affirm.

**I. The Performance Claims**
Brady's complaint contains several claims against Friedlander
relating to his performance as Brady's attorney: breach
of contract, legal malpractice, fraud in the inducement,
gross negligence, negligent misrepresentation, and breach of
fiduciary duty, as well as a claim that Friedlander's legal fees
were unreasonable (hereinafter "the performance claims").
The District Court applied the Rooker-Feldman doctrine
and in the alternative also applied New York's doctrine of
res judicata to dismiss Brady's performance claims, and we
review its decision to do so de novo. See Hoblock v. Albany
Cnty. Bd. of Elections, 422 F.3d 77, 83, 93 (2d Cir. 2005).
The Rooker-Feldman doctrine applies when a plaintiff: (1)
loses in state court; (2) complains of injuries caused by a
state-court judgment; (3) invites the federal court to review
and reject that judgment; and (4) commences federal court

Case 6:22-cv-01082-GTS-TWD   Document 5   Filed 11/09/22   Page 73 of 96

Brady v. Friedlander, Not Reported in Fed. Rptr. (2021)

2021 WL 5872264

proceedings after the state-court judgment was rendered. See id. at 85. Meanwhile, under New York's doctrine of res judicata, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." Simmons v. Trans Express Inc., 37 N.Y.3d 107, 111 (2021) (emphasis omitted); Smith v. Russell Sage Coll., 54 N.Y.2d 185, 192–93 (1981) ("[W]hat factual grouping constitutes a transaction or series of transactions depends on how the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." (quotation marks omitted)). With these principles in mind, for substantially the reasons given by the District Court, we conclude that the Rooker-Feldman doctrine and New York's doctrine of res judicata bar Brady's performance claims, almost all of which were raised in Friedlander I. [1]

> [1]    While Brady's claims of gross negligence and breach of fiduciary duty were not contained in his complaint in Friedlander I, "a federal plaintiff cannot escape the Rooker–Feldman bar simply by relying on a legal theory not raised in state court." Hoblock, 422 F.3d at 87; see also McKithen v. Brown, 481 F.3d 89, 97 n.7 (2d Cir. 2007). These claims are "inextricably intertwined" with the state court judgment, Hoblock, 422 F.3d at 87, and as the District Court noted, they are based on the same conduct and are "essentially identical" to the claims raised in state court.

 **\*2**  Pointing out correctly that both the Rooker-Feldman and res judicata doctrines require an adjudication on the merits, see Edwards v. McMillen Cap., LLC, 952 F.3d 32, 36 (2d Cir. 2020); Paramount Pictures Corp. v. Allianz Risk Transfer AG, 31 N.Y.3d 64, 73 (2018), Brady urges that neither bar applies because the state court judge failed to issue a decision on the merits in 2019. We are not persuaded. The state court made clear that it was ruling on the merits when it granted Friedlander's motion to dismiss Brady's remaining claims "with prejudice" and asserted that "the case [was] over" after a hearing concerning the merits. App'x 96, 108, 118. That language is enough to signify that the dismissal of the action was on the merits. See Yonkers Contracting Co. v. Port Auth. Trans-Hudson Corp., 93 N.Y.2d 375, 380 (1999) ("A dismissal 'with prejudice' generally signifies that the court intended to dismiss the action 'on the merits,' that is, to bring the action to a final conclusion against the plaintiff."); Strange

v. Montefiore Hosp. & Med. Ctr., 59 N.Y.2d 737, 739 (1983) ("CPLR 5013 does not require that the prior judgment contain the precise words 'on the merits' in order to be given res judicata effect; it suffices that it appears from the judgment that the dismissal was on the merits."). [2]

> [2]    New York's applicable six-year and three-year statutes of limitations, set forth in CPLR § 213 and § 214(6), respectively, present yet another bar to Brady's performance claims, which arise from incidents from 2009 but which were raised in Friedlander II in 2019.

## II. The Conspiracy Claims

We review de novo the District Court's dismissal of Brady's conspiracy claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Libertarian Party of Erie Cnty. v. Cuomo, 970 F.3d 106, 121 (2d Cir. 2020). To start, we agree with the District Court that Brady fails to state claims of conspiracy under 42 U.S.C. §§ 1983 and 1985(2) that are "plausible on [their] face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The facts pleaded in support of those claims — including that the state court judge set a "final date" for the hearing in advance and that Friedlander is related to a different state court judge, Appellant's Br. at 13, 53 — do not permit us to "draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Second, Brady failed to allege that any of the Defendants-Appellees acted with "invidiously discriminating animus," as required by the second clause of § 1985(2) under which Brady sued. Herrmann v. Moore, 576 F.2d 453, 458 (2d Cir. 1978) (quotation marks omitted). Third, Brady's state law claim of "civil conspiracy" fails because New York does not recognize an independent, "freestanding claim for conspiracy." Carlson v. Am. Int'l Grp., Inc., 30 N.Y.3d 288, 310 (2017); see also Kirch v. Liberty Media Corp., 449 F.3d 388, 401 (2d Cir. 2006). We therefore affirm the District Court's dismissal of Brady's conspiracy claims.

## III. Leave to Amend

Finally, the District Court denied Brady leave to amend his complaint on the ground that doing so would be futile. Brady has given us no indication that he could allege additional facts that would render his performance or his conspiracy claims plausible if he were given an opportunity to amend. We therefore affirm the District Court's denial of leave to amend.

**Brady v. Friedlander, Not Reported in Fed. Rptr. (2021)**

2021 WL 5872264

We have considered Brady's remaining arguments and conclude that they are without merit. [3] For the foregoing reasons, the judgment of the District Court is AFFIRMED.

[3] As we recently noted in <u>Brady v. Sheindlin</u>, Brady has initiated a series of unsuccessful lawsuits in this Circuit, all arising from the same original real estate dispute and triggering "a filing injunction barring Brady from filing any new action in the Southern District of New York that relates in any way to the IGS Lease Agreements." No. 21-669-CV, 2021 WL 5312995, at *2 (2d Cir. Nov. 16, 2021) (quotation marks omitted). In <u>Sheindlin</u>, we affirmed the dismissal of Brady's complaint on <u>Rooker</u>-<u>Feldman</u> grounds and ordered Brady to show cause why sanctions should not be imposed.

**All Citations**

Not Reported in Fed. Rptr., 2021 WL 5872264

---

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Hernandez v. Doe, Not Reported in Fed. Supp. (2016)

2016 WL 4995231

2016 WL 4995231
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Roberto HERNANDEZ, Plaintiff,

v.

John DOE, Defendant.

16-CV-2375 (KAM)(LB)
|
Signed 09/18/2016

**Attorneys and Law Firms**

Roberto Hernandez, Woodside, NY, pro se.

## MEMORANDUM & ORDER

MATSUMOTO, United States District Judge

 **\*1**  Plaintiff Roberto Hernandez brings this *pro se* action against a John Doe defendant, invoking federal question jurisdiction. Plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 is GRANTED for purposes of the instant order. For the reasons provided below, this action is DISMISSED.

## BACKGROUND

Plaintiff brings this action against a John Doe defendant alleging that he was the victim of identity theft and that this unknown "defendant willfully filed a false [tax] return claiming plaintiff's depend[e]nts within the meaning of 26 U.S.C. § 152." [1] (ECF No. 1, Complaint ("Compl.") at 6. [2] ) Plaintiff explains that he "is bringing suit for enjoyment and interference with his refund, obstruction, etc.," and is not seeking a refund from the Internal Revenue Service ("IRS"). (*Id.* at 8.) "Rather, he is asking John Doe to pay for all expenses caused for committing identity theft." (*Id.*) Plaintiff explains that he "incurred cost" to resolve the identity theft problem and also suffered "stress," "anxiety," and "complication of [his] diabetes." (*Id.* at 5.) Plaintiff attaches a letter from the IRS, dated April 5, 2016, which informs him, as relevant here, that

[criminal] actors attempted to view your tax information using your personal information, including Social Security number (SSN), which they obtained from a source outside the IRS.... The use of your SSN in this instance wasn't successful, and our records indicate that a transcript of your account wasn't disclosed. This incident hasn't affected your tax return or tax account. However, because the attempt indicates that the third party who attempted to secure your tax information may have your personal information, you should take the appropriate steps to protect yourself from any potential effects of identity theft.

(*Id.* at 12.)

1    26 U.S.C. § 152 sets forth the definition of the term "dependent" under the Internal Revenue Code.

2    Because plaintiff's complaint is drafted partially on a form and partially on blank sheets of attached paper, the court cites to individual pages in the complaint using the pagination provided by the electronic court filing system.

## STANDARD OF REVIEW

At the pleading stage of the proceeding, the court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-80 (2009)). A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Furthermore, it is axiomatic that *pro se* complaints are held to less stringent standards than pleadings drafted by attorneys and the court is required to read a *pro se* plaintiff's complaint liberally and interpret it to raise the strongest arguments it suggests. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Under 28 U.S.C. § 1915(e)(2)(B),

however, a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

## DISCUSSION

**\*2** Although plaintiff is proceeding *pro se*, and his complaint is held to less stringent standards than pleadings drafted by attorneys, *see Erickson*, 551 U.S. at 94, he still must establish that the court has subject matter jurisdiction over his action. *See, e.g., Rene v. Citibank NA*, 32 F. Supp. 2d 539, 544 (E.D.N.Y. 1999) (dismissing *pro se* complaint for lack of subject matter jurisdiction). Lack of subject matter jurisdiction cannot be waived and may be raised at any time by a party or by the court *sua sponte*. *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."). If a court lacks subject matter jurisdiction, it must dismiss the action. *See* Fed. R. Civ. P. 12(h)(3); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *Durant, Nichols, Houston, Hodgson & Cortese–Costa, P.C. v. Dupont*, 565 F.3d 56, 62–63 (2d Cir. 2009).

The basic statutory grants of subject matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. "Federal subject matter jurisdiction exists only where the action presents a federal question, as provided in 28 U.S.C. § 1331, or where there is diversity jurisdiction, as authorized by 28 U.S.C. § 1332." *Igartua v. Dep't of Homeless Servs.*, Nos. 15-CV-3806, 15-CV-3807, 2015 WL 4656557, at \*2 (E.D.N.Y. Aug. 5, 2015) (internal quotation marks and citations omitted). "The party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists." *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) (internal quotation marks and citation omitted).

Even under the most liberal construction, plaintiff has presented no valid basis for this court's jurisdiction over his claims. It is "this Circuit's policy that it is for the IRS, and not private citizens, to enforce the Internal Revenue Code." *Obal v. Deutsche Bank Nat'l Trust Co.*, No. 14-CV-2463, 2015 WL 631404, at \*4 (S.D.N.Y. Feb. 13, 2015); *Seabury v. City of N.Y.*, No. 06-CV-1477, 2006 WL 1367396, at \*5 (E.D.N.Y. May 18, 2006) ("Private citizens cannot

enforce the provisions of the Tax Code. That is the duty of the Secretary of the Treasury and the Commissioner of the Internal Revenue Service, who are charged with the responsibility of administering and enforcing the Tax Code, including allegations of suspected fraud. *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 308 (1978). Federal courts have consistently refused to imply a private cause of action under the tax laws ...."). To the extent plaintiff seeks to invoke the federal identity theft statute, 18 U.S.C. § 1028, a criminal law, federal courts have held that 18 U.S.C. § 1028 is purely criminal in nature and creates no private right of action. *See Senese v. Hindle*, No. 11-CV-0072, 2011 WL 4536955, at \*12 (E.D.N.Y. Sept. 9, 2011) (citing *Garay v. U.S. Bancorp*, 303 F. Supp. 2d 299, 302 (E.D.N.Y. 2004)).

Plaintiff's reliance on *Yousuf v. Samantar*, 451 F.3d 248, 257 (D.C. Cir. 2006), is misplaced. In *Yousuf*, the D.C. Circuit held that the United States government "is a 'person' subject to subpoena under [Fed. R. Civ. P.] 45 regardless whether it is a party to the underlying litigation." *Id.* Plaintiff appears to contend that *Yousuf* would permit him to subpoena the IRS to discover the identity of the individual who obtained his identification information. (Compl. at 8.) Even if plaintiff were permitted to subpoena the IRS, it would be of no use to him because — as set out above — he has no private right of action to enforce the provisions of Internal Revenue Code.

## CONCLUSION

**\*3** Accordingly, the complaint is dismissed. *See* Fed. R. Civ. P. 12(h)(3); 28 U.S.C. § 1915(e)(2)(B). The court has considered whether to grant leave to amend the complaint, in light of its duty to liberally construe *pro se* complaints, but finds that amendment would be futile. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

If plaintiff believes he was the victim of a crime, he should contact the appropriate authorities. [3]

3      Thus, plaintiff may seek the assistance of federal law enforcement, for example, with agents of the IRS, the Social Security Administration, or the Federal Bureau of Investigation. He may also contact the City Bar Justice Center FedPro Clinic

2016 WL 4995231

attorney to make an appointment for information, advice, and limited scope legal assistance free of charge. The court has annexed to this memorandum and order information regarding the clinic.

**SO ORDERED**.

Dated: September 18, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 4995231

---

 © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:22-cv-01082-GTS-TWD    Document 5    Filed 11/09/22    Page 78 of 96

Clark v. Student Loan Finance Corp., Not Reported in Fed. Supp. (2019)
2019 WL 4412571

2019 WL 4412571
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Sean A. CLARK, Plaintiff,
v.
STUDENT LOAN FINANCE CORP. and United
States Department of Education, Defendants.

18-CV-9354 (JPO)
|
Signed 09/16/2019

**Attorneys and Law Firms**

Sean A. Clark, New York, NY, pro se.

Sophia Ree, Edumin Corrales, Landman Corsi Ballaine &
Ford PC, New York, NY, for Defendant Student Loan Finance
Corporation.

Alexander James Hogan, United States Attorney's Office,
Edumin Corrales, Landman Corsi Ballaine & Ford P.C., New
York, NY, for Defendant U.S. Department of Education.

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

**\*1** Plaintiff Sean A. Clark brings this lawsuit *pro se* against
Defendant Student Loan Finance Corporation ("SLFC") and
Defendant United States Department of Education ("DOE")
(collectively "Defendants") in connection with Defendants'
attempts to collect on Plaintiff's student loan debt. Clark
alleges that Defendants' actions violate (1) the Americans
with Disabilities Act of 1990, 42 U.S.C. §§ 12101, et sec. (the
"ADA"); (2) the Fourteenth Amendment to the United States
Constitution; (3) the International Covenant on Civil and
Political Rights, Dec. 19, 1966, 999 U.N.T.S. 171 ("ICCPR");
and (4) the Identify Theft and Assumption Deterrence Act of
1998, 18 U.S.C. § 1028 ("Section 1028"). (Dkt. No. 4 at 2,
5-6.)

Defendants have separately moved to dismiss Plaintiff's
amended complaint. (Dkt. Nos. 13, 39.) For the reasons that
follow, Defendants' motions to dismiss are granted. Plaintiff
is granted leave to amend his complaint, but only to add any
claims under the Administrative Procedure Act, 5 U.S.C. §§
706(2)(A), (E) ("APA") against the DOE. Finally, Plaintiff's

motion for discovery is denied as moot in light of the Court's
granting of Defendants' motions to dismiss. (Dkt. No. 43.)

**I. Background**
In July 2015, Plaintiff commenced an action against the DOE
alleging that DOE was illegally garnishing $26.00 per month
of Plaintiff's Social Security disability benefits to satisfy
Plaintiff's student loan debt—debt which Plaintiff alleges was
taken out in his name without his consent or knowledge. *Clark
v. United States Dep't of Ed.*, No. 15-cv-05863 (S.D.N.Y.
2015) ("Prior Action"). Also in July 2015, Plaintiff submitted
an application to the DOE seeking a discharge of this debt,
claiming that his identity had been stolen. (Dkt. No. 40-1 at 2.)

The DOE initially denied Plaintiff's application for discharge
because Plaintiff failed to supply necessary documents. The
DOE, however, later admitted that its decision was erroneous
because Plaintiff's claim was more accurately interpreted as
a claim of common law fraud or forgery, which is subject
to a different standard of evaluation than identity theft.
Accordingly, the DOE sought remand in the Prior Action,
which was granted by the court. (Dkt. No. 40-2 at 5–6; Dkt.
No. 40-3.)

Plaintiff instituted this action against SLFC on October 12,
2018. (Dkt. No. 1 ("Compl.").)) Approximately three months
later, on January 15, 2019, the DOE issued its administrative
decision denying Plaintiff's application for discharge. (Dkt.
No. 39-1 at 2.) Plaintiff added the DOE as a Defendant on
October 26, 2018, upon filing his amended complaint. (Dkt.
No. 4 ("Am. Compl.").)

In the present action, Plaintiff makes allegations that are
largely similar to those in the Prior Action. Specifically,
Plaintiff alleges that Defendants seek to collect on outstanding
student loan debt that he does not owe. (Am. Compl. at 5-6.)
Plaintiff asserts that he is not liable for the loans because they
were obtained by another person through fraud, as Plaintiff
has not attended school outside of community college in
2000 and "a couple of tech courses in 2001." (*Id.*) Plaintiff
also alleges that the Social Security Administration paid all
his debts in 2013. (*Id.*) Defendants now move separately
to dismiss Plaintiff's amended complaint for lack of subject
matter jurisdiction and for failure to state a claim pursuant Fed
R. Civ. P. 12(b)(1) and (6) respectively. (Dkt Nos. 13, 39.)

**II. Legal Standard**

**\*2** A district court must dismiss a claim for lack of subject matter jurisdiction if it "lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see also* Fed. R. Civ. P. 12(b)(1). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113. In reviewing a motion to dismiss for lack of subject matter jurisdiction, a court may consider evidence outside the pleadings. *Id.*

To survive a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), plaintiffs must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when plaintiffs plead facts that would allow "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts "must accept as true all well-pleaded factual allegations in the complaint, and 'draw all inferences in the plaintiff's favor.' " *Goonan v. Fed. Reserve Bank of New York*, 916 F. Supp. 2d 470, 478 (S.D.N.Y. 2013) (quoting *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006)) (brackets omitted).

Finally, courts must afford *pro se* plaintiffs "special solicitude" before granting motions to dismiss or motions for summary judgment. *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994). "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotations omitted). Therefore, courts interpret a *pro se* plaintiff's pleadings "to raise the strongest arguments they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (citation omitted). "Even in a *pro se* case, however, 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' " *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)).

## III. Discussion

### A. Subject Matter Jurisdiction

In his amended complaint, Plaintiff asserts that Defendants violated the ICCPR and Section 1028 in seeking debt payments from Plaintiff that Plaintiff allegedly does not owe. (Am. Compl. at 2.) But where "[a] federal statute that does not create or imply a private right of action[,] [it] does not present a federal question pursuant to 28 U.S.C. § 1331 on behalf of private individuals," depriving federal courts of subject matter jurisdiction. *Biran v. JP Morgan Chase & Co.*, No. 02 Civ. 5506, 2002 WL 31040345, at *3 (S.D.N.Y. Sept. 12, 2002) (citing *Merrel Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986)).

The Second Circuit has held that the "ICCPR does not create a private right of action" because "the United States ratified the treaty subject to the understanding it was not self-executing." *Veiga v. World Meteorological Organisation*, 368 F. App'x 189, 190 (2d Cir. 2010). Section 1028 also does not supply a private right of action because the "statute is criminal in nature." *Garay v. U.S. Bancorp*, 303 F. Supp. 2d 299, 302 (E.D.N.Y. 2004); *Prince v. City of New York*, 2009 WL 2778262, at *1 n.3 (S.D.N.Y. Sept. 2, 2009) (dismissing portions of a complaint that alleged causes of action based on Section 1028 because it is a provision "of the federal criminal code that do[es] not provide any private right of action."). As neither statute provides a private right of action and Plaintiff has not demonstrated that Congress intended to make a private remedy available, *see Suter v. Artist M.*, 503 U.S. 347, 363 (1992) (holding that the party who seeks to imply a private right of action bears the burden to show that Congress intended to make one available), the Court lacks subject matter jurisdiction and must dismiss Plaintiff's causes of action under the ICCPR and Section 1028 against both Defendants.

### B. Failure to State a Claim

**\*3** Plaintiff's remaining argument is that Defendants violated his civil rights pursuant to the ADA and the Fourteenth Amendment by attempting to collect on debt obligations that Plaintiff allegedly does not owe. (Am. Compl. at 2; Dkt. No. 22 at 9; Dkt. No. 44 at 4.) The Court considers each claim in turn, liberally construing Plaintiff's amended complaint where necessary to make them applicable to the Defendants. *Erickson*, 551 U.S. at 94.

### 1. ADA

Plaintiff asserts that Title II of the ADA is violated by Defendants' attempt to collect on his debt. (Dkt. No. 22 at 9; Dkt. No. 44 at 4.) Under Title II of the ADA, "no qualified

individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Therefore, to prove a violation, a plaintiff must establish "(1) that he is a 'qualified individual' with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability." *Mary Jo C. v. New York State & Local Ret. Sys.*, 707 F.3d 144, 153 (2d Cir. 2013) (citing *Hargrave v. Vermont*, 340 F.3d 27, 34–35 (2d Cir. 2003)).

Plaintiff has not pleaded any facts that plausibly indicate that he was denied the benefits or services of a public entity due to a disability. Plaintiff's argument appears to be that the Social Security Administration paid all of Plaintiff's debt, thereby conferring on him a benefit, which is now being denied by Defendants in their attempts to collect debt that Plaintiff alleges he does not owe. (Dkt. No. 22 at 9.) Plaintiff's argument is unavailing. Here, based on the allegations, Plaintiff did not seek a benefit from Defendants which Defendants denied due to his disability. Defendants' attempting to collect on unpaid debt does not constitute a denial of any previous benefit Plaintiff may have received.

But even if the attempt to collect outstanding debt constitutes a denial of benefits, neither SLFC nor the DOE would be liable under Title II of the ADA because they are not public entities under the statute. The ADA defines a public entity as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority." 42 U.S.C. § 12131(A)-(C). SLFC is a federal loan servicer and the DOE is a federal agency. *Cellular Phone Taskforce v. F.C.C.*, 217 F.3d 72, 73 (2d Cir. 2000) ("Title II of the ADA is not applicable to the federal government."). Accordingly, Plaintiff's ADA claim must be dismissed as to both Defendants.

A similar result is warranted even if the Court considers the Rehabilitation Act, which provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program

or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794. Hence, "to establish a violation of the Rehabilitation Act, Plaintiff must show that he: (1) is an individual with a disability; (2) is otherwise qualified for benefits under the federally funded program; and (3) has been denied those benefits because of his disability." *Mondragon v. Baruch Coll.*, 2018 WL 4689192, at *3 (E.D.N.Y. Sept. 28, 2018). As already discussed, nothing Plaintiff has pleaded or argued has shown that he was denied benefits from a federally funded program because of his disability. Accordingly, his ADA cause of action is dismissed as to both Defendants. *See Atkins v. Cty. of Orange*, 251 F. Supp. 2d 1225, 1232 (S.D.N.Y. 2003) (failure of a plaintiff to adequately allege that the plaintiff was denied benefits is a "fundamental defect that may lead to the dismissal" of ADA and Rehabilitation Act claims) (internal quotations omitted).

**2. Fourteenth Amendment**

*4 Plaintiff argues that his constitutional rights have been violated by the Defendants because he "was deprived of a certain right of not being able to continue [his] education for further advancement" because his outstanding debt makes him "ineligible to receive financial aid." (Dkt. No. 22. at 9.) Plaintiff claims this deprivation is actionable against SLFC under 42 U.S.C. § 1983 (*Id.*), and under the Fourteenth Amendment broadly against the DOE. (Dkt. No. 44 at 9–10). Plaintiff's arguments are unavailing.

At the outset, SLFC, in attempting to collect on Plaintiff's debt, was neither a state actor nor a private party acting under the color of state law. In *Spear v. West Hartford*, the Second Circuit noted that Section 1983 only addresses "injuries caused by state actors or those acting under color of state law[,]" and held that "[a] private defendant may be held liable only as a willful participant in joint activity with the State or its agents." 954 F.2d 63, 68 (2d Cir. 1992) (citation and internal quotations omitted). There is no plausible allegation that SLFC was a willful participant in a joint activity with the State or its agents such that it could be liable under the Fourteenth Amendment via Section 1983. Therefore, Plaintiff's Fourteenth Amendment claim against SLFC must be dismissed.

Second, the allegations do not establish any deprivation of Plaintiff's liberty or property without due process. As the Fourteenth Amendment applies to states and not the federal government, *see Dusenbery v. United States*, 534 U.S. 161,

Clark v. Student Loan Finance Corp., Not Reported in Fed. Supp. (2019)

2019 WL 4412571

167 (2002), the Court construes Plaintiff's claim against the DOE as a due process claim under the Fifth Amendment. Plaintiff asserts that the DOE garnished his Social Security disability payments, which constituted his property, without due process. This argument lacks merit.

Under "[t]he Debt Collection Act of 1982 ... after pursuing the debt collection channels set out in 31 U.S.C. § 3711(a), an agency head can collect an outstanding debt 'by administrative offset,' " *i.e.*, the practice of withholding federal payment in satisfaction of a debt owed to the federal government. *Lockhart v. United States*, 546 U.S. 142, 144 (2005) (citing 31 U.S.C. § 3716(a)). This includes Social Security disability benefits, though the statute exempts $9000 in benefits per year from offset. 31 U.S.C. § 3716(3)(A)(ii). To offset such benefits, the "creditor agency must certify to [the Department of Treasury] that the debt is eligible for collection by offset and that all due process protections have been met." *Johnson v. U.S. Dep't of Treasury*, 300 F. App'x 860, 862 (11th Cir. 2008) (citing 31 C.F.R. § 285.5(d)(3)(ii), (d)(6)). In these cases, due process requires (1) written notification; (2) an opportunity to inspect and copy the records of the agency with respect to the debt; (3) an opportunity for review within the creditor agency, including the opportunity to present evidence; and (4) an opportunity to enter into a written repayment agreement with the creditor agency. 31 C.F.R. § 285.5(d)(6)(ii)(A)-(D).

Plaintiff's complaint does not plausibly suggest that he was denied due process. Plaintiff does not allege that he was not provided with adequate written notification of garnishment. Rather, Plaintiff asserts that a court order was required for the DOE to collect his debt via administrative offset. As already discussed, however, the statutory scheme does not require a creditor agency to receive a court order prior to the administrative offset; it requires only certification to the Department of Treasury that the debt is eligible for collection and all due process protections have been met. *See Johnson*, 300 F. App'x at 862; 31 C.F.R. § 285.5(d)(3)(ii), (d)(6). Here, the allegations establish that Plaintiff was given adequate process. Plaintiff submitted an application to the DOE for discharge of his debt, which was denied after review in 2015, and, after remand in the Prior Action, was re-reviewed and denied again in January 2019. Finally, the DOE ensured that despite the garnishment Plaintiff received $750 per month (Dkt. No. 36 at 5–6), which totals $9000 per year, the amount required to be preserved under the statute, 31 U.S.C. § 3716(3)(A)(ii). Accordingly, Plaintiff's Fifth Amendment

claim against the DOE must be dismissed as Plaintiff does not plausibly allege any violation of his due process rights.

### C. Leave to Amend

**\*5** The Second Circuit has held that "[d]istrict courts should generally not dismiss a pro se complaint without granting the plaintiff leave to amend.... However, leave to amend is not necessary when it would be futile." *Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). As Plaintiff filed his amended complaint three months prior to the DOE's final administrative determination regarding Plaintiff's application for discharge, any claims Plaintiff may have had under the APA would not have been ripe at the time he filed the amended complaint. *See generally Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003) (holding that agency actions are not ripe for review under the APA "until an administrative decision has been formalized and its effects felt in a concrete way...."). And though Plaintiff's opposition to the DOE's motion included his arguments under the APA (Dkt. No. 44 at 10–11), "[t]he complaint cannot ... be amended by the briefs in opposition to a motion to dismiss," *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 432 (S.D.N.Y. 2001) (citing *Lazaro v. Good Samaritan Hosp.*, 54 F. Supp. 2d 180, 184 (S.D.N.Y. 1999)). Accordingly, the Court declines to consider Plaintiff's arguments under the APA until the complaint is amended and the DOE has been afforded an opportunity to fully brief the issue. *See generally Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988) (where matters outside the pleading are presented in response to a 12(b)(6) motion, a "court may exclude the additional material and decide the motion on the complaint alone."). However, Plaintiff is not granted leave to amend his claims under the ICCPR, Section 1028, the ADA, and the Fourteenth Amendment because amendment would be futile with respect to those claims. *See Ashmore*, 510 F. App'x at 49.

### IV. Conclusion

For the foregoing reasons, SLFC's and DOE's motions to dismiss Plaintiff's Amended Complaint are GRANTED.

Plaintiff is granted leave to file an amended complaint asserting any claims he may have under the Administrative Procedure Act, provided that he must do so on or before October 17, 2019. If no amended complaint is filed on or before October 17, 2019, this action will be dismissed with prejudice.

2019 WL 4412571

The Clerk of Court is directed to close the motions at Docket Numbers 13, 39, and 43, and to terminate Defendant Student Loan Finance Corporation as a party to this action.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 4412571

---

**End of Document**                                        © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:22-cv-01082-GTS-TWD    Document 5    Filed 11/09/22    Page 83 of 96
Cabrera v. U.S. Department of Education, Slip Copy (2018)
2018 WL 11449477

2018 WL 11449477
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Greychen M. Correa CABRERA, Plaintiff,
v.
U.S. DEPARTMENT OF EDUCATION and
Marinello School of Beauty, Defendants.

No. 6:18-cv-06476(MAT)
|
Signed July 5, 2018

**Attorneys and Law Firms**

Greychen M. Correa Cabrera, Rochester, NY, Pro Se.

**DECISION AND ORDER**

MICHAEL A. TELESCA, United States District Judge

**I. Introduction**

 *1 Proceeding *pro se*, plaintiff Greychen M. Correa Cabrera ("plaintiff") instituted this action by filing a complaint (Docket No. 1) dated June 27, 2018, against defendants the United States Department of Education (the "DOE") and the Marinello School of Beauty ("MBS") (collectively "defendants"), based on allegations that a student loan in plaintiff's name had been obtained through identity theft. Later that same day, plaintiff filed an amended complaint (Docket No. 3), alleging substantially similar allegations as to defendants. The amended complaint is the operative pleading in this action.

Before the Court is plaintiff's motion to proceed *in forma pauperis* under 28 U.S.C. § 1915(a). The Court finds that Plaintiff's supporting affirmation sufficiently establishes her inability to pay for the prosecution of her case. Accordingly, Plaintiff's motion for *in forma pauperis* status (Docket No. 2) is granted. The Court has also reviewed the complaint as required by 28 U.S.C. § 1915(e)(2) ("Section 1915(e)(2)"). As discussed below, the Court finds that plaintiff's amended complaint is subject to dismissal. The Court further finds that, because there is no indication that plaintiff could state a viable claim as to any defendant, leave to amend should not be granted.

**II. Screening of the Complaint under Section 1915(e)(2)**

**A. Legal Standard**

Under Section 1915(e)(2), the Court must conduct an initial screening of a *pro se* litigant's complaint and must dismiss if it is "frivolous or malicious"; "fails to state a claim upon which relief may be granted"; or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). "An action is 'frivolous' for § 1915(e) purposes if it has no arguable basis in law or fact, as is the case if it is based on an 'indisputably meritless legal theory.' " *Montero v. Travis*, 171 F.3d 757, 759 (2d Cir. 1999) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)).

*Pro se* litigants such as plaintiff "are afforded a wide degree of latitude with regard to their submissions, as the Court construes their papers to raise the strongest arguments that they suggest." *Washington v. Reilly*, 226 F.R.D. 170, 171 (E.D.N.Y. 2005) (internal quotation omitted). *Pro se* litigants "cannot be expected to know all of the legal theories on which they might ultimately recover," and are therefore not required to provide explicit legal theories of recovery in order to state a viable claim. *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005).

**B. Factual Allegations**

Plaintiff alleges that in 2011, when she lived in Puerto Rico, an unknown person used her personal information to request student loans to attend MBS in California. Plaintiff is not sure how this individual accessed her information, but he or she used it to falsify plaintiff's signature and obtain federal student loans. The DOE is now demanding that Plaintiff repay the fraudulently obtained loans, and plaintiff's income tax returns were garnished and obtained refunds due to the plaintiff in the years 2015, 2016, and 2017. Plaintiff apparently asked the DOE to forgive the loans on the basis that they were fraudulently obtained, but that request was denied. Plaintiff asks the Court to "clear[ ] [her] name" so that she is not legally responsible for the student loans at issue, to have the garnished portions of her income tax refunds returned to her, and to cause the identity theft to be prosecuted. Docket No. 3 at 4.

**C. Plaintiff Cannot Seek Criminal Prosecution**

 *2 Plaintiff's amended complaint asks the Court to criminally prosecute the individual who stole her identity. However, there is no private cause of action for criminal

prosecution. *See Leeke v. Timmerman*, 454 U.S. 83, 86 (1981) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another") (internal quotation omitted). The decision whether or not to seek criminal prosecution in a given case lies solely with the prosecuting authorities, and this Court therefore lacks jurisdiction to grant plaintiff's request to institute a criminal prosecution against the unknown individual who allegedly stole her identity. *See Bryant v. Virgin Islands*, No. 1:12-CV-87-JGM, 2012 WL 1910092, at *2 (D. Vt. May 25, 2012) ("[T]his Court has no jurisdiction to order criminal prosecutions. [C]riminal prosecutions are within the exclusive province of the public prosecutor, who has complete discretion over the decision to initiate, continue or cease prosecution.") (internal quotation omitted and second alteration in original).

**D. Plaintiff Fails to State a Claim Against MBS**

Plaintiff has failed to state a valid claim against MBS. There is no private federal cause of action for identity theft. *See Hernandez v. Doe*, No. 16-CV-2375 (KAM)(LB), 2016 WL 4995231, at *2 (E.D.N.Y. Sept. 18, 2016) ("[T]he federal identity theft statute ... is purely criminal in nature and creates no private cause of action."). Accordingly, to the extent plaintiff is attempting to allege that MBS participated in the identify theft, she has failed to state a viable claim.

Plaintiff also cannot seek a discharge of the allegedly fraudulently obtained loans from MBS. MBS has no authority to discharge a student loan - that authority resides solely with the DOE. There is no cognizable legal theory on which plaintiff can seek this relief from MBS, and therefore, she has failed to state a claim as to that defendant.

**E. Plaintiff has not Stated a Claim against the DOE**

Pursuant to 34 C.F.R. § 682.402(e)(1)(i), an individual may seek a discharge of the obligation to repay a federal student loan where the loan was obtained "as a result of a crime of identity theft." Where such a discharge is granted, the individual is relieved of any past or present obligation to repay the loan or any associated charges, and is entitled to reumbursement of "amounts paid voluntarily or through enforced collection on" the discharged loan. 34 C.F.R. § 682.402(e)(2)(i),(ii).

In order to receive a discharge on the basis of identity theft, an individual must submit a written request and a sworn statement certifying "that the individual did not sign the promissory note, or that any other means of identification used to obtain the loan was used without the authorization of the individual claiming relief" and "that the individual did not receive or benefit from the proceeds of the loan with knowledge that the loan had been made without the authorization of the individual." 34 C.F.R. § 682.402(e)(3)(v)(A),(B). The individual must also provide "a copy of a local, State, or Federal court verdict or judgment that conclusively determines that the individual who is named as the borrower of the loan was the victim of a crime of identity theft by a perpetrator named in the verdict or judgment." 34 C.F.R. § 682.402(e)(3)(v)(C).

Where the DOE denies an individual's application for a loan discharge, that individual may seek judicial review of the determination pursuant to the Administrative Procedures Act, 5 U.S.C. §§ 701–706. The Court may set aside the DOE's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or ... unsupported by substantial evidence in a case." *Austin v. U.S. Dep't of Educ.*, No. 08 CV 5559, 2010 WL 1172569, at *3 (N.D. Ill. Mar. 19, 2010) (internal quotation omitted) (reviewing the DOE's denial of loan discharge application under the APA); *see also McGuire v. Duncan*, 138 F. Supp. 3d 1076, 1083 (E.D. Mo. 2015) (same).

**\*3** Here, reading the allegations of the amended complaint in the light most favorable to plaintiff, she arguably alleges that the DOE improperly denied her request to discharge the allegedly fraudulently obtained student loans, on the basis that her certification was insufficient. However, plaintiff's factual allegations make it clear that she does not meet the qualifications for a discharge on the basis of identity theft. As set forth above, in order to obtain such a discharge, plaintiff was required to submit to the DOE "a copy of a local, State, or Federal court verdict or judgment that conclusively determines that the individual who is named as the borrower of the loan was the victim of a crime of identity theft by a perpetrator named in the verdict or judgment." 34 C.F.R. § 682.402(e)(3)(v)(c). Plaintiff's amended complaint indicates that plaintiff does not know who the identity thief was, that plaintiff does not know how the identity theft occurred, and that legal action has not been taken against the identity thief. Without that information (set forth in a court verdict or judgment), plaintiff cannot establish her entitlement to a discharge. Accordingly, plaintiff has failed to state a plausible claim as to the DOE.

**F. Leave to Amend is not Warranted**

Generally, the Court will grant a *pro se* litigant the opportunity to amend before dismissing her claims. However, "leave [to amend] need not be granted where even a liberal reading of the complaint fails to give 'any indication that a valid claim might be stated.'" *Carolina v. Rubino,* 644 F. App'x 68, 73 (quoting *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir. 2010)). In this case, the flaws in plaintiff's pleading are substantive, and cannot be cured through additional pleading. Accordingly, the Court dismisses plaintiff's claims *sua sponte*, without leave to amend.

**III. Conclusion**

For the foregoing reasons, Plaintiff's motion for *in pauperis status* (Docket No. 2) is granted, and Plaintiff's amended complaint is dismissed *sua sponte* without leave to amend. The Clerk of the Court is instructed to close the case. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *See Coppedge v. United States,* 369 U.S. 438 (1962).

**ALL OF THE ABOVE IS SO ORDERED.**

**All Citations**

Slip Copy, 2018 WL 11449477

---

**End of Document**                                                                            © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 2473439
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

Muhammad Shahid AKRAM, Plaintiff,

v.

Muhammad AKRAM, Muhammad Imran
Akram, and Iso Steve Sprinkle, Defendants.

Civ. No. 22-02699 (KM) (JRA)
|
Signed July 6, 2022

**Attorneys and Law Firms**

Muhammad Shahid Akram, Parsippany, NJ, Pro Se.

**OPINION**

KEVIN MCNULTY, United States District Judge:

**\*1** Muhammad Shahid Akram has filed a complaint
naming Muhammad Akram, Muhammad Imran Akram and
Immigration Security Officer Steve Sprinkle as defendants.
The Court has granted *in forma pauperis* ("IFP") status. For
the reasons expressed below, this complaint will be dismissed
on initial screening because it fails to state a colorable basis
for this Court's jurisdiction or plead Akram's causes of action.

**I. Background**

Akram filed his complaint against his relatives and ISO
Sprinkle on May 5, 2022. (DE 1.) The complaint itself
is skeletal, consisting of a pro se civil complaint form
in which only the sections for the parties and basis for
jurisdiction is filled out with the rest of the sections left
blank. (*Id.*) Indeed, the form indicates that Akram is claiming
four bases of jurisdiction: federal question, diversity, and
cases in which the U.S. is a plaintiff or defendant. (*Id.*)
Additionally, Akram attached over 70 pages of materials to
this form, including immigration paperwork, correspondence
with immigration officials, copies of personal identification,
and documentation related to Akram's claims to the IRS,
Federal Trade Commission, and Parsippany-Troy Hills Police
Department that his identity had been stolen by his brother or
other family members. Attached to this complaint was also
Akram's application to proceed IFP without payment of fees

under 28 U.S.C. § 1915, which I granted on May 10, 2022.
(DE 1, 3.)

Since that time, Akram has filed three letters, none of which
shed much light on the substance of his complaint. On May
19, 2022, Akram filed a document in this case entitled "Legal
Services Agreement" that is dated December 5, 2019, and
appears to be a contract between Akram and a New York-
based attorney "to investigate potential allegations of child
abuse in Newark, NJ" for a fee of $4500. (DE 19 at 1.)
This document does not specify the person alleged to have
committed child abuse and does not further detail the purpose
of this agreement. (*Id.*) On June 30, 2022, Akram filed
two separate letters stating that he has received numerous
messages on his phone instructing him to appear in Essex
County Superior Court regarding a criminal case. (DE 7, 8.)
Without citing any basis for his belief, Akram claims that
these messages are part of his brother's attempts at "harassing
[him] regularly" and he requests that I investigative the person
sending him these messages. (DE 7.)

**II. Discussion**

**a. Standard of Review**

To be heard in federal district court, a case must fall within
the court's subject matter jurisdiction; indeed, the court must
raise the jurisdictional issue *sua sponte* where appropriate.
*See Liberty Mut. Ins. Co. v. Ward Trucking Co.*, 48 F.3d 742,
750 (3d Cir. 1995); Fed. R. Civ. P. 12(h)(3).

In addition, because the Court has granted IFP status, I am
obligated to screen the allegations of Akram's complaint to
determine whether it:

(i) is frivolous or malicious;

(ii) fails to state a claim on which relief may be granted; or

(iii) seeks monetary relief against a defendant who is
immune from such relief.

**\*2** 28 U.S.C. § 1915(e)(2)(B). That screening provision
applies to the complaints of all individuals who are
proceeding *in forma pauperis*. *See, e.g., Grayson v. Mayview
State Hosp.*, 293 F.3d 103, 114 n.19 (3d Cir. 2002) (non-
prisoner indigent plaintiffs are "clearly within the scope of §
1915(e)(2)").

2022 WL 2473439

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). A complaint must contain "a short and plain statement" both "of the grounds for the court's jurisdiction" and of "the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a).

The court will be more forgiving of complaints filed *pro se* and will construe their allegations liberally. *Haines v. Kerner*, 404 U.S. 219 (1972). *Pro se* complaints are nonetheless bound to the "essential obligation" of facial plausibility. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019); *see also Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (noting that a pro se complaint is "construed liberally 'to raise the strongest arguments [it] suggest[s]," but must still "state a plausible claim for relief" (citations omitted)).

**b. Analysis**

Even under the forgiving standard afforded pro se plaintiffs, Akram's complaint is clearly deficient, even if his filings suggest he was the victim of identity theft. Akram has failed to complete nearly all of the civil complaint form. He has not identified any federal claim or stated the facts on which it would be based. It fails to state a claim in the literal sense of the phrase. What Akram has done is attach 70 pages of correspondence and other documents, and has, in letters, asked the court to "investigate." It is the plaintiff, not the court, who must investigate. He must then state, in short and plain language, the essential facts underlying his claim and identify the federal law under which he sues or some other basis for a federal court claim.

The attachments submitted with the complaint center, to some degree, on the alleged theft of Akram's identity. They do not

on their own suggest a cause of action over which this Court would have jurisdiction.

No federal law claim is identified. *See generally* 28 U.S.C. § 1331. While certain kinds of identity theft may be punishable as crimes, *see, e.g.,* 18 U.S.C. § 1028 et seq., there is no private federal law cause of action for identity theft as such. [1]

[1]     The only apparent (albeit tenuous) link to federal law is the naming of an INS officer as a defendant. According to a police report attached to Akram's complaint, ISO Sprinkle informed Akram that someone may have stolen his identity after Sprinkle received a letter falsely signed in Akram's name that asked for Akram's citizenship application to be withdrawn. (DE 1 at 63.) No basis appears to name Sprinkle, who apparently was only trying to be helpful, as a defendant.

**\*3** To the extent plaintiff may intend to rely on state law, diversity jurisdiction has not been pled. All the parties to this case appear to be New Jersey citizens. *See generally* 28 U.S.C. § 1332.

In short, the complaint fails to clearly plead jurisdiction or a cause of action, to the extent it pleads them at all, rendering the complaint fatally deficient. While Akram may indeed have a valid claim, and his filings certainly indicate he finds himself in troubling circumstances, more is needed to proceed with a suit in federal court.

**III. Conclusion**

For the reasons stated above, the complaint is **DISMISSED** upon initial screening pursuant to 28 U.S.C. § 1915(e). The dismissal is without prejudice to any case or claim over which this Court may possess jurisdiction.

**All Citations**

Slip Copy, 2022 WL 2473439

---

**End of Document**          © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 1670193
Only the Westlaw citation is currently available.
United States District Court, W.D. Virginia,
Roanoke Division.

Wakeel ABDUL-SABUR, Plaintiff,

v.

WELLS FARGO BANK, N.A., Defendant.

Civil Action No.: 7:19-CV-674
|
Signed 02/10/2020

**Attorneys and Law Firms**

Wakeel Abdul-Sabur, Pound, VA, pro se.

### REPORT AND RECOMMENDATION

Robert S. Ballou, United States Magistrate Judge

 **\*1** Plaintiff Wakeel Abdul-Sabur ("Abdul-Sabur"),
proceeding *pro se*, filed this case against defendant Wells
Fargo Bank, N.A. ("Wells Fargo"), alleging that Wells
Fargo opened an account in his name without his knowledge or
permission. Dkt. 2. Abdul-Sabur seeks to proceed in this
action *in forma pauperis*. Dkt. 1. Based upon the information
contained in Abdul-Sabur's financial affidavit, I recommend
granting Abdul-Sabur's request to proceed *in forma pauperis*
and directing the Clerk to file Abdul-Sabur's Complaint.
However, upon a frivolity review pursuant to 28 U.S.C. §
1915(e)(2), I further find that Abdul-Sabur's Complaint fails
to state a plausible claim of entitlement to relief and should
be dismissed.

Given that Abdul-Sabur is proceeding *in forma pauperis*,
the court must review the complaint to determine whether
it is subject to dismissal on the grounds that it is "frivolous
or malicious [or] fails to state a claim on which relief may
be granted." 28 U.S.C. § 1915(e)(2). In its frivolity review,
the court must determine whether the complaint raises an
indisputably meritless legal theory or is founded upon clearly
baseless factual contentions, such as fantastic or delusional
scenarios. Neitzke v. Williams, 490 U.S. 319, 327–28 (1989).
A plaintiff fails to state a claim when it appears certain that
the plaintiff cannot prove any set of facts which would entitle him
or her to relief. The court must accept all well-pled allegations
and review the complaint in a light most favorable to plaintiff,

however, facts must be alleged with specificity. See Mylan
Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993);
White v. White, 886 F.2d 721, 724 (4th Cir. 1989). Pleadings
of self-represented litigants are accorded liberal construction
and held to a less stringent standard than formal pleadings
drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007)
(per curiam). Liberal construction does not mean, however,
that the court can ignore a clear failure in pleadings to allege
facts which set forth a claim cognizable in a federal district
court. See Weller v. Dep't of Social Servs., 901 F.2d 387, 391
(4th Cir. 1990).

Abdul-Sabur alleges claims of mail fraud, identity theft,
unauthorized account, unsound practices in violation of the
unfair practices prong of section 5 of the Federal Trade
Commission Act, and due process and equal protection under
the Fourteenth Amendment. Dkt. 2, p. 3. Specifically, Abdul-
Sabur alleges that he attempted to open an account with
Wachovia Bank [1] by mailing a $50.00 money order with his
application. Compl. at p. 4, Dkt. 2. He was subsequently
advised by customer service that the application had expired
and customer service returned his money. Id. A few weeks
later, Abdul-Sabur received an account statement in his name
reflecting over $250,000.00 in the account. Id. These events
occurred between 2011–2012. Id. Abdul-Sabur alleges that
Wells Fargo used the personal information he provided on
the expired account application to open an active account
without his authorization. Id. at p. 5. Abdul-Sabur made
several attempts to resolve the issue over the years, including
filing complaints with the Office of the Comptroller of
the Currency, and Wells Fargo customer correspondence
department. Id. at p. 7. Abdul-Sabur seeks punitive and
exemplary damages in the amount of $250,000 for each claim,
compensatory damages of $10,000, and recovery of the $400
filing fee. Id. at p. 9.

---

1      Wachovia Bank was purchased by Wells
       Fargo & Company in 2008. See https://
       www.wellsfargo.com/about/corporate/wachovia.

 **\*2** On January 29, 2020, Abdul-Sabur filed a motion
to amend complaint, seeking to add four specific named
employees of Wells-Fargo as additional defendants in his
original complaint, alleging "since the filing of the complaint
the plaintiff has determined the name(s) of the Wells Fargo
executives who paid monetary incentives to its employees to
commit fraud, and identity theft against the plaintiff outlined
in the original complaint." Dkt. 12.

WESTLAW   © 2022 Thomson Reuters. No claim to original U.S. Government Works.                    1

Having reviewed Abdul-Sabur's Complaint in the light most favorable to Abdul-Sabur and with liberal construction, I find that it fails to state a claim for which relief can be granted, and should be dismissed pursuant to 28 U.S.C. § 1915(e)(2). [2]

[2]     Notably, plaintiffs have made similar allegations against Wells Fargo for opening accounts with a customer's permission and filed suits in other districts nationwide. See Mitchell v. Wells Fargo Bank, 355 F. Supp. 3d 1136, 1144 (D. Utah 2018); In re Wells Fargo Fraudulent Account Opening Litig., 282 F.Supp.3d 1360, 1361 (U.S. Jud. Pan. Mult. Lit. 2017). Wells Fargo's conduct has been the subject of investigations by Congress and wide-spread scrutiny by the media and other investigations. However, here, Abdul-Sabur's Complaint states theories of recovery that are not permitted by the law and/or claims that are time barred.

Specifically, Abdul-Sabur's claims for identity theft and "unsound practices in violation of the unfair practices prong of Section (5) of the FTC Act" cannot proceed because no private cause of action exists for those claims. The court presumes that by "FTC Act," Abdul-Sabur intends to refer to the Federal Trade Commission Act. Section 5 of the Federal Trade Commission Act is codified at 15 U.S.C. § 45 and does not provide for a private right of action. Rather, it authorizes the Federal Trade Commission to commence civil actions to prevent the use of unfair methods of competition and unfair or deceptive acts or practices in and affecting commerce. See 15 U.S.C. § 45(m); Mountcastle v. Premier Auto Brokers, Inc., No. 2:15cv170, 2015 WL 13049847, at *2 (E.D. Va. Oct. 15, 2015); see also, A & E Supply Co. v. Nationwide Mut. Fire Ins. Co., 798 F.2d 669, 675 (4th Cir. 1986) (noting that "courts have declined to imply any private right of action [in the Federal Trade Commission Act] and have relied upon the regulatory scheme to police the industry.").

Likewise, there is no federal civil action for identity theft. Blackstock v. Walgreens, No. 4:17cv2097, 2017 WL 4174767, at *2 (D.S.C. Sept. 1, 2017); see also Rahmani v. Resorts Int'l Hotel Inc., 20 F. Supp. 2d 932, 937 (E.D. Va. 1998), aff'd, 182 F. 3d 909 (4th Cir. 1999). The same is true for the state identity theft statute, Va. Code § 18.2-186.3. Maines v. Guillot, No. 5:16cv09, 2016 WL 3556258, at *4 (W.D. Va. June 16, 2016).

Abdul-Sabur's claims for due process and equal protection under the Fourteenth Amendment of the Constitution fail because the defendant is a private entity, rather than the government. "[T]he Fourteenth Amendment, which prohibits the states from denying federal constitutional rights and which guarantees due process, applies to the acts of the states, not to acts of private persons or entities." Rendell-Baker v. Kohn, 457 U.S. 830, 837 (1982) (citing Civil Rights Cases, 109 U.S. 3, 11 (1883)).

Abdul-Sabur's remaining claims are barred on their face by the applicable statutes of limitations. The Fourth Circuit has recognized that the statute of limitations may be addressed sua sponte when such a defense appears on the face of a complaint filed in forma pauperis, pursuant to 28 U.S.C. § 1915. See Custis v. Davis, 851 F.3d 358, 361 (4th Cir. 2017); Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 953–54 (4th Cir. 1995); Riddick v. Dept. of Corr., No. 7:17cv268, 2017 WL 6599007, at *3 (W.D. Va. Dec. 26, 2017).

*3  The court construes Abdul-Sabur's claim of "mail fraud" as a claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"), because the federal mail fraud statute, 18 U.S.C. § 1341, does not provide a private cause of action. Smith v. Bank of America, No. 2:14cv4, 2014 WL 12543910, at *2 (E.D. Va. May 5, 2014). RICO claims are governed by a four-year statute of limitations that begins to run when the plaintiff knows or should have known of the injury. Dickson v. FBI Newport News Field Office, No. 4:15cv124, 2016 WL 8261800, at *2 (E.D. Va. March 2, 2016); Sloan v. Smith, No. 6:09cv5, 2009 WL 453298, at *4 (W.D. Va. Feb. 24, 2009). Abdul-Sabur states that the events in the complaint took place between 2011–2012. Dkt. 2 p. 4. Accordingly, Abdul-Sabur's RICO claim is barred by the applicable statute of limitations and should be dismissed. [3]

[3]     Abdul-Sabur also failed to set forth facts establishing the elements of a viable RICO claim, namely: 1) conduct; 2) of an enterprise; 3) through a pattern; 4) of racketeering activity; and failed to meet the enhanced pleading standards required for fraud under Fed. R. Civ. P. 9(b). See Dickson, 2016 WL 8261800 at *1; Williams v. Equity Holding Corp., 245 F.R.D. 240, 243 (E.D. Va. 2007).

Likewise, Abdul-Sabur's claim for "unauthorized account," which the court liberally construes as a claim under the Electronic Funds Transfers Act ("EFTA") 15 U.S.C. § 1693,

provides for a one-year statute of limitation from the date of the occurrence of the violation. 15 U.S.C. § 1693m(g); Repay v. Bank of America, N.A., No. 12cv10228, 2013 WL 6224641, at *3 (N.D. Ill. Nov. 27, 2013) (EFTA's one-year statute of limitations begins to run when the first recurring transfer takes place.) The EFTA provides that no person may issue to a consumer any card, code or other means of access to such consumer's account for the purpose of initiating an electronic fund transfer other than in response to a request from the consumer or as a renewal of or in substitution of an accepted card or other means of access. 15 U.S.C. § 1693i. The EFTA creates a civil cause of action for consumers, who may recover actual and statutory damages in individual or class actions. See 15 U.S.C. § 1693m.

The facts as set forth by Abdul-Sabur establish that the alleged violation occurred between the years 2011 and 2012. Abdul-Sabur also states that "the fraud ... continued for years up to present." Dkt. 2. p. 5. However, the only transaction described or referenced in the Complaint is the initial opening of an account between the years of 2011–2012. Id. Thus, there is no continuing violation that would extend the statute of limitations. See Everette v. Mitchem, No. CCB-15-1261, 2016 WL 470840, at *2 (D. Md. Feb. 8, 2016) (a plaintiff could bring a § 1693 claim for unauthorized transfers that took place within one year of filing the complaint, but prior transfers were barred by the statute of limitations).

I have carefully considered Abdul-Sabur's claims. Each is either barred as a matter of law or by the applicable statute of limitations. It does not appear that any additional facts could cure the defects identified in Abdul-Sabur's Complaint. As such, I do not recommend allowing Abdul-Sabur to file an amended complaint. Rather, I **RECOMMEND DISMISSING** this action without prejudice.

The clerk is directed to transmit the record in this case to the Honorable Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record and *pro se* parties. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

**All Citations**

Slip Copy, 2020 WL 1670193

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:22-cv-01082-GTS-TWD     Document 5     Filed 11/09/22     Page 91 of 96

Abdul-Sabur v. Wells Fargo Bank, N.A., Not Reported in Fed. Supp. (2020)

2020 WL 1665313

2020 WL 1665313
Only the Westlaw citation is currently available.
United States District Court, W.D. Virginia,
Roanoke Division.

Wakeel ABDUL-SABUR, Plaintiff,

v.

WELLS FARGO BANK, N.A., Defendant

Case No. 7:19-cv-674
|
Signed 04/02/2020
|
Filed 04/03/2020

**Attorneys and Law Firms**

Wakeel Abdul-Sabur, Pound, VA, pro se.

### <u>MEMORANDUM OPINION</u>

Michael F. Urbanski, Chief United States District Judge

 **\*1**  Plaintiff Wakeel Abdul-Sabur, proceeding pro se, filed a complaint and motion to proceed in forma pauperis ("IFP") on October 7, 2019. ECF Nos. 1, 2. In his complaint, he alleges that Wells Fargo Bank, N.A., (Wells Fargo) opened an unauthorized account in his name. Abdul-Sabur filed a motion to amend or correct his complaint on January 29, 2020. ECF No. 12. The motion to proceed IFP was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation ("R&R") on February 2, 2019, recommending that Abdul-Sabur be granted IFP status, and also recommending that his complaint be dismissed for failure to state a claim and because some of his claims are time-barred. ECF No. 13. Abdul-Sabur filed objections to the R&R on February 24, 2020, ECF No. 14, and this matter is ripe for disposition. For the reasons stated below, the court will **OVERRULE** Abdul-Sabur's objections, **ADOPT** the report and recommendation in its entirety, **GRANT** Abdul-Sabur IFP status, and **DISMISS** his complaint.

### I.

Abdul-Sabur alleges that at some point in or prior to 2011, he attempted to open an account with Wachovia Bank by mailing a $50.00 money order to the bank along with an application form. Subsequently, customer service advised him that he had submitted an expired application and returned his application and money order. A few weeks later, he received an account statement in his name that showed he had more than $250,000 in his account. ECF No. 2 at 4. Abdul-Sabur alleges that Wells Fargo [1] used the personal information he submitted to Wachovia Bank to open a deposit account in his name and transfer funds into it without authorization. He claims that the unauthorized account was opened in his name by employees trying to meet aggressive sales goals because they were paid monetary incentives to open accounts. In his motion to file an amended complaint, ECF No. 12, he seeks to add individual defendants who he claims paid monetary incentives to employees to commit fraud and identity theft against him.

[1]     Wells Fargo & Company bought Wachovia Bank in 2008. See https://www.wellsfargo.com/about/corporate/wachovia/ (last viewed March 31, 2020.)

Based on these facts, he alleges that Wells Fargo (1) committed mail fraud by mailing him a fraudulent account statement indicating that he had an account with more than $250,000 in it between 2011 and 2012; (2) opened an unauthorized account in his name; (3) violated the Unfair Practices prong of Section 5 of the Federal Trade Commission Act by using fraud and unsound practices; (4) committed identity theft; and (5) violated his rights to due process and equal protection.

Abdul-Sabur has made several attempts to resolve the issues over the years, including the recent filing of complaints with the Office of the Comptroller of the Currency ("OCC") customer assistance group, and by corresponding with Wells Fargo. However, he has been unable to obtain relief. Abdul-Sabur seeks compensatory, punitive, and exemplary damages, as well as costs.

 **\*2**  In the R&R filed on February 10, 2020, the magistrate judge concluded that Abdul-Sabur was entitled to IFP status, but recommended that his complaint be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim. [2] The magistrate judge made the following findings:

(1) Abdul-Sabur's claim for identity theft and "unsound practices in violation of the unfair practices prong of

Abdul-Sabur v. Wells Fargo Bank, N.A., Not Reported in Fed. Supp. (2020)

Case 6:22-cv-01082-GTS-TWD    Document 5    Filed 11/09/22    Page 92 of 96

2020 WL 1665313

Section 5 of the FTC Act" cannot proceed because no private cause of action exists for those claims under the Federal Trade Commission Act;

(2) There is no federal civil cause of action for identity theft;

(3) His Fourteenth Amendment claims fail because the defendant is a private entity rather than the government; and

(4) His remaining claims of mail fraud and opening of an unauthorized account, construed as a claim under the Electronic Funds Transfers Act, are time-barred.

2

  **(2)** Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--
  **(A)** the allegation of poverty is untrue; or
  **(B)** the action or appeal--
  **(i)** is frivolous or malicious;
  **(ii)** fails to state a claim on which relief may be granted; or
  **(iii)** seeks monetary relief against a defendant who is immune from such relief.
  28 U.S.C.A. § 1915(e) (West).

## II.

Rule 72(b) of the Federal Rules of Civil Procedure permits a party to "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within fourteen days of being served with a copy of the report. See also 28 U.S.C. § 636(b)(1). The Fourth Circuit has held that an objecting party must do so with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007).

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then

have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id. The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1). "General objections that merely reiterate arguments presented to the magistrate judge lack the specificity required under Rule 72, and have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Techs., Inc., 742 F. Supp. 2d 827, 829 (W.D. Va. 2010) (citing Veney v. Astrue, 539 F. Supp. 2d 841, 845 (W.D. Va. 2008)), aff'd, 498 F. App'x 268 (4th Cir. 2012); see also Thomas v. Arn, 474 U.S. 140, 154 (1985(3)) ("[T]he statute does not require the judge to review an issue de novo if no objections are filed.").

*3 Further, objections that only repeat arguments raised before the magistrate judge are considered general objections to the entirety of the report and recommendation. See Veney, 539 F. Supp. 2d at 845. As the court noted in Veney, 539 F. Supp. 2d at 846:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505], 509 [(6th Cir. 1991)].

A party who reiterates his previously raised arguments will not be given "the second bite at the apple [ ] he seeks." Id.

Abdul-Sabur v. Wells Fargo Bank, N.A., Not Reported in Fed. Supp. (2020)

Case 6:22-cv-01082-GTS-TWD    Document 5    Filed 11/09/22    Page 93 of 96

2020 WL 1665313

Instead, the re-filed brief will be treated as a general objection, which has the same effect as a failure to object. Id.


### III.

Although Abdul-Sabur filed objections, he did not respond to the magistrate judge's conclusions with regard to each of his claims. Instead, he refers to a class-action settlement involving Wells Fargo, which he identifies as the "Jabbari class action." He asserts that a $142 million settlement was reached with a payout to individuals, but that the "settlement claims [were] put on freeze pending appeal to the U.S. Supreme Court." ECF No. 14 at 1. He requests "to be added to the class action settlement to protect his rights." Id. He also asks for appointment of legal counsel, or, in the alternative, to be provided with the same counsel who represents the class of plaintiffs in the class-action lawsuit. With regard to the finding by the magistrate judge that some of his claims are time-barred, Abdul-Sabur asserts that he "misunderstood the customer assistance group of the OCC's recommendation which advised him to protect his legal rights. Id.

An internet search of the term "Jabbari class action" shows that a class action styled Jabbari, et al. v. Wells Fargo &

Co., No. 3:15-CV-02159-VC, was filed in the United States District Court for the Northern District of California in 2015. However, this court has no authority to add Abdul-Sabur as a plaintiff in that case. Nor is Abdul-Sabur entitled to appointment of counsel for this civil claim. "Litigants in a civil action are not constitutionally entitled to counsel." Banin v. Byerson, 620 F. App'x. 166, 167 (4th Cir. 2015) (citing Williams v. Ozmint, 716 F.3d 801, 811 (4th Cir. 2013)).

Having reviewed the R&R and Abdul-Sabur's objections thereto, the court finds that the conclusions of the magistrate judge are well supported by relevant statutes and case law. Therefore, the court **OVERRULES** Abdul-Sabur's objections, **ADOPTS** the R&R in its entirety, **GRANTS** Abdul-Sabur IFP statutes, and **DISMISSES** his lawsuit without prejudice. All remaining motions are **DENIED** as moot.

An appropriate order will be entered.

### All Citations

Not Reported in Fed. Supp., 2020 WL 1665313

---

2017 WL 4174767

2017 WL 4174767
Only the Westlaw citation is currently available.
United States District Court, D. South Carolina.

Sepia Vonnetta BLACKSTOCK, Plaintiff,
v.
WALGREENS, Defendant.

C/A No. 4:17-cv-02097-RBH-KDW
|
Signed 09/01/2017

**Attorneys and Law Firms**

Sepia Vonnetta Blackstock, Hartsville, SC, pro se.

REPORT AND RECOMMENDATION

Kaymani D. West, United States Magistrate Judge

 **\*1**  This is a civil action filed by a pro se litigant requesting to
proceed *in forma pauperis.* Pursuant to 28 U.S.C. § 636(b)(1),
and Local Civil Rule 73.02(B)(2)(e) (D.S.C.), this magistrate
judge is authorized to review all pretrial matters in such pro
se cases and to submit findings and recommendations to the
district court.

I. Factual Background

Sepia Vonnetta Blackstock ("Plaintiff"), sues Defendant
Walgreens, a "Drug Store Chain" in Hartsville, South
Carolina, alleging that Defendant participated in identity theft
when it used her personal information and her e-mail account
with her mother's "balance rewards account." Compl. 2, 5,
ECF No. 1. She states that her claim is covered by this court's
federal-question jurisdiction and states that she is suing under
the federal Identity Theft and Assumption Deterrence Act. *Id.*
at 3. [1]  Plaintiff seeks injunctive relief and $30.00 in actual
and $5000.00 in punitive damages. *Id.* at 5.

[1]      18 U.S.C. § 1028.

II. Standard of Review

Under established local procedure in this judicial district,
a careful review has been made of the pro se Complaint
pursuant to the procedural provisions of 28 U.S.C. § 1915.
The review has been conducted in light of the following
precedents: *Neitzke v. Williams,* 490 U.S. 319, 324-25 (1989);

*Estelle v. Gamble,* 429 U.S. 97 (1976); *Haines v. Kerner,* 404
U.S. 519 (1972); *Gordon v. Leeke,* 574 F.2d 1147 (4th Cir.
1978).

The Complaint in this case was filed under 28 U.S.C. § 1915,
which permits an indigent litigant to commence an action
in federal court without prepaying the administrative costs
of proceeding with the lawsuit. To protect against possible
abuses of this privilege, the statute allows a district court to
dismiss the case upon a finding that the action "fails to state
a claim on which relief may be granted" or is "frivolous or
malicious." 28 U.S.C. § 1915(e)(2)(B)(I), (ii). Hence, under
28 U.S.C. § 1915(e)(2)(B), a claim based on a meritless legal
theory may be dismissed sua sponte. *Neitzke v. Williams,* 490
U.S. 319 (1989).

This court is required to liberally construe pro se pleadings,
*Estelle v. Gamble,* 429 U.S. at 97, holding them to a less
stringent standard than those drafted by attorneys, *Hughes v.
Rowe,* 449 U.S. 5 (1980). The mandated liberal construction
afforded pro se pleadings means that if the court can
reasonably read the pleadings to state a valid claim on which
the plaintiff could prevail, it should do so, but a district court
may not rewrite a pleading to "conjure up questions never
squarely presented" to the court. *Beaudett v. City of Hampton,*
775 F.2d 1274, 1278 (4th Cir. 1985). The requirement of
liberal construction does not mean that the court can ignore
a clear failure in the pleading to allege facts which set forth
a claim currently cognizable in a federal district court. *Weller
v. Dep't of Soc. Servs.,* 901 F.2d 387, 390-91 (4th Cir. 1990).
Even under this less stringent standard, however, the pro se
Complaint under review in this case is subject to summary
dismissal.

III. Discussion

 **\*2**  Plaintiff's Complaint should be summarily dismissed
because there is no right of civil action under 18 U.S.C. §
1028, the criminal act on which Plaintiff relies for federal
jurisdiction. *See, e.g., Garay v. U.S. Bancorp,* 303 F. Supp.
2d 299 (E.D.N.Y. 2004) (18 U.S.C. § 1028 does not provide
a civil right of action); *Razzi v. Nimler,* No. 5:14-cv-447-
Oc-22PRL, 2014 WL 5038337 (M.D. Fla. Sept. 12, 2014)
("The federal identity theft statute, the Identity Theft and
Assumption Deterrence Act of 1998, 18 U.S.C. § 1028, is
criminal in nature and provides no civil cause of action or
civil remedy."); *Lucas-Cooper v. Palmetto GBA,* No. 1:05-
cv-00959, 2006 WL 2583407 (N.D. Ohio 2006) (same);
*Booth v. Equifax Credit Information Services, Inc.,* No. Civ.
01-39-JO, 2001 WL 34736212 (D. Or. 2001) (same). There

**Blackstock v. Walgreens, Not Reported in Fed. Supp. (2017)**

2017 WL 4174767

is no federal civil action for identity theft. *See Burroughs v. Burroughs*, No. 3:11-2133-JFA-PJG, 2011 WL 5024180, at *2 (Sept. 30, 2011), *report and recommendation adopted*, 2011 WL 5024169 (D.S.C. Oct. 20, 2011).

Plaintiff does not include any allegations concerning diversity jurisdiction to which any of South Carolina's identity theft statutes apply. *See* S.C. Code Ann. § 16-13-510 through 530. In any event, any such allegations would not state a plausible diversity action because "no private civil action for 'identity theft' appears to be made available in any of those statutes." *Burroughs v. Burroughs*, No. CA 3:11-2133-JFA-PJG, 2011 WL 5024180, at *2 n.2 (D.S.C. Sept. 30, 2011) (citing *Huggins v. Citibank, N.A.,* 585 S.E.2d 275 (S.C. 2003)), *report and recommendation adopted,* No. CA 3:11-2133-JFA-PJG, 2011 WL 5024169 (D.S.C. Oct. 20, 2011).

IV. Recommendation
Accordingly, it is recommended that the district court dismiss the Complaint in this case *without prejudice. See United Mine Workers v. Gibbs,* 383 U.S. 715 (1966); *see also Neitzke v. Williams*, 490 U.S. at 324-25.

IT IS SO RECOMMENDED.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 4174767

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

Blackstock v. Walgreens, Not Reported in Fed. Supp. (2017)

2017 WL 4156445

2017 WL 4156445
Only the Westlaw citation is currently available.
United States District Court, D.
South Carolina, Florence Division.

Sepia Vonnetta BLACKSTOCK, Plaintiff,

v.

WALGREENS, Defendant.

Civil Action No.: 4:17-cv-02097-RBH
|
Signed 09/19/2017

**Attorneys and Law Firms**

Sepia Vonnetta Blackstock, Hartsville, SC, pro se.

**ORDER**

R. Bryan Harwell, United States District Judge

 *1  This matter is before the Court for review of the Report and Recommendation (R & R) of United States Magistrate Judge Kaymani D. West, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(e) (D.S.C.). *See* R & R [ECF No. 9]. The Magistrate Judge recommends that the Court summarily dismiss Plaintiff's pro se complaint without prejudice. *Id.* at 4.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this Court. *See Mathews v. Weber,* 423 U.S. 261, 270-71 (1976). The Court is charged with making a de novo determination of those portions of the R & R to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1).

Plaintiff has not filed objections to the R & R, and the time for doing so has expired. [1]  In the absence of objections to the R & R, the Court is not required to give any explanation for adopting the Magistrate Judge's recommendations. *See Camby v. Davis,* 718 F.2d 198, 199-200 (4th Cir. 1983). The Court reviews only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Acc. Ins. Co.,* 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation' " (quoting Fed. R. Civ. P. 72 advisory committee's note)).

[1]    Plaintiff's objections were due by September 18, 2017. *See* ECF Nos. 9 & 10.

After a thorough review of the record in this case, the Court finds no clear error and therefore adopts and incorporates by reference the R & R [ECF No. 9] of the Magistrate Judge. Accordingly, the Court **DISMISSES** Plaintiff's complaint *without prejudice and without issuance and service of process.*

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 4156445

End of Document                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.